UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROHIT PRAKASH, | ) | CASE NO. 5:10-CV-00033-SL |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **JOINT MOTION OF DEFENDANTS** |
| ALTADIS U.S.A. INC., *et al.*, | ) | **TO DISMISS COUNTS 1-6 AND 8-11** |
| | ) | **OF THE COMPLAINT FOR LACK** |
| Defendants. | ) | **OF SUBJECT MATTER** |
| | ) | **JURISDICTION AND FAILURE TO** |
| | ) | **STATE A CLAIM,  TO DISMISS** |
| | ) | **COUNT 7 FOR LACK OF SUBJECT** |
| | ) | **MATTER JURISDICTION.** |
| | ) | |

CLE - 2603062.7

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION ........................................................................................................... 1

RELEVANT ALLEGATIONS OF THE COMPLAINT ............................................. 3

LAW & ARGUMENT .................................................................................................... 9

I.      COUNTS 1, 2, 3, 4, 5, 6, 8, 9, 10, AND 11 MUST BE DISMISSED
        BECAUSE PRAKASH MAY NOT PROSECUTE  SOMYA'S CLAIMS
        *PRO SE*, EVEN AS ITS ALLEGED ASSIGNEE .................................................. 12

II.     PRAKASH, INDIVIDUALLY, LACKS  STANDING TO COMPLAIN
        OF COMPETITIVE INJURY TO SOMYA ......................................................... 14

        A.      Prakash Lacks Article III Standing ................................................ 15

        B.      Prakash Lacks Standing to Assert a RICO Claim ....................... 15

        C.      Prakash Lacks Standing Under the Antitrust Laws. .................. 17

        D.      Prakash Lacks Standing Under § 43 of the Lanham Act ........... 18

        E.      Prakash Lacks Standing to Assert His State Law Claims ......... 19

III.    PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE RICO
        STATUTE ............................................................................................................. 19

        A.      Prakash Has Failed to Properly Allege That Defendants Engaged
                in a Pattern of Racketeering Activity ........................................... 21

                1.      Helms-Burton Act and Other Laws Regulating Trade with
                        Cuba ..................................................................................... 21

                2.      Mail Fraud ........................................................................... 24

                3.      Extortion .............................................................................. 26

                4.      Money Laundering ............................................................. 26

        B.      Prakash Failed to Allege that He Has Suffered Injury By Reason
                of a Violation of Section 1962. ....................................................... 27

        C.      None of Prakash's Theories of RICO Liability Is Sufficient ........ 29

                1.      Prakash Has Failed to State a Claim Under § 1962(a). ...... 29

        2.      Prakash Has Failed to State a Claim Under § 1962(b). ....................30

        3.      Prakash Has Failed to State a Claim Under § 1962(c). ...................30

        4.      Prakash Has Failed to State a Claim Under § 1962(d). ...................31

IV.    COUNTS 2, 3 AND 11 MUST BE DISMISSED BECAUSE MEMBERS OF A CORPORATE FAMILY CANNOT BE HELD LIABLE FOR CONSPIRACY UNDER THE ANTITRUST LAWS. ...............................................32

V.     COUNTS 2, 3, 4, AND 11 MUST BE DISMISSED BECAUSE THEY LACK THE SPECIFICITY REQUIRED TO SUPPORT A CLAIM THAT THE ANTITRUST LAWS WERE VIOLATED. ...........................................35

VI.    COUNTS 5 AND 6 OF THE COMPLAINT MUST BE DISMISSED AS TO ALL DEFENDANTS FOR FAILURE TO STATE A CLAIM. .........................37

    A.     Counts 5 and 6 Do Not Plead a Causal Link Between Defendants' Alleged Statements and Harm to a Competing Business. ...........................38

    B.     Plaintiff Has Failed to Plead Specific Facts to Support His False Advertising Claim. ...............................................................................39

VII.   TO THE EXTENT BASED ON THE CEASE AND DESIST LETTERS OR THE OPPOSITION PROCEEDING, COUNTS 1-4 AND 8-11 OF THE COMPLAINT CONCERN PRIVILEGED CONDUCT TO WHICH NO LIABILITY ATTACHES. ...............................................................40

    A.     No Actionable Antitrust Claim May Be Based on the Enforcement of Trademark Rights. .................................................40

    B.     The *Noerr-Pennington* Doctrine Bars Counts 2, 3, and 4 to the Extent that Those Claims Are Based on the Cease-and-Desist Letters or on the Opposition Proceedings. .......................................42

    C.     State-Law Claims Made in Counts 8 Through 10 Are Barred by the Litigation Privilege. .................................................................44

VIII.  COUNTS 8, 9 AND 10 MUST BE DISMISSED FOR THE SAME PLEADING DEFICIENCIES THAT INFECT COUNTS 2-6 .................................45

IX.    COUNT 7 OF THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF HAS NO STANDING TO SEEK CANCELLATION OF ANY MARK EXCEPT DUTCH TREATS, AND THIS COURT LACKS SUBJECT MATTER JURISDICTION OF THAT CLAIM. .....................................46

    A.     The Allegations of Count 7 Concerning Marks Other than DUTCH TREATS Must be Dismissed. ..........................................47

ii

1.      Plaintiff lacks Article III Standing to Challenge the
        Registration of Marks other than DUTCH TREATS. ......................47

2.      Plaintiff Does Not Have Standing to Petition to Cancel
        Trademarks Under the Lanham Act....................................................48

B.  The Remainder of Count 7 Must Be Dismissed Because a Claim
    for Cancellation of a Trademark Registration Under the Lanham
    Act Cannot Be the Sole Basis of Federal Jurisdiction. ..................................50

C.  Absent An Independent Basis for Federal Jurisdiction, Plaintiff
    Must First Exhaust His Administrative Remedies Before
    Resorting to the Courts. ................................................................................52

CONCLUSION...................................................**ERROR! BOOKMARK NOT DEFINED.**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abraham v. Singh,*
    480 F.3d 351 (5th Cir. 2007) ................................................................................30

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,*
    176 F.3d 315 (6th Cir. 1999) ........................................................................22, 25

*Am. Credit Card Tel. Co. v. Nat'l Pay Tel. Corp.,*
    504 So.2d 486 (Fla. App. 1986)...........................................................................34

*Amini v. Oberlin Coll.,*
    259 F.3d 493 (6th Cir. 2001) ................................................................................5

*Ashland Oil v. Danette,*
    875 F.2d 1271 (7th Cir. 1989) ............................................................................25

*Baldwin v. Adidas Am., Inc.,*
    No. C-2-02-265, 2002 U.S. Dist. LEXIS 19626 (S.D. Ohio July 29, 2002) ....................44, 45

*Barilla v. Patella,*
    760 N.E.2d 898 (8th Dist. 2001)..........................................................................45

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................... passim

*Bell v. Hood,*
    327 U.S. 678, 90 L. Ed. 939, 66 S. Ct. 773 (1946)...................................................9

*Bender v. Southland,*
    749 F.2d 1205 (6th Cir. 1984) ............................................................................25

*Bennett v. Spear,*
    520 U.S. 154 (1997)..........................................................................................48

*Bischoff v. Waldorf,*
    660 F. Supp. 2d 815 (E.D. Mich. 2009)..........................................................13, 14

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)..........................................................................................17

*CBC Cos., Inc. v. Equifax, Inc.,*
    561 F.3d 569 (6th Cir. 2009) ..........................................................................36-37

*CBCInnovis v. Equifax Info. Servs. LLC,*
    No. 2:06-cv-654, 2008 U.S. Dist. LEXIS 11700 (S.D. Ohio Feb. 4, 2008) ..........................37

iv

*Cesare v. Work,*
    520 N.E.2d 586 (Ohio Ct. App. 1987) .................................................................. 46

*Chaz Concrete Co., LLC v. Codell,*
    No. 3:03-52-KKC, 2010 U.S. Dist. LEXIS 29900 (E.D. Ky. Mar. 29, 2010) ...................... 31

*City of Cleveland v. Deutsche Bank Trust Co,*
    571 F. Supp. 2d 807 (N.D. Ohio 2008) ................................................................ 13

*Clorox Co. v. Sterling Winthrop, Inc.,*
    117 F.3d 50 (2d Cir. 1997) .............................................................................. 41

*Coca-Cola Co. v. Omni Pac. Co.,*
    No. C 98-0784 S1, 1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) ...................... 42

*Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.,*
    508 F.3d 327 (6th Cir. 2007) ............................................................................ 9

*Copperweld v. Independence Tube Corp.,*
    467 U.S. 752 (1984) ............................................................................. 2, 33, 34

*Craighead* v. *E.F. Hutton & Co.,*
    899 F.2d 485 (6th Cir. 1990) .......................................................................... 29

*Cunningham v. Laser Golf Corp.,*
    222 F.3d 943 (Fed Cir. 2000) ......................................................................... 49

*Dawson v. Blockbuster, Inc.,*
    No. 86451, 2006 Ohio App. LEXIS 1138 (Ohio Ct. App. March 16, 2006) ..................... 46

*Denny v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006) ........................................................................... 15

*Ditri v. Coldwell Banker Residential Affiliates, Inc.,*
    954 F.2d 869 (3rd Cir. 1992) .......................................................................... 51

*Doherty v. Am. Motors Corp.,*
    728 F.2d 334 (6th Cir. 1984) ..................................................................... 13, 34

*Drop Dead Co v. S.C. Johnson & Son, Inc.,*
    326 F.2d 87 (9th Cir. 1963) ........................................................................... 41

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*
    365 U.S. 127 (1961) ..................................................................................... 42

*Eichorn v. AT&T Corp.,*
    248 F.3d 131 (3rd Cir. 2001) .......................................................................... 34

v

*F. Palicio y Compania, S.A. v. Brush,*
256 F. Supp. 481 (S.D. N.Y. 1966), *aff'd,* 375 F.2d 1011, 1967 U.S. App. LEXIS
6609 (2d Cir. 1967), *cert. denied sub nom, Brush v. Cuba*, 389 U.S. 830 (1967)..................23

*Fagan v. Luttrell,*
No. 97-6333, 2000 U.S. App. LEXIS 15345 (6th Cir. June 22, 2000)......................................9

*First Am. Title Co. v. DeVaugh,*
480 F.3d 438 (6th Cir. 2007) ................................................................................................10

*Fleischhauer v. Feltner,*
879 F.2d 1290 (6th Cir. 1989) ..............................................................................................28

*Fuji Photo Film Co., Inc. v. Shionara Shoji Kabushiki Kaisha,*
754 F.2d 591 (5th Cir. 1985) ................................................................................................23

*Gaff v. Fed. Deposit Ins. Corp.,*
814 F.2d 311 (6th Cir. 1987) ................................................................................................17

*Gamboa v. Velez,*
457 F.3d 703 (7th Cir. 2006) ................................................................................................19

*Gardner v. Clark,*
101 F. Supp. 2d 468 (N.D. Miss. 2000).................................................................................42

*Gentile v. Fifth Avenue Otolaryngology, Inc.,*
No. 4:05 CV 2936, 2006 U.S. Dist. LEXIS 60881 (N.D. Ohio Aug. 28, 2006)......................17

*Ginger v. Cohn,*
426 F.2d 1385 (6th Cir. 1970) ..............................................................................................13

*Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.,*
863 F.Supp. 447 (E.D. Mich. 1994)...........................................................................22, 24, 25, 29

*Guzowski v. Hartman,*
969 F.2d 211 (6th Cir. 1992) ................................................................................................33

*Halicki Films, LLC v. Sanderson Sales and Mktg.,*
547 F.3d 1213 (9th Cir. 2008) ..............................................................................................49

*Hemi Group, LLC v. City of New York,*
130 S. Ct. 983 (2010)..........................................................................................27, 28, 31

*Herbko Int'l, Inc. v. Kappa Books,*
308 F.3d 1156 (Fed. Cir. 2002).........................................................................................49-50

*Herman Miller, Inc. v. Palazzetti Imps. and Exps., Inc.,*
270 F.3d 298 (6th Cir. 2001) ...........................................................................................37, 39

*Holmes v. Sec. Investor Protection Corp.*,
    503 U.S. 258 (1992)................................................................................................27, 28

*Homemakers, Inc. v. Chicago Home for the Friendless*,
    313 F. Supp. 1087 (N.D. Ill. 1970), *aff'd*, No. 18403, 1971 U.S. App. LEXIS 11081
    (7th Cir. 1971), *cert. denied*, 404 U.S. 831................................................................53

*Horsley v. Wal-Mart, Inc.*,
    No. 97CA17, 1997 Ohio App. LEXIS 5988 (Ohio Ct. App. Dec. 23, 1997)........................45

*Hutchinson v. Pfeil*,
    211 F.3d 515 (10th Cir. 2000) ...........................................................................39

*Hypoint Tech., Inc. v. Hewlett-Packard Co.*,
    949 F.2d 874 (6th Cir. 1991) ..............................................................................17

*In re: O'Connor*,
    No. 08-16434, 2009 Bankr. LEXIS 1376 (N.D. Ohio Bankr. Feb. 27, 2009)........................13

*Infocision Mgmt. Corp. v. Found. for Moral Law*,
    Nos. 5:08cv1342, 5:08cv1412, 2009 U.S. Dist. LEXIS 23640 (N.D. Ohio Jan. 14,
    2009) (Lioi, J.) ..............................................................................20, 21, 25

*Ingenohl v. Walter E. Olsen & Co.*,
    273 U.S. 541 (1927).........................................................................................23

*Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*,
    407 F.3d 1027 (9th Cir. 2005) .........................................................................38-39

*Jewel Companies, Inc. v. Westhall Co.*,
    413 F. Supp. 994 (N.D. Ohio 1976).....................................................................46

*Johnny Blastoff, Inc. v. L.A. Rams Football Co.*,
    188 F.3d 427 (7th Cir. 1999) ...........................................................................39

*Jones v. Niagara Frontier Tranps. Auth.*,
    722 F.2d 20 (2d Cir. 1983)................................................................................14

*Kal Kan Foods, Inc. v. The Iams Co.*,
    197 F. Supp. 2d 1061 (S.D. Ohio 2002) ............................................15, 18, 37, 39

*Khosla v. Magruder Mem. Hosp.*,
    No. 92OT053, 1993 Ohio App. LEXIS 3291 (Ohio Ct. App. June 30, 1993)........................46

*Kosik v. Banc One Ins. Agency, Inc.*,
    No. 4:07-cv-2788, 2008 U.S. Dist. LEXIS 108001 (N.D. Ohio Apr. 28, 2008)....................10

*L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*,
    9 F.3d 561 (7th Cir. 1993) ..............................................................................39

vii

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)...................................................................................15, 48

*M.J. DiCorpo, Inc. v. Sweeney,*
  634 N.E.2d 203 (Ohio 1994) ........................................................................44

*Magic Foam Sales Corp. v. Mystic Foam Corp.,*
  167 F.2d 88 (6th Cir. 1948) .........................................................................51

*Manson v. Stacescu,*
  11 F.3d 1127 (2d Cir. 1993)..........................................................................16

*Medina v. Bauer,*
  No. 02 Civ. 8837 (DC), 2004 U.S. Dist. LEXIS 910 (S.D. N.Y. Jan. 27, 2004).............. 25-26

*Menendez v. Faber, Coe & Gregg, Inc.,*
  345 F. Supp. 527 (S.D. N.Y. 1972), *aff'd sub nom., Menendez v. Saks & Co.*, 485
  F.2d 1355 (2d Cir. 1973) ..............................................................................23

*Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union,*
  221 F.2d 644 (6th Cir. 1955) ..........................................................................4

*Merrick v. Sharp & Dohme, Inc.,*
  185 F.2d 713 (7th Cir. 1950) .........................................................................52

*Metropolis Night Club v. Doe,*
  No. 66184, 1994 Ohio App. LEXIS 5783 (Ohio Ct. App. Dec. 22, 1994)............................46

*Meyer Goldberg, Inc. v. Goldberg,*
  717 F.2d 290 (6th Cir. 1983) .........................................................................18

*Mezibov v. Allen,*
  411 F.3d 712 (6th Cir. 2005) .........................................................................43

*Moir v. Greater Cleveland Reg'l Transit Auth.,*
  895 F.2d 266 (6th Cir. 1990) ..........................................................................9

*Moon v. Harrison Piping,*
  375 F. Supp. 2d 577 (E.D. Mich. 2005), *rev'd on other grounds*, 465 F.3d 719 (6th
  Cir. 2006) .................................................................................................25

*Moss v. Morgan Stanley, Inc.,*
  719 F.2d 5 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984)...............................20

*Nelson Radio & Supply Co. v. Motorola, Inc.,*
  200 F.2d 911 (5th Cir. 1952) ...................................................................... 33-34

*NicSand, Inc. v. 3M Co.,*
  507 F.3d 442 (6th Cir. 2007) .........................................................................36

viii

*NL Indus., Inc.* v. *Gulf & Western Indus., Inc.*,
   650 F. Supp. 1115 (D. Kan. 1986) ...................................................................................29

*Novatel Comm'n, Inc. v. Cellular Tel. Supply, Inc.*,
   No. C85-2674A, 1986 U.S. Dist. LEXIS 16017 (N.D. Ga. Dec. 23, 1986) .........................33

*Office of Disciplinary Counsel v. Coleman*,
   88 Ohio St. 3d 155 (2000) ....................................................................................13, 14

*Peck v. General Motors Corp.*,
   894 F.2d 844 (6th Cir. 1990) ..................................................................................18

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993).................................................................................................43

*Public Service Comm'n v. Wycoff Co.*,
   344 U.S. 237 (1952) ..........................................................................................52-53

*R.C.W., Supervisor, Inc. v. Cuban Tobacco Co.*,
   220 F. Supp. 453 (S.D. N.Y. 1963)..........................................................................23

*Raines v. Byrd*,
   521 U.S. 811 (1997)...............................................................................................15

*Rand v. Anaconda-Ericsson, Inc.*,
   794 F.2d 843 (2d Cir. 1986)...................................................................................16

*Richmond v. Nationwide Cassel L.P.*,
   52 F.3d 640 (7th Cir. 1995) ...................................................................................20

*Ritchie v. Simpson*,
   170 F.3d 1092 (Fed. Cir. 1999)...........................................................................47, 49

*Ruff v. Federal Express Corp.*,
   1997 Fed. Appx. 30288 (6th Cir. 1997).....................................................................9

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*,
   973 F.2d 474 (6th Cir. 1992) ..................................................................................16

*Scharmer v. Carrollton Mfg. Co.*,
   525 F.2d 95 (6th Cir. 1975) ....................................................................................17

*Scheidler v. Nat'l Org. for Women, Inc.*,
   537 U.S. 393 (2003).............................................................................................26

*Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*,
   462 F.3d 666 (6th Cir. 2006) ..................................................................................10

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
   473 U.S. 479 (1985)...............................................................................................30

ix

*Semiconductor Energy Lab. Co. v. Samsung Electronics Co.*,
   204 F.3d 1368 (Fed. Cir. 2000)..................................................................................25

*Soro v. Citigroup*,
   287 Fed. Appx. 57 (11th Cir. 2008).............................................................................49

*Sound Video Unlimited, Inc. v. Video Shack, Inc.*,
   700 F. Supp. 127 (S.D. N.Y. 1988)..............................................................................16

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,
   735 F.2d 346 (9th Cir. 1984) .......................................................................................49

*Stevens v. Lowder*,
   643 F.2d 1078 (5th Cir. 1981) .....................................................................................17

*Stiles v. Chrysler Motors Corp.*,
   624 N.E.2d 238 (Ohio Ct. App. 1993).........................................................................45

*Surace v. Wuliger*,
   495 N.E.2d 939 (Ohio 1986) .......................................................................................44

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006) ...................................................................................16

*The Cincinnati Gas & Elec. Co. v. General Elec. Co.*,
   656 F. Supp. 49 (S.D. Ohio 1986) ...............................................................................27

*The Thermos Co. v. Igloo Prod. Corp.*,
   No. 93 C 5826, 1995 U.S. Dist. LEXIS 18382 (N.D. Ill. Dec. 13, 1995) ...........42, 44

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
   552 F.3d 430 (6th Cir. 2008) ..........................................................................33, 35, 36

*Trollinger v. Tyson Foods, Inc.*,
   370 F.3d 602 (6th Cir. 2004) ................................................................................16, 28

*U.S. v. Penton*,
   No. 07-10106, 2008 U.S. App. LEXIS 25373 (11th Cir. 2008) .........................23, 24

*Union Savings Assn. v. Home Owners Aid, Inc.*,
   23 Ohio St. 2d 60 (1970) .............................................................................................13

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657 (1965).....................................................................................................42

*United States v. Moriarty*,
   8 F.3d 329 (6th Cir. 1993) .............................................................................................9

*Univ. of W. Va. Board of Tr. v. VanVoorhies*,
   278 F.3d 1288 (Fed Cir. 2002).....................................................................................25

x

*Universal Sewing Machine Co. v. Standard Sewing Equip. Corp.*,
   185 F. Supp. 257 (S.D. N.Y. 1960)................................................................51, 52

*Urban v. Fulton*,
   No. 49921, 1985 Ohio App. LEXIS 9701 (Ohio Ct. App. Dec. 19, 1985)........................ 44-45

*Van Dorn Co. v. Howington*,
   623 F. Supp. 1548 (N.D. Ohio 1985).........................................................31, 32

*Warren v. Mfrs. Nat'l Bank*,
   759 F.2d 542 (6th Cir. 1985) .................................................................16, 17

*Warth v. Seldin*,
   422 U.S. 490 (1975)..........................................................................47-48

*Weber v. NFL*,
   112 F. Supp. 2d 667 (N.D. Ohio 2000)........................................................41

*Wexler v. Jewish Hosp. Ass'n. of Cincinnati*,
   Nos. C-820654, C-820906, 1983 Ohio App. LEXIS 11806 (Ohio Ct. App. Oct. 26,
   1983) ...........................................................................................44

*Williams v. The 5300 Columbia Pike Corp.*,
   891 F.Supp. 1169 (E.D. Va. 1995) ...........................................................34

*Windsurfing Int'l Inc. v. AMF Inc.*,
   828 F.2d 755 (Fed. Cir. 1987)................................................................51

*Zavala v. Wal-Mart Stores, Inc.*,
   393 F. Supp. 2d 295 (D. N.J. 2005) ..........................................................27

## STATUTES

12 U.S.C. § 95a ...................................................................................22

15 U.S.C. §§ 12-27 ...............................................................................35

15 U.S.C. § 15 .....................................................................................17

15 U.S.C. § 15b ...................................................................................34

15 U.S.C. § 1119...............................................................................12, 50, 51, 52

15 U.S.C. § 1125(a) ........................................................................18, 37, 38

18 U.S.C. § 1964(c) ..............................................................................27

18 U.S.C. § 1341...............................................................................24, 26

18 U.S.C. § 1951..................................................................................26

18 U.S.C. § 1951(b)(2) ..........................................................................................26

18 U.S.C. § 1956 ..................................................................................................26

 18 U.S.C. § 1957 .................................................................................................26

18 U.S.C. § 1961(1) ..............................................................................................22

18 U.S.C. § 1962 ...........................................................................................passim

18 U.S.C. § 1964(c) ...............................................................................15, 21, 27, 30

22 U.S.C. §§ 6021–6091 .......................................................................................22

22 U.S.C. § 6022(6) ..............................................................................................21

28 U.S.C. § 1654 ..................................................................................................12

Helms-Burton Act of 1996.....................................................................................23

Ohio Rev. Code § 4165.02..............................................................................19, 46

Ohio Rev. Code § 4705.01.....................................................................................13

## OTHER AUTHORITIES

31 C.F.R. 515.201 ................................................................................................22

37 C.F.R. § 2.80 ....................................................................................................4

37 C.F.R. §§ 2.101(b),(c) .......................................................................................4

37 C.F.R. §§  2.102(a),(c) ......................................................................................4

37 C.F.R. §2.102 ....................................................................................................5

Fed. R. Civ. P. 9(b) ..............................................................................................25

Fed. R. Civ. P. 12(b)(1) ...........................................................................................9

Fed. R. Civ. P. 12(b)(6)..........................................................................................32

Loc. R. 83 ........................................................................................................12-13

J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition* (4th ed. 2009) ..51, 53

121 HARVARD LAW REVIEW 1652 (2008)...............................................................20

U. S. CONST., art III ......................................................................................passim

## INTRODUCTION

This case is "much ado" about the efforts of Defendant Max Rohr, Inc. ("Max Rohr") to enforce its rights in the DUTCH TREATS trademark, a registered mark for cigars since 1970. Plaintiff Rohit Prakash ("Prakash") applied to register the mark TREAT for "filter-tipped cigarettes" in the U.S. Patent and Trademark Office ("PTO").  Max Rohr filed an opposition to registration of the mark TREAT because of the potential for confusion with, or dilution of, the DUTCH TREATS mark.  Prakash counterclaimed for cancellation of the DUTCH TREATS mark.  Although the PTO proceeding is pending, Prakash filed this suit.  His Amended Complaint ("Complaint" or "Compl.") is a 326 paragraph monstrosity that invokes everything from RICO to the Ohio Deceptive Trade Practices Act against 15 defendants, including Max Rohr's counsel.

This Court should dismiss the entire Complaint, and all defendants.  This Court lacks personal jurisdiction over 14 of the 15 defendants that Prakash sued, as shown in the defendants' separate Motions to Dismiss.  In addition, as shown here, the Court lacks subject matter jurisdiction of Counts 1-6 and 8-11,[1] because Prakash cannot prosecute those claims for his corporation *pro se* and has no standing to make those claims himself.  Too, Prakash lacks standing to make the claims in Count 7 to cancel the registration of any mark, except Max Rohr's DUTCH TREATS mark.  And even this last fragment of a claim must be dismissed, because this Court lacks subject matter jurisdiction to hear a free-standing complaint for cancellation of a registered mark.  Moreover, none of the allegations of the Complaint are sufficient to state a claim.

Prakash's lack of standing to sue has many dimensions.  As a *pro se* litigant, Prakash can litigate only claims personal to him.  He cannot assert claims on behalf of another person or

---

[1]        For the sake of brevity, we use the shorter style of "Count 1" to refer to specific counts of the Complaint.

entity—not even for Somya, Inc. ("Somya"), his wholly owned corporation that sold herbal cigarettes.  The Complaint makes clear that Counts 1-6 and 8-11 are essentially unfair competition claims of one sort or another, and therefore are claims of Somya.  As a non-lawyer, Prakash cannot represent Somya to assert its claims.  Furthermore, as Somya's shareholder, Prakash has no standing to complain of injury to Somya.  Therefore, Counts 1-6 and 8-11 of the Complaint must be dismissed for lack of subject matter jurisdiction.

Even aside from Prakash's lack of standing to assert claims for injury to Somya, Counts 1-6 and 8-11 of the Complaint fail to state a claim upon which relief can be granted.  These defects are not curable, and therefore require dismissal with prejudice.  None of these Counts of the Complaint contain allegations of fact sufficient to support its legal conclusions, as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The vagueness of Counts 4 and 8-10 is particularly conspicuous.  Despite the number of allegations and pages devoted to Prakash's RICO claim (Count 1), Prakash's attempt to allege the required "pattern of racketeering activity" or RICO injury fails as a matter of law, and his antitrust conspiracy claims (Counts 2-3) are fatally flawed because each is a claim of a "bathtub" conspiracy among related defendants, barred by the Supreme Court decision in *Copperweld v. Independence Tube Corp.*, 467 U.S. 752 (1984).  No cause of action—state or federal—can be based on the activities of Max Rohr or its counsel to enforce Max Rohr's rights in the DUTCH TREATS mark.  Counts 5 and 6 fail because the Complaint alleges no connection between the alleged misrepresentations of the "Cuban" or "Dutch" origins of cigars sold by certain defendants, and any injury to Prakash or Somya.  Count 11 is directed only to individual defendants, and its failure to state a claim is addressed in the Motions and Supporting Memoranda filed by such defendants.  *See* Dkts. 27, 29, 30, 32.  However, because Prakash's lack of standing affects Count 11, and the theory of

liability in Count 11 is "derivative" of his claims against the employers of the individual defendants, Count 11 is within the scope of this Joint Motion as well.

This Court lacks subject matter jurisdiction of Count 7 of the Complaint.  Prakash has no standing to seek cancellation of the registration of any mark except DUTCH TREATS. Therefore, every allegation of Count 7 except those related to the cancellation of the DUTCH TREATS mark must be striken, and all defendants other than Max Rohr must be dismissed. Even after this Court has cut the Complaint back to the one claim that Prakash has standing to assert, however, it must dismiss that claim with prejudice and end this case.  This Court has no personal jurisdiction of Max Rohr, as shown in its separate Motion; moreover, as shown here, this Court has no subject matter jurisdiction of a bare claim for cancellation of a registered mark.

The Complaint should be dismissed with prejudice for the reasons described here and in the companion Motions and Memoranda that defendants have filed to challenge jurisdiction, venue and the sufficiency of the allegations of the Complaint as to them.[2]

## RELEVANT ALLEGATIONS OF THE COMPLAINT

This case arose because of the efforts of Max Rohr to enforce its rights in the registered trademark DUTCH TREATS for cigars, and the efforts of Altadis U.S.A. Inc. ("Altadis"), which uses the DUTCH TREATS mark in the sale of cigars, to prevent dilution of the mark and potential customer confusion.  Prakash alleges that he owns an application for federal registration of the trademark TREAT, as a mark for "filter-tipped cigarettes" in International Class (IC) 34. Compl. ¶32.  His intent-to-use application for registration of the mark TREAT was allegedly filed on Dec. 15, 2004.  *Id.*  Prakash alleges that he is the sole owner of Somya, a company that manufactures and sells "herbal, non-tobacco smokes, designed to be alternative smokes and intended to help smokers treat their habit of smoking tobacco."  *Id.* ¶¶18, 33.  Somya allegedly

---

[2]    Every defendant except Altadis U.S.A. Inc. has filed a motion to dismiss for lack of personal jurisdiction and venue; some of these motions also address pleading failures specific to the moving party.  Dkt. 26 explains the relationship of the filings and provides a table of defendants' Motions for the convenience of the Court.

CLE - 2603062.7

used the mark TREAT exclusively to sell herbal non-tobacco smokes, beginning in January 2006. *Id*. ¶¶33, 42. It is alleged that "Plaintiff" and defendants are competitors in the sale of smoking products. *Id*. ¶44.

The Complaint describes, and is based upon, two letters that Charles Grimes ("Grimes"), of the law firm of Grimes & Battersby LLP ("Grimes & Battersby"), sent to Prakash on behalf of Max Rohr and Altadis, and an opposition proceeding, pending in the PTO, that Max Rohr initiated to contest registration of Prakash's TREAT mark. Compl. ¶¶38-40. For the Court's convenience, a copy of these letters, and Prakash's response, which are fairly considered in this 12(b)(6) context,[3] are attached as Exhibits 1-3 to the Declaration of Charles W. Grimes ("Grimes Decl."), which is attached hereto.

Max Rohr, a trademark holding company, owns the DUTCH TREATS trademark for cigars, which has been registered on the Principal Register of the PTO since 1970. Compl. ¶21, 34; Grimes Decl., Ex. 1. Altadis manufactures and sells cigars, tobacco and tobacco-related products, and is Max Rohr's exclusive licensee for its marks, including the mark DUTCH TREATS for cigars. Compl. ¶¶20, 21; Grimes Decl., Ex. 1.

Upon examination of an application to register a trademark on the Principal Register of the PTO, a mark will be published for opposition in the Official Gazette of the PTO if "[i]t appears that the applicant is entitled to have his mark registered…." 37 C.F.R. § 2.80. Within thirty days of such publication, "any person who believes that . . .it would be damaged by the registration of a mark on the Principal Register may file an opposition addressed to the Trademark Trial and Appeal Board…" or a request to extend time to file an opposition. 37 C.F.R. §§ 2.101(b),(c), 2.102(a),(c).

---

[3]    This Court may consider all documents attached to the Complaint, or referred to and relied upon by it, without converting the motion to one for summary judgment. *Mengel Co. v. Nashville Paper Prods. & Specialty Workers Union*, 221 F.2d 644, 647 (6th Cir. 1955).

CLE - 2603062.7

Prakash's intent-to-use application to register TREAT as a mark for "filter-tipped cigarettes" in International Class 34 came to the attention of Grimes, who filed with the PTO two requests for extension of time to oppose Prakash's application pursuant to 37 C.F.R. §2.102, and then sent out a cease-and-desist letter.  Compl. ¶38; Grimes Decl., Ex. 1.  Grimes's letter notified Prakash of the DUTCH TREATS mark, registered on April 21, 1970 in International Class 34, and stated that the mark was owned by Max Rohr and used by Altadis in the sale of cigars for over 30 years.  *Id.*  The letter demanded that "you immediately phase out the use of 'TREAT' as a designation on or in connection with your cigarettes, and expressly abandon your trademark application."  *Id.*  Litigation was threatened if Prakash did not comply.  *Id.*  A formal opposition to the registration of TREAT was filed on behalf of Max Rohr on February 14, 2006 (Compl. ¶40) (the "Opposition Proceeding").[4]

Prakash responded to Grimes's letter as "President and CEO of Somya, Inc", noting "Most of the information on this company and its product 'Treat' can be obtained from the website www.somya.us."  Grimes Decl., Ex. 2.  In response to Somya's letter, Mr. Grimes advised that Max Rohr intended to continue its opposition to the registration of TREAT, and would file suit for trademark infringement and trademark dilution if Somya sold product with the TREAT mark.  Compl. ¶¶39-40; Grimes Decl., Ex. 3.

In response to the cease-and-desist letters, Somya stopped making and selling herbal cigarettes with the TREAT trademark (Compl. ¶41) and, apparently, discontinued making and selling its herbal smokes altogether.  *See, e.g.,* Compl. ¶246a ("Plaintiff has been foreclosed from entering the market for the manufacture and sale of herbal smokes.").  However, Prakash maintained his application for registration of the mark TREAT, "denied [the allegations in the

---

[4]      *See* docket of the Opposition Proceeding (No. 91169175), attached as Exhibit A.  Matters of public record may be taken into account in determining whether to grant a 12(b)(6) motion.  *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

cease-and-desist letters] at the Opposition Proceeding and "counterclaimed against [the] trademark DUTCH TREATS."  Compl. ¶41.  The Complaint alleges that "the Opposition Proceeding at the Trademark Trial and Appeal Board is pending, and "trial briefs are due on October 24, 2010."  *Id.*  In fact, the Opposition Proceeding was stayed at Prakash's request after he filed this case.  *See* Docket of Opposition Proceeding, Ex. A.

As the Opposition Proceeding was finally moving towards the trial stage, Prakash filed this suit *pro se*, purportedly for himself as "the sole owner of the trademark TREAT, the sole applicant for registration of the mark TREAT . . . the sole owner of Somya, Inc.," and as the purported assignee of Somya.  Compl. ¶19.  Prakash does not allege that he is an attorney. Prakash seeks wide-ranging relief against 15 defendants based on 11 federal and state causes of action.  He has joined not only Max Rohr and Altadis, but also four other members of their corporate family, employees of Altadis and one of its related companies, and their counsel.  He also joined two defendants that have had nothing to do with the tobacco business since selling Consolidated Cigar Corporation ("Consolidated Cigar") in 1999.  *See* Compl. ¶¶22-31.  "John Does 1-10" are also joined.

According to the Complaint, Defendant [1] Imperial Tobacco Group PLC ("Imperial") is the sole owner of non-party Altadis S.A. and defendant [2] 800-JR Cigar, Inc. ("800-JR Cigar"), and also owns 55% of defendant [3] Altadis Holdings U.S.A. Inc. ("Altadis Holdings").  Compl. ¶¶28, 30.  Altadis Holdings is alleged to be the sole owner of defendant [4] Altadis U.S.A. Inc. ("Altadis"), which in turn is alleged to be the sole owner of defendants [5] Max Rohr and [6] Cuban Cigar Brands, N.V. ("CCB").  *Id.* ¶¶21-22.[5]  Individual defendants [7] Theo Folz, [8] Gary Ellis, [9] James Colucci, [10] George Gershel are alleged to be current or former executives

---

[5]    This Court may note that the way that the Complaint describes the relationships among the members of the Imperial corporate family has internal contradictions and differs from the corporate disclosure statements that these defendants have filed.  For the purposes of their 12(b)(6) motions, defendants rely on the allegations of the Complaint.  The differences are immaterial to defendants' legal arguments.

and/or directors of Altadis; defendant [11] Lewis Rothman is alleged to be president and CEO of defendant [2] 800-JR Cigar.  *Id.* ¶¶23-25, 29.

Prakash also joined defendant [12] MacAndrews & Forbes Holdings Inc. ("MacAndrews & Forbes"), and its sole shareholder defendant [13] Ronald Perelman, alleging that in 1999, MacAndrews & Forbes sold Consolidated Cigar, allegedly a predecessor of Altadis, to SEITA, an alleged predecessor of Imperial.  Compl. ¶26.  Finally, Prakash names as defendants [14] Grimes & Battersby, LLP, and attorney [15] Charles Grimes, who sent the cease-and-desist letters, and have allegedly represented defendants Max Rohr, CCB, Altadis, and Altadis Holdings "for most of the legal work related to trademarks."  *Id.* ¶¶31, 38.

The central matter of which Prakash complains is the sending of the cease-and-desist letters that objected to his attempted registration and Somya's use of the mark TREAT for cigarettes.  *See, e.g.*, Compl., Count 1, ¶205.[6]  Secondarily, Prakash complains of the procurement, use of and enforcement of the mark DUTCH TREATS, arguing, *inter alia*, that the use of this mark is a fraudulent attempt "to capitalize on the prestige and desireability of authentic Dutch cigars".  *See* Compl., Count 1, ¶196; Count 5, ¶¶252-253; Count 6, ¶¶261-265; Count 7, ¶¶270-275; Count 8, ¶303.  He makes a similar complaint about other marks for cigars that incorporate the term "Dutch", DUTCH MASTERS[7] and DUTCHIES.  *Id.*

Most of the pages and paragraphs of the Complaint are devoted to Count 1, a series of wide-ranging allegations that "defendants" engaged in RICO predicate acts and a RICO conspiracy through the procurement, use and enforcement of 56 U.S. registered trademarks, including 47 marks alleged to have been obtained in violation of laws prohibiting trade with Cuba, such as H. UPMANN, MONTE CRISTO, and POR LARRANAGA.  *See, e.g.*, Compl.

---

6  More general allegations about "defendants" sending "to competitors the notices threatening litigation, and cease & desist letters" appear in Counts 2, 3, and 4.
7  There are four DUTCH MASTERS marks.  Compl. ¶35.

Count 1, ¶¶45-213.  For the convenience of the Court, a table of the alleged "Cuban" marks is attached as Exhibit A to the Declaration of Russell Dize ("Dize Decl.").  Prakash's RICO count also claims that registrations of three other alleged "Cuban" marks, ROYAL CUBAN, ROYAL HAVANA, AND HAVANA SWEETS, and the marks DUTCH TREATS, DUTCH MASTERS and DUTCHIES were procured by mail fraud.  *See, e.g.,* Compl. ¶186 (registration applications for ROYAL CUBAN, ROYAL HAVANA, AND HAVANA SWEETS falsely represented that tobacco was grown from Cuban seed); ¶196 (registration applications for the marks DUTCH TREATS, DUTCH MASTERS and DUTCHIES concealed material fact that goods sold under the mark have no connection to the Netherlands).  A table of the alleged "Dutch" marks is attached as Exhibit B to the Dize Decl.

Counts 2-11 of the Complaint are very general, but appear to be based on the  allegations of trademark procurement, use or enforcement in Count 1.  *See, e.g.*, Compl. Count 2, ¶¶218-220.  Prakash generally alleges that the "defendants" engaged in the alleged wrongs, and there are few specifics about the conduct of any defendant.

Prakash describes the consequences of all of the alleged violations of law in competitive terms, stating:

> Defendants' "enormous expansion of business operations and resources" made them a "formidable opponent" whose cease and desist demands "plaintiff" could not oppose (Compl., Count 1, ¶140);

> Defendants used the fraudulently obtained trademark DUTCH TREATS "[t]o acquire interest in or control of plaintiff's trademark TREAT and its related enterprise in herbal smokes…" (Compl., Count 1, ¶¶197, 207);

> Defendants used "[t]heir deceptive and fraudulently acquired  trademark DUTCH TREATS . . .to restrict output from plaintiff's new business and suppress competition in [the] marketplace" (Compl., Counts 2-4, ¶¶222, 237, 241-246);

> "[M]isrepresented goods bearing [challenged trademarks] . . . wrongfully divert trade by destroying the smoker's ability to judge fairly between competitive product. Plaintiff is in commercial competition with defendants" (Compl., Counts 5-6, ¶¶256, 264.);

8

"Plaintiff is likely . . . to be damaged as a result of such unfair competition." (Compl., Count 8, ¶305);

"Defendants have engaged in unfair methods of competition" and "[c]aused injury to plaintiff's business and property." (Compl., Count 9, ¶¶307-308).

## LAW & ARGUMENT

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's  subject matter jurisdiction.  When such a motion is made, the plaintiff bears the burden of demonstrating facts which support a finding of federal subject matter jurisdiction. *Fagan v. Luttrell*, No. 97-6333, 2000 U.S. App. LEXIS 15345, at *5 (6th Cir. June 22, 2000),[8] *citing Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  The court may, where appropriate, determine that it lacks subject matter jurisdiction on review of the pleadings, construing them in the light most favorable to plaintiff.  *Fagan*, 2000 U.S. App. LEXIS, at *5 (dismissing claims against defendants in their official capacities on grounds of sovereign immunity); *Ruff v. Federal Express Corp.*, No. 96-6462, 1997 U.S. App. LEXIS, at *3 (6th Cir. 1997) (dismissing the complaint because Title VII provides no cause of action against the EEOC for claims of procedural defects in handling employment-discrimination complaints).  A court's decision that it lacks subject-matter jurisdiction of a claim is dispositive of that claim.  *Bell v. Hood*, 327 U.S. 678, 682 (1946).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. When reviewing a motion to dismiss for failure to state a claim, the Court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law. *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007) (citing *United States v. Moriarty,* 8 F.3d 329, 332 (6th Cir. 1993)).  To survive a motion to dismiss under Rule

---

[8] The unpublished cases cited to herein are attached to this Memorandum.

12(b)(6), the complaint must contain "[e]nough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.  "Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions.  Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *First Am. Title Co. v. DeVaugh,* 480 F.3d 438, 444 (6th Cir. 2007) (quoting *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.,* 462 F.3d 666, 671-72 (6th Cir. 2006)).

As noted above, the claims set forth in Counts 1-6 and 8-11 of the Complaint are all in the nature of claims for anticompetitive conduct and/or competitive injury.  That the focus of the Complaint is alleged competitive injury is apparent, too, from the leading description of "Plaintiff's" loss under the "Recovery" section of the Complaint:

> Plaintiff has suffered the loss of several millions of cigarettes in inventory bearing the trademark TREAT, revenue, profits, and business expansion opportunities. Plaintiff's business, goodwill, brand equity, customer and supplier relationships have sustained irreparable injuries for which he has no adequate remedy at law. Plaintiff seeks recovery of compensatory money damages according to offer of proof at time of trial, including an award of lost profits.

Compl. ¶317.

Despite Prakash's finesse in using the term "Plaintiff" throughout the Complaint, only Somya, the Ohio corporation, is alleged to have been in the business of selling herbal cigarettes. *See* Compl. ¶¶33, 34.[9]  Therefore, Counts 1-6 and 8-11 of the Complaint assert claims of Somya. All of these Counts must be dismissed as against all of the defendants, for two reasons.  First, as a *pro se* litigant and a non-lawyer, Prakash cannot represent Somya in this Court.  Second, as Somya's shareholder, Prakash cannot assert a personal claim for competitive harm to Somya, or

---

[9]      Prakash's statement, as "President and CEO of Somya, Inc.", that 'Treat' was Somya's product (Compl. ¶39) contradicts and controls over artfully crafted allegations, such as Compl. ¶41, that "Plaintiff and his related company are in the business of manufacturing and selling novel herbal smokes...." *Kosik v. Banc One Ins. Agency, Inc.,* No. 4:07-cv-2788, 2008 U.S. Dist. LEXIS 108001, at *8-10 (N.D. Ohio Apr. 28, 2008) (Plaintiff cannot rest upon the allegations in the Complaint where they are contradicted by appropriately submitted facts drawn from documents incorporated by reference into the Complaint and central to Plaintiff's claims).

CLE - 2603062.7

for derivative harm to himself.  This Court must dismiss Counts 1-6 and 8-11 of the Complaint because Prakash cannot advance such claims on behalf of either Somya or himself.

Defendants also show this Court that even if Somya were properly before the Court, Counts 1-6 and 8-11 of the Complaint fail to state a claim upon which relief can be granted. Defendants have focused on seven (7) of the many deficiencies in the pleading of Counts 1-6 and 8-11, namely:

1.      That Count 1 fails to state a claim under the RICO statute for several reasons, including a failure adequately to allege a "pattern of racketeering activity", or injury to business and property by reason of a violation of the statute (Section III, *infra*);

2.      That Counts 2 and 3 allege a conspiracy "in restraint of trade" among related actors with a unitary purpose, which cannot be the foundation of a federal antitrust claim (Section IV, *infra*);

3.      That Counts 2-4 lack the specificity required to state plausible antitrust offenses under *Twombly* (Section V, *infra);*

4.      That Somya, which is not alleged to be selling a product of authentic Dutch or Cuban origin, has no standing to make the Lanham Act claims set forth in Counts 5 and 6 (Section VI, *infra*);

5.      That litigation privilege, and its antitrust analogue, the *Noerr-Pennington* doctrine, immunize defendants from federal or state liability based on their trademark enforcement efforts (Section VII, *infra)*;

6.      That Counts 8-10, which attempt to assert state law causes of action for unfair competition, fail for the same reasons as the Sherman Act and Lanham Act claims (Section VIII, *infra)*; and

7.     That Count 11, which alleges that individual defendants have "derivative liability" for violations of RICO, the Sherman Act and the Lanham Act by their employers, fails because the underlying claims fail (*See,* generally Sections III – VII *infra*), and because there are no allegations that any of the individual defendants personally participated in the alleged wrongs. (*See* the Memorandum filed in support of the Motion of Theo Folz, *et. al.* to Dismiss [Dkt. No. 29], at Section 1).

If the Court agrees that Prakash lacks standing to prosecute Counts 1-6 and 8-11, that these Counts fail to state a claim upon which relief could be granted, only Count 7, the claim for cancellation of trademarks, would remain.  But Count 7, too, must be dismissed, for two reasons. First, Prakash has no standing to complain of the registration of any mark except DUTCH TREATS.   Second, no matter how many marks are the subject of Prakash's cancellation complaint, this Court lacks subject matter jurisdiction to adjudicate them as stand-alone claims, since this case would not otherwise "involve" a registered mark, as required by 15 U.S.C. § 1119.

In the end, this case is only about Prakash's claim for cancellation of the 1970 registration of the DUTCH TREATS mark, and that claim belongs where Prakash first raised it, in the Opposition Proceeding in the PTO, where Max Rohr is opposing the registration of TREAT for "filter-tipped cigarettes."   This case, in its entirety, should be dismissed with prejudice.

I.     **COUNTS 1, 2, 3, 4, 5, 6, 8, 9, 10, AND 11 MUST BE DISMISSED BECAUSE PRAKASH MAY NOT PROSECUTE  SOMYA'S CLAIMS *PRO SE*, EVEN AS ITS ALLEGED ASSIGNEE.**

A person who is not a lawyer may represent himself in federal court (28 U.S.C. § 1654), but he may not represent anyone else.  This Court's rules expressly prohibit a non-attorney from representing anyone except himself:

> No person shall be permitted to practice in this Court or before any
> officer thereof as an attorney or to commence, conduct, prosecute,
> or defend any action, proceeding, or claim in which such person is
> not a party concerned, either by using or subscribing his or her
> own name or the name of any other person, unless he or she has
> been previously admitted to the Bar of this Court.

Loc. R. 83.5(a); *see also* Ohio Rev. Code § 4705.01.  In *In re: O'Connor*, No. 08-16434, 2009

Bankr. LEXIS 1376 (N.D. Ohio Bankr. Feb. 27, 2009), the Court enforced Local Rule 83.5(a),

and held that debtor's daughter could not litigate the debtor's case even as debtor's attorney-in-

fact.  *O'Connor* relied on the Ohio Supreme Court's decision in *Office of Disciplinary Counsel v.*

*Coleman*, 88 Ohio St. 3d 155, 158 (2000), which held that when "a person not admitted to the

bar attempts to represent another in court on the basis of a power of attorney assigning *pro se*

rights, he is in violation of [Revised Code § 4705.01]."  Thus, although Prakash may proceed *pro*

*se* to assert any claim he himself has, he may not appear for or litigate on behalf of Somya.

*Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984).

That Prakash is the sole owner and officer of his corporation does not require a different

result.  The same rule applies: "A corporation cannot maintain litigation *in propria persona*, or

appear in court through an officer of the corporation or an appointed agent not admitted to the

practice of law."  *Union Savings Assn. v. Home Owners Aid, Inc.*, 23 Ohio St. 2d 60 (1970),

syllabus; *see also Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970) (precluding disbarred

attorney from continuing representation of company of which he was officer); *City of Cleveland*

*v. Deutsche Bank Trust Co,* 571 F. Supp. 2d 807 (N.D. Ohio 2008) (corporation cannot appear in

federal court *pro se,* but must be represented by counsel).

Finally, the purported assignment of Somya's rights to Prakash is nothing more than an

attempt to circumvent the well-established rule that a *pro se* plaintiff may not represent a

corporation.  Courts across the country have condemned this tactic.  *See Bischoff v. Waldorf*, 660

F. Supp. 2d 815, 820-821 (E.D. Mich. 2009) (collecting cases).  In *Coleman*, the Ohio Supreme

Court held that a "private contract cannot be used to circumvent a statutory prohibition based on public policy". 88 Ohio St. 3d at 158. That rule applies to assignments as well. In *Bischoff,* a business owner like Prakash tried to circumvent the rules prohibiting the unauthorized practice of law by causing his company to assign its claims to him. The court dismissed the claims, holding that a litigant may not, through a purported assignment of claims, circumvent the rule requiring a corporation to be represented by counsel. 660 F. Supp. 2d at 821.

The court in *Bischoff* noted that " 'the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries.' " *Bischoff*, 660 F. Supp. 2d at 820, *quoting Jones v. Niagara Frontier Tranps. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983). That is certainly true here. Prakash's 76-page, 329-paragraph Complaint is short on facts but long on conclusory and inconsistent allegations, including complaints about the alleged wrongful acquisition, registration and use of trademarks that are far removed from the TREAT mark for which he is seeking registration. Prakash has sued parties with whom he has had no contact, and against whom he has no real complaint.

This Court should not indulge Prakash's foray into the unauthorized practice of law. Counts 1-6 and 8-11, all claims sounding in unfair competition that belong to Somya, should be dismissed because Prakash cannot maintain them *pro se*.

## II. PRAKASH, INDIVIDUALLY, LACKS STANDING TO COMPLAIN OF COMPETITIVE INJURY TO SOMYA.

Prakash, as a mere shareholder of Somya, lacks both Article III standing, and standing under RICO, the antitrust laws or the Lanham Act to assert the claims for competitive injury that are made in the Complaint. Therefore, Counts 1-6 and Count 11 of the Complaint should be dismissed. The state law claims for competitive injury — Counts 8-10 — should be dismissed for the same reason.

### A.  Prakash Lacks Article III Standing.

Prakash lacks Article III standing because he has not alleged that he "(1) has suffered an 'injury in fact'; (2) the injury is fairly traceable to the challenged action of the defendant, *i.e.*, a causal connection; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Kal Kan Foods, Inc. v. The Iams Co.*, 197 F. Supp. 2d 1061, 1065 (S.D. Ohio 2002) (citations omitted).  The U.S. Supreme Court has long held that a plaintiff's complaint "must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819 (1997).  A "particularized" injury is one that "must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555,  560 n.1 (1992).  Also, the injury "must be actual or imminent, not conjectural or hypothetical." *Kal Kan*, 197 F. Supp. 2d at 1069 (citations omitted).  Prakash has not alleged facts to show that he suffered injury in fact by reason of any of the events of which he complaints in Counts 1-6 or 8-11 of the Complaint.  As noted, these Counts are all directed to competitive injury, and Prakash concedes that Somya, not he, is the seller of the "herbal smokes" that allegedly compete with the cigars whose trademarks and sales are attacked in the Complaint.  Because Prakash has alleged no injury in fact, the Complaint clearly does not allege an injury fairly traceable to conduct of any defendant or that is anything but speculative.  In addition, Prakash lacks standing under the statutes on which his claims depend.

### B.  Prakash Lacks Standing to Assert a RICO Claim

RICO standing "is a more rigorous matter than standing under Article III." *Denny v. Deutsche Bank AG,* 443 F.3d 253, 266 (2d Cir. 2006) (citation omitted).  The RICO statute only permits suit by "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter…." 18 U.S.C. § 1964(c).  Prakash cannot avail himself of this law.

15

In order to prosecute a RICO claim, Prakash would have to satisfy the threshold question of standing to assert a RICO violation <u>and</u> the "overlapping" limitation of proximate cause. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 614 (6th Cir. 2004).  As set forth below, Prakash cannot sue personally for the injuries allegedly suffered by Somya.

Prakash cannot assert a RICO claim against the defendants on his own behalf because the competitive injury of which he complains is not his injury, but harm allegedly suffered by Somya, an Ohio corporation allegedly in the business of selling "herbal non-tobacco smokes." *See* Compl. ¶¶18, 33.  It is well settled that a shareholder does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 487 (6th Cir. 1992) (holding that RICO plaintiff alleging that the value of his stock was destroyed lacks standing because his injury is derivative of the corporation's injury); *see also Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) (RICO claim asserted by individual dismissed because the "injuries are the companies' and the companies have the right to vindicate them"); *Manson v. Stacescu*, 11 F.3d 1127, 1132-33 (2d Cir. 1993); *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986).  A shareholder is not permitted to assert a RICO claim for injury to his corporation even if he is the sole shareholder.  *Warren v. Mfrs. Nat'l Bank*, 759 F.2d 542, 544-545 (6th Cir. 1985) (plaintiff, who was the sole shareholder, an employee, and chairman of a corporation, lacked standing to maintain a RICO action against a bank that allegedly defrauded that corporation); *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127, 136-137 (S.D. N.Y. 1988) (granting summary judgment and dismissing RICO claim brought by shareholder for lack of standing).

Count 1, the RICO claim, should be dismissed against all defendants because Prakash lacks standing to bring the claim.  In addition, because Prakash has no standing to pursue this

16

claim, his claim for "derivative liability" against the individual defendants under RICO – set forth in his eleventh claim for relief (Comp. ¶¶311-315) – should also be dismissed.

### C.    Prakash Lacks Standing Under the Antitrust Laws.

As under RICO, a plaintiff has standing to assert antitrust claims only if he is "injured in his business or property by reason of anything forbidden in the antitrust laws…." 15 U.S.C. § 15. As the Sixth Circuit has explained, antitrust standing to sue is "at the center of all antitrust law and policy. It is not a mere technicality." *Hypoint Tech., Inc. v. Hewlett-Packard Co.*, 949 F.2d 874, 877 (6th Cir. 1991).  Rather, it is "the glue that cements each suit with the purposes of the antitrust laws, and prevents abuses of those laws." *Id.*

To establish standing a plaintiff must present "a proper claim for antitrust injury as well as demonstrate that plaintiff is the proper party to bring the antitrust suit." *Gentile v. Fifth Avenue Otolaryngology, Inc.*, No. 4:05 CV 2936, 2006 U.S. Dist. LEXIS 60881, at *13 (N.D. Ohio Aug. 28, 2006) (citations omitted).  An "antitrust injury" is an injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.  The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

Under the antitrust laws, a "[s]hareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation." *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 315 (6th Cir. 1987).  Where "plaintiff's business" is in fact the business of a corporation, the plaintiff shareholder has no antitrust claim.  *Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95, 100 (6th Cir. 1975).  A "[s]hareholder's rights are merely derivative and can be asserted only through the corporation." *Warren*, 759 F.2d at 544 (quoting *Stevens v. Lowder*, 643 F.2d 1078, 1080 (5th Cir. 1981)).  That is true whether the shareholder

17

has a derivative claim for lost income or loss on his investment.  *See Peck v. General Motors Corp.*, 894 F.2d 844, 846-849 (6th Cir. 1990) (dismissing the individual plaintiff's antitrust claims because his lost commissions were merely incidental to the injuries suffered by the corporation); *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 294 (6th Cir. 1983) (dismissing the shareholders' antitrust claims because their loss on investment was "[m]erely a derivative effect of the injury to the corporations").

Accordingly, Prakash's individual claims made in Counts 2, 3 and 4 should be dismissed. Further, because Prakash has no standing to pursue these claims, his claim for "derivative liability" against the individual defendants under the antitrust laws – set forth in his Count 11 (Compl. ¶¶311-315) – should also be dismissed.

### D.    Prakash Lacks Standing Under § 43 of the Lanham Act

Plaintiff asserts two claims pursuant to section 43(a) of the Lanham Act, *i.e.,* 15 U.S.C. § 1125(a).  Compl. Counts 5 and 6, ¶¶247-267.  To state a claim under 15 U.S.C. § 1125(a), a plaintiff must demonstrate:

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Kal Kan*, 197 F. Supp. 2d at 1068 (citation omitted).

To establish the injury-in-fact and causation elements, a plaintiff must show that "some consumers bought the defendants' product, under a mistaken belief about that product, when they otherwise would have purchased the ***plaintiff's product***."  *Kal Kan*, 197 F. Supp. 2d at 1070 (emphasis added) (citations omitted).  Prakash's Lanham Act counts miss the mark.  His allegations show that Prakash suffered no "injury in fact": under the allegations of the

Complaint, the only product of "plaintiff's" that could be mistaken for a product of "defendants' " is a product sold by Somya, not Prakash.  *Compare* Compl. ¶32 ("Plaintiff is the owner of application for trademark TREAT…") to Compl. ¶33 ("Somya Inc., the related company of plaintiff, used the mark TREAT exclusively in production and selling of herbal, non-tobacco smokes…").  Because Prakash cannot establish Lanham Act standing, Counts 5 and 6 of the Complaint should be dismissed.  Further, to the extent that Count 11 "derivative liability" against the individual defendants is based on the Lanham Act, it should  also be dismissed.

      **E.**     **Prakash Lacks Standing to Assert His State Law Claims.**

For reasons similar to those discussed above, Prakash lacks standing to assert the claims made in Count 8, 9 or 10 of the Complaint.  Counts 8 and 9 are both characterized as unfair competition claims.  *See* Compl. ¶¶303, 307.  However, according to the Complaint, it was Somya that manufactured and sold herbal cigarettes.  Compl. ¶33.  As an owner of Somya and an applicant to register a trademark, Prakash himself has no claim for unfair competition or a violation of Ohio Rev. Code § 4165.02.  Similarly, Prakash (as opposed to Somya) has no 'prospective economic advantage' concerning sales of cigarettes with which any defendant could 'interfere,' so he lacks standing to sue for such interference, as stated in Count 10 for the same reasons.

**III.**    **PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE RICO STATUTE**

RICO was not designed to "cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long term habitual criminal activity."  *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006) (citations omitted).  "Courts and commentators have long argued that" litigants "have put civil RICO to 'outrageous' uses, far beyond those intended by Congress in 1970, seeking treble damages from entirely legitimate, deep-pocketed business organizations, often for claims that amount to nothing more than

CLE - 2603062.7

ordinary business torts or state law claims."  Note, 121 HARVARD LAW REVIEW 1652, 1659 (2008) (citations omitted).

If there is concern about the misuse of the RICO statute in civil suits, then the Complaint should be Exhibit A.  In Count 1, Prakash attempts to turn a garden-variety trademark matter about his right to use the term "TREAT" in connection with herbal cigarettes into a purported decades-long international criminal conspiracy involving multiple corporations, executives and attorneys.  Yet, in 160 rambling paragraphs, Prakash has done nothing more than summarize the lawful acts of well established companies to acquire, register, protect, and enforce famous and highly valuable trademarks used in connection with cigars, characterize those activities as "unlawful," recite the elements of the RICO statute, and make conclusory allegations of liability, all in a desperate attempt to concoct a RICO claim where one surely does not exist.  Because Prakash's Complaint does not "itself…state the essential elements of the RICO action[,]" "it is worthy of dismissal."  *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 646 (7th Cir. 1995) (affirming dismissal of RICO claim).

To state a valid RICO claim, a plaintiff must allege that the defendant violated 18 U.S.C. § 1962, which requires allegations "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citations omitted), *cert. denied*, 465 U.S. 1025 (1984).  *See also Infocision Mgmt. Corp. v. Found. for Moral Law*, Nos. 5:08cv1342, 5:08cv1412, 2009 U.S. Dist. LEXIS 23640, at *19 (N.D. Ohio Jan. 14, 2009) (Lioi, J.) (elements of RICO claim based on a violation of section

CLE - 2603062.7

1962(c)) (citations omitted).[10]  The plaintiff must also allege that he was "injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  Prakash's Complaint here is deficient on numerous grounds.

A.    **Prakash Has Failed to Properly Allege That Defendants Engaged in a Pattern of Racketeering Activity.**

Every one of the four RICO provisions that Prakash claims were violated – 18 U.S.C. §§ 1962(a), (b), (c) and (d) – requires the allegation of a "pattern of racketeering activity". *Infocision, supra*.  Count 1 fails to state a claim upon which relief can be granted under any subpart of 18 U.S.C. § 1962 because none of the purported illegal acts of the defendants listed in the Complaint constitute RICO predicate acts upon which Prakash's claim of violation of RICO can rely.

1.    **Helms-Burton Act and Other Laws Regulating Trade with Cuba**

Prakash devotes almost 80 paragraphs of the Complaint to allegations that defendants engaged in a scheme to acquire the rights to certain trademarks illegally.  Compl. ¶¶63-140. Two allegations form the crux of this claim: The allegation at Compl. ¶73 that "Defendants contravened the provisions of [the] Helms-Burton Act by wrongfully trafficking in property (trademark rights) confiscated by Cuba and claimed by United States nationals in violation of 22 U.S.C. § 6022(6)"; and the allegation at Compl. ¶91 that CCB and Max Rohr had "engaged in transactions in certain Cuban properties over a period of time that contravened the [Trading With the Enemy Act] and the [Cuban Asset Control Regulations] Prohibitions."  These allegations must fairly be understood to refer to the registrations and transfers of 47 allegedly "Cuban" marks that are described in the Complaint at ¶¶103-132, and again at ¶¶141-197.  For the Court's

---

10    As the fifth element suggests, the four subsections of 18 U.S.C. § 1962 require different allegations with respect to the conduct allegedly at issue; i.e., that the defendant "invest" in an enterprise (§ 1962(a)); "acquire or maintain" an interest in an enterprise (§ 1962(b)); "conduct or participate…in the conduct" of an enterprise (§ 1962(d)); or "conspire" to violate subsection (a), (b), or (c) (§ 1962(d)).  Prakash seeks recovery under all four subsections.

21

convenience, a summary table listing those 47 allegedly "Cuban" marks, by mark "family", is attached as Exhibit A to the Dize Decl.  The summary table includes the U.S. trademark registration number by which Prakash refers to the mark in the Complaint, the paragraphs of the Complaint where the mark is mentioned, the dates of U.S. registration and first use in commerce, and the identity of the current owner of the registration.  Dize Decl. ¶¶3, 6. Prakash's RICO claim based on a violation of the Helms-Burton Act and other laws regulating trade with Cuba fails as a matter of law for two reasons.

First, laws regulating trade with Cuba are not offenses that are considered "racketeering activity" under RICO, and therefore cannot be predicate acts.  A RICO claim must allege two or more violations of one of the laws specifically enumerated in the definition of "racketeering activity" in 18 U.S.C. § 1961(1).  *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999); *Gotham Print, Inc. v. Am. Speedy Printing Ctrs., Inc.*, 863 F. Supp. 447, 456 (E.D. Mich. 1994) ("unless the 'activities' of the Defendants…fall within the limited list of 'racketeering activities' set forth in 18 U.S.C. § 1961(1), they cannot be used as 'predicate acts' for purposes of establishing a legally cognizable RICO violation").  Neither the Helms-Burton Act (22 U.S.C. §§ 6021–6091), the Trading with the Enemy Act (12 U.S.C.§ 95a) or the Cuban Asset Control Regulations (31 C.F.R. 515.201 *et. seq.*) are among the list of predicate offenses defined as "racketeering activity" under 18 U.S.C. § 1961(1). Therefore, no RICO claim can be based upon any alleged violation of such laws.

Second, even if violations of the laws prohibiting trade with Cuba could be relied on as predicate offenses, case law establishes that, contrary to Prakash's allegations, the original U.S. registered trademarks in each alleged "Cuban" mark family were never confiscated by Cuba, and have been legally held, used and transferred in the U.S.  Showing the legal insufficiency of the allegations of this portion of Count 1 begins with the observation that trademark rights are

territorial. *Fuji Photo Film Co., Inc. v. Shionara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985) ("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme.") (citing *Ingenohl v. Walter E. Olsen & Co.*, 273 U.S. 541, 544 (1927)), *reh'g denied en banc*, 761 F.2d 695. Therefore, there may— and in this case—there do exist separate trademark rights in the United States, in Cuba, and in other countries. U.S. registration and/or use for many of the alleged "Cuban" marks about which Prakash is complaining, such as H. UPMANN, MONTECRISTO and POR LARRANAGA, predate not only the Helms-Burton Act of 1996, but also the Castro government's seizure of Cuban cigar factories on September 15, 1960. The rights of Max Rohr and CCB, or their predecessors in interest, to use the alleged "Cuban" marks in the U.S. have been acknowledged or determined in a long line of cases. *See, e.g., Menendez v. Faber, Coe & Gregg, Inc.*, 345 F. Supp. 527 (S.D. N.Y. 1972), *aff'd sub nom., Menendez v. Saks & Co.*, 485 F.2d 1355 (2d Cir. 1973) and *F. Palicio y Compania, S.A. v. Brush,* 256 F. Supp. 481 (S.D. N.Y. 1966), *aff'd*, 375 F.2d 1011, 1967 U.S. App. LEXIS 6609 (2d Cir. 1967), *cert. denied sub nom, Brush v. Cuba*, 389 U.S. 830 (1967) (holding that the Cuban refugee owners of the trademarks H. UPMANN, MONTE CRISTO, and POR LARRANAGA owned the U.S. rights in those marks); *R.C.W., Supervisor, Inc. v. Cuban Tobacco Co.*, 220 F. Supp. 453 (S.D. N.Y. 1963) (giving early history of U.S. registrations of the CABANAS mark, beginning in 1906; confirming the right of the U.S. owner of those registrations to use the marks in the U.S.; and noting that no goods from Cuba entered the U.S. after the 1962 embargo order).

In *U.S. v. Penton,* No. 07-10106, 2008 U.S. App. LEXIS 25373 (11th Cir. 2008), the U.S. Court of Appeals for the Eleventh Circuit rejected the very same assertions that Prakash makes here regarding the alleged illegality of Max Rohr's acquisition or ownership of the U.S.

registrations for various marks including ROMEO Y JULIETA and TRINIDAD.  According to the Court:

> The Helms-Burton Act provides that no transactions or enforcement of rights of Cuban trademarks can occur under United States law. For this reason, the district court properly instructed the jury that Cuban marks are entitled to no protection in United States courts. ***This limitation, however, is not extended to a trademark that is properly registered with the United States Patent and Trademark Office by a company incorporated outside of Cuba. The mere fact that the trademarks used by Altadis and the other victims in this case are "parallel" to marks used by Cuban companies for Cuban cigars marketed outside the United States does not mean that the U.S. marks registered by U.S. companies are not protected***. Here, testimony at trial demonstrated that the original owners sold their rights to various companies, including Altadis U.S.A. and Cuban Cigar Co.

*Id.* at *12-13 (emphasis added).

In sum, Prakash cannot rely on alleged violations of federal laws governing trading with Cuba as predicate acts of racketeering activity for two reasons: violations of such laws are not recognized, by statute, as predicate acts; and the allegations that the acquisition of existing U.S. registrations of U.S. marks violated such laws are insufficient as a matter of law.

## 2.    Mail Fraud

Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice."  18 U.S.C. § 1341.  "Courts have repeatedly held in RICO cases alleging mail fraud and wire fraud as the 'predicate acts', the underlying fraudulent activities must be pled with particularity." *Gotham Print*, 863 F. Supp. at 459 (citations omitted).  In order to state a valid claim, a plaintiff must "assert factual allegations stating with particularity the time, place, subject matter and the precise individuals who, through use of the mail or telephone, made the purportedly fraudulent statements."  *Id*. at 458.

Courts have been particularly sensitive to Fed. R. Civ. P. 9(b)'s pleading requirements in RICO cases in which the "predicate acts" are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent scheme.  *Gotham Print*, 863 F. Supp. at 458; *see also Moon v. Harrison Piping*, 375 F. Supp. 2d 577, 592 (E.D. Mich. 2005), *rev'd on other grounds*, 465 F.3d 719 (6th Cir. 2006) (citing *Bender v. Southland*, 749 F.2d 1205, 1216 (6th Cir. 1984) (predicate acts must be plead with particularity)); *Advocacy Org.*, *supra*, (RICO claim dismissed for failure to plead fraud with particularity); *Infocision,* 2009 U.S. Dist. LEXIS 23640, at *19-27 (Lioi, J.) (same).   Those predicate acts, in a claim of mail or wire fraud, must generally include allegations of such mail and/or wire activity outside of the alleged scheme complained of.  *See Ashland Oil v. Danette*, 875 F.2d 1271 (7th Cir. 1989).

Prakash's allegations with respect to defendants' mail and wire fraud concern, entirely, a "scheme to defraud the USPTO by means of false or fraudulent representations" concerning certain "Material information regarding assignors, trademarks and the CACR violations".  Compl. ¶¶142-144 *et seq*.   According to Prakash, this scheme to defraud the PTO was implemented to "defraud[] the USPTO into granting [defendants'] federal registrations for trademarks in order to get a free ride on the fame and goodwill of authentic Cuban and Dutch brands of cigars."  Compl. ¶144.  Assuming, *arguendo*, the truth of these absurd allegations, Prakash's claim fails as a matter of law because it is well settled that " 'inequitable conduct before the PTO cannot qualify as an act of mail fraud or wire fraud for purposes of the predicate act requirement' " of RICO.  *Univ. of W. Va. Board of Tr. v. VanVoorhies*, 278 F.3d 1288, 1303 (Fed Cir. 2002), *quoting Semiconductor Energy Lab. Co. v. Samsung Elecs. Co*., 204 F.3d 1368, 1380 (Fed. Cir. 2000); *Medina v. Bauer*, No. 02 Civ. 8837 (DC), 2004 U.S. Dist. LEXIS 910

(S.D. N.Y. Jan. 27, 2004) (dismissing RICO claim where law was "clear" that false statements to PTO could not constitute a RICO predicate act).  Accordingly, mail fraud under 18 U.S.C. § 1341 cannot constitute racketeering activity for Prakash's RICO claim.

### 3.    Extortion

Prakash alleges that defendants engaged in extortion in violation of 18 U.S.C. § 1951 by virtue of the cease and desist letters related to the TREAT trademark.  Compl. ¶205. As explained *infra* at Section VII, enforcement of trademark rights is regarded as privileged activity, whether under federal or state law.  Even if such privilege did not bar a RICO claim, Prakash's allegations that the cease and desist letters were extortion in violation of the Hobbs Act are insufficient as a matter of law.  Pursuant to 18 U.S.C. § 1951(b)(2), extortion is defined as, "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  Prakash's allegations of extortion are untenable because he fails to allege that defendants either "pursued [ ]or received 'something of value from' [Defendants] that they could exercise, transfer, or sell." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 405 (2003) (citation omitted) (plaintiff's Hobbs Act extortion claim was insufficient because defendants did not "obtain" property from plaintiffs). Prakash's decision to discontinue use of his TREAT mark for herbal cigarettes does not give rise to a claim under the Hobbs Act because Defendants have not received any property from him. To conclude otherwise "would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion." *Id.*

### 4.    Money Laundering

Prakash also attempts to invoke, as predicate acts, unspecified activities of money laundering in violation of 18 U.S.C. §§ 1956 and 1957 Compl. ¶¶210-213; *see also* Compl.

¶¶133-136.   These very general allegations fail to satisfy RICO pleading standards for the reasons articulated by the court in *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295 (D. N.J. 2005):

> Plaintiffs' allegations of money laundering are similarly vague and insufficient to support a RICO claim. This Court cannot conclude that Plaintiffs have stated predicate acts of money laundering sufficient to sustain a RICO claim. The allegations largely recite the elements of different money laundering provisions, but do not identify the relevant financial transactions or conduct by Wal-Mart, or describe more particularly the contractors' "money laundering activities" that allegedly involved banks, accountants, attorneys, and others. Thus, Plaintiffs have failed to allege sufficient facts to state predicate acts of money laundering.

*Id.* at 315-316 (footnote omitted) (dismissing RICO claim as a matter of law).

**B.    Prakash Failed to Allege that He Has Suffered Injury By Reason of a Violation of Section 1962.**

The Complaint's allegations of injury are insufficient to support a RICO claim because there are no allegations that these purported injuries arose "by reason of a violation" of § 1962. 18 U.S.C. § 1964(c); *see, e.g., The Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 83 (S.D. Ohio 1986) ("the gist of the offense set forth in section 1962(a) is the use or investment of 'racketeering income[,]'" and damages are available "only to a 'person injured in his business or property *by reason of a violation of section 1962*....'"") (emphasis added).

In *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992), the U.S. Supreme Court held that a plaintiff must show that the RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well."  *Id.* at 268.  "Proximate cause for RICO purposes...should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010) (plurality op.), *quoting*

*Holmes*, 503 U.S. at 258.  A "link that is too remote, purely contingent, or indirect is insufficient." *Id.*, *quoting Holmes* at 503 U.S. at 271, 274.  According to the Sixth Circuit:

> RICO not only imposes a statutory standing limitation on claimants who seek recovery for derivative or indirect injuries, but it also incorporates other traditional proximate-cause limitations on claimants.
>
> * * *
>
> Accordingly, while a RICO plaintiff and defendant may have a *direct* and not a *derivative* relationship, the causal link between the injury and the conduct may still be too weak to constitute proximate cause -- because it is insubstantial, unforeseeable, speculative, or illogical, or because of intervening causes.

*Trollinger*, 370 F.3d at 614-615 (emphasis sic) (citations omitted); *see also Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) (RICO plaintiffs must "set out a reasonable and principled basis of recovery[]" that is "not based on mere speculation and surmise").

Here, although the Complaint vaguely alleges that the defendants' underlying acts injured "Plaintiff" in his "business or property," nothing explains the nature of this alleged injury in Count 1, except for the following:

> Defendants' "enormous expansion of business operations and resources"  made them a "formidable opponent" whose cease-and-desist demands "plaintiff" could not oppose (Compl., Count 1, ¶140;
>
> Defendants used the fraudulently obtained trademark DUTCH TREATS "to acquire interest in or control of plaintiff's trademark TREAT and its related enterprise in herbal smokes" (Compl., Count 1, ¶¶197, 207).

Plainly, as the Sixth Circuit foresaw in *Trollinger*, the causal link between the alleged injury and the "predicate acts" upon which the Complaint relies is "too weak to constitute proximate cause" and, among other things, "is insubstantial, unforeseeable, speculative, or illogical, or because of intervening causes." *Id.* at 614-615.

C.      **None of Prakash's Theories of RICO Liability Is Sufficient.**

1.      **Prakash Has Failed to State a Claim Under § 1962(a).**

With respect to Prakash's claim under § 1962(a), he must allege "a separate and traceable injury 'stemming *directly* from the defendants' alleged use or investment of their illegally obtained income in the [RICO] enterprise.' "  *Gotham Print*, 863 F. Supp. at 461 (emphasis added), *quoting Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 494 (6th Cir. 1990); *see also NL Indus., Inc. v. Gulf & W. Indus., Inc.*, 650 F. Supp. 1115, 1128 (D. Kan. 1986) ("The plaintiff must be able to show, under [§ 1962](a), not only that the defendant invested illegally obtained proceeds in the enterprise, but that *this investment* caused the plaintiff's harm") (emphasis added).

Here, Prakash alleged that the defendants used the purportedly ill-gotten proceeds to expand their business operations, and that this expansion was such that he "could not oppose" the cease-and-desist demands.  Compl. ¶140.  But Prakash also alleges that "Plaintiff stopped making and selling herbal cigarettes with TREAT trademark as a result of defendants' acts…." *Id.*  Thus, as Prakash's own allegations reveal, the ***direct*** cause of "Plaintiff's" alleged injuries was his decision to cause Somya to stop selling its products in response to the cease-and-desist letters – ***not*** the purported use/investment of any money into the alleged RICO enterprise.[11]  *See Gotham Print*, 863 F. Supp. at 461 (the "real source of Plaintiffs' purported injury is that Defendants supposedly made certain misrepresentations and failed to disclose certain facts -- *not* that they were injured by Defendants['] investment of money generated by those actions in the operation of … the alleged RICO enterprise") (emphasis sic).  Accordingly, Prakash has failed to state a claim under § 1962(a).

---

11      Prakash does not explain how the expansion of defendants' business caused Somya to stop manufacturing and selling the herbal smokes, but did not preclude him from maintaining his registration application or litigating for four years in the Opposition Proceeding.

### 2.    Prakash Has Failed to State a Claim Under § 1962(b).

Prakash alleges, without any specificity, that "[b]y reason of defendants' violations of 18 U.S.C. §§ 1962(a), (b), (c), and (d), Plaintiff has suffered injury to his business or property, and has sustained other harm that are [sic] alleged under 'Recovery.' "  Compl. ¶62; *see id.* ¶¶197, 207 (alleging in conclusory fashion that defendants acquired an interest in the enterprise, by reason of which plaintiff was injured).  In the "Recovery" section, Prakash claims that "Plaintiff" is entitled to recover treble damages pursuant to 18 U.S.C. § 1964(c) and is further entitled to an award of monetary damages "arising from lost profits and/or lost business opportunities attributable to defendants' activities committed in furtherance of RICO contraventions."  *Id.* ¶319; *see also id.* ¶¶322-323.  Such conclusory allegations fail to show any causal connection between the alleged injuries and the alleged acquisition or maintenance of an interest in the purported RICO enterprise.  Thus, Prakash has failed to state a claim under § 1962(b).  *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) (dismissing § 1962(b) claim because of conclusory allegation of injury).

### 3.    Prakash Has Failed to State a Claim Under § 1962(c).

To properly state a § 1962(c) claim, the complaint must allege each of the following elements: (1) conduct of or participation in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted).  And, of course, Prakash must also allege that there was an injury "by reason of" such violation.  18 U.S.C. § 1964(c).

Again, the Complaint fails to state a claim.  The Complaint makes clear that Prakash's decision to cause Somya to stop the manufacture and sale of herbal smokes – not the purported conduct of or participation in the conduct of any RICO enterprise – was the cause of Somya's

alleged "lost profits and/or lost business opportunities."  Compl. ¶319.  A recent case from this Circuit, applying the Supreme Court's decision in *Hemi Group, supra*, and dismissing at 1962(c) claim, shows the flaw in Prakash's reasoning here:

> The conduct directly responsible for the Plaintiffs' lost profits was Kokosing's failure to choose the Plaintiffs as a subcontractor on the project. Thus, as in *Hemi*, the 'conduct directly causing the harm was distinct from the conduct giving rise to the fraud.' *Hemi,* 130 S.Ct. at 990. Accordingly, the Plaintiffs cannot establish that the Defendants' RICO predicate offense caused their injury.
>
> Any finding that the Plaintiffs should be entitled to lost profits from the project requires a prior finding that, if not for the Defendants' certification of N.H. Stone or approval of N.H. Stone as a subcontractor on the project, then Kokosing or any other prime contractor would have necessarily chosen the Plaintiffs as subcontractors. But, any such finding would be based only on speculation. There is no evidence in the record that could support such a finding. There is no evidence, for example, of the subcontracting requirements for the job, of any of the Plaintiffs' capabilities or of the capabilities of the other subcontractors that bid on the project, or of the content of the bids of each of the subcontractors.

*Chaz Concrete Co., LLC v. Codell*, No. 3:03-52-KKC, 2010 U.S. Dist. LEXIS 29900, at *35-36 (E.D. Ky. Mar. 29, 2010).  Here, because the alleged predicate acts did not lead directly to the alleged injuries, his claim under § 1962(c) should be dismissed.

### 4.    Prakash Has Failed to State a Claim Under § 1962(d).

To state a RICO claim under § 1962(d), a plaintiff must, at the very least, allege "the existence of one overt act by a defendant in furtherance of the conspiracy and the assent of each defendant to the conspiracy."  *Van Dorn Co. v. Howington*, 623 F. Supp. 1548, 1559 (N.D. Ohio 1985) (citations omitted).  Here, Prakash alleges merely that "all defendants mutually agreed to engage in the racketeering activities and/or wrongful conduct giving rise to the RICO Section 1962(a), (b), (c) contravention…" and that "[a]ll defendants were members of the RICO conspiracy…."  Compl. ¶61; *see id.* ¶¶199, 200 (alleging merely defendants "conspired" to

violated § 1962(a), (b), (c)).  These conclusory allegations are not sufficient to state a claim under § 1962(d).

In *Van Dorn*, the plaintiff made similarly conclusory accusations about a purported conspiracy:

> Howington and Koenig, individually and in concert with each of the other defendants, formulated a scheme designed to defraud Central States and to obtain its property by false pretenses, including the establishment and operation of a competing business. Howington, Koenig and each of the defendants engaged in acts in furtherance of that scheme. Those acts included efforts to acquire control of the Van Camp can manufacturing operations, to provide cans to Sun Harbor Industries, Inc., to purchase from and to sell cans for competitors of Central States, to establish business relations with suppliers and customers of Central States and to interfere with the loyalty of employees to Central States.

*Id.*, 623 F. Supp. at 1558-1559.

The court concluded that these allegations did not properly state a claim of conspiracy. Instead, like Prakash's allegations here, "the statement is a mere conclusion and does not permit the defendants to identify the conspiracy of which they are alleged to be a part." *Van Dorn*, 623 F. Supp. at 1559.  Accordingly, Prakash has failed to properly allege a RICO conspiracy, and his claims under § 1962(d) should be dismissed.

Prakash cannot state a cognizable RICO claim under any theory.  Accordingly, defendants respectfully ask the Court to dismiss Count 1 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IV.    COUNTS 2, 3 AND 11 MUST BE DISMISSED BECAUSE MEMBERS OF A CORPORATE FAMILY CANNOT BE HELD LIABLE FOR CONSPIRACY UNDER THE ANTITRUST LAWS.**

Prakash has failed to state a claim for an antitrust conspiracy.  Because of the unity of interests among the defendants, the defendants are incapable of conspiring, and therefore the allegations of Counts 2 and 3 are legally insufficient to state a claim under the Sherman Act.  To the extent that Count 11 is based on "derivative" antitrust liability, it must be dismissed, as well.

Companies that are members of the same corporate family, such as Imperial and its subsidiaries, are treated as single entities for purposes of §§ 1 and 2, and therefore, Prakash's claims of antitrust conspiracy fail.  *See Copperweld,* 467 U.S. at 771 ("the very notion of an 'agreement' in Sherman Act terms between a parent and a wholly owned subsidiary lacks meaning.")  *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 435 (6th Cir. 2008) (sister companies incapable of conspiracy) (citation omitted); *Guzowski v. Hartman,* 969 F.2d 211, 214 (6th Cir. 1992) (corporations with identical shareholders incapable of conspiracy).[12]

Under *Copperweld,* officers or employees of a firm are incapable of engaging in antitrust conspiracy with each other or with the firm, and therefore Prakash's joinder of the individual defendants does not rescue his fatally defective antitrust claims.  As the Supreme Court noted in *Copperweld* itself, officers of a single firm "are not separate economic actors pursuing separate economic interests," and "agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals."  *Copperweld,* 467 U.S. at 769.  Therefore, "officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy."  *Id.* at 769 (footnote omitted).

Under *Copperweld,* agents of a company who act within the scope of their agency, such as Grimes and Grimes & Battersby, like corporate employees, have a "unitary interest" with their principal, and therefore, adding them as defendants does not help Prakash state an antitrust conspiracy claim on which relief can be granted.  *Nelson Radio & Supply Co. v. Motorola, Inc.,*

---

[12]    That, according to some of the allegations of the Complaint, some of the corporate defendants were not wholly owned by Imperial, does not affect the *Copperweld* analysis. Prakash's allegations are somewhat inconsistent: after initially alleging that certain defendants are "wholly owned" subsidiaries of other defendants, Prakash later alleges that Imperial owns 55% of Altadis and Max Rohr.  Compl. ¶¶20, 30.  Either way, Prakash alleges that Imperial controls all of the subsidiary entities alleged to have engaged in a conspiracy.  *See also Novatel Comm'n, Inc. v. Cellular Tel. Supply, Inc.,* No. C85-2674A, 1986 U.S. Dist. LEXIS 16017, at *25-26 (N.D. Ga. Dec. 23, 1986) (granting summary judgment because the parent and its 51%-owned subsidiary were "incapable of conspiring for purposes of § 1 of the Sherman Act").

200 F.2d 911 (5th Cir. 1952) (allegations of Sherman 1 conspiracy dismissed); s*ee Doherty v. Am. Motors Corp.*, 728 F.2d 334, 340-344 (6th Cir. 1984) (allegations of civil rights act conspiracy between company and its counsel dismissed); *Am. Credit Card Tel. Co. v. Nat'l Pay Tel. Corp.*, 504 So.2d 486, 488 (Fla. App. 1986) (applying *Doherty* and Sherman Act cases to Florida anticompetitive combination claim and holding outside counsel to have unitary interest with company).

Finally, Prakash's addition of Perelman and MacAndrews & Forbes does not prevent the antitrust dismissal conspiracy claims.  The only allegations about these defendants assert that Perelman is the owner of MacAndrews & Forbes, and that MacAndrews & Forbes sold Consolidated Cigar and its subsidiaries, CCB and Max Rohr, in 1999, to a buyer who ultimately was purchased by Imperial.   Compl.  ¶¶26-27.   While MacAndrews & Forbes owned Consolidated Cigar, its interests, and those of Perelman, would have been at one with CCB and Max Rohr, and under *Copperweld*, they would be incapable of conspiracy.[13]  *See Eichorn v. AT&T Corp.*, 248 F.3d 131, 139 (3rd Cir. 2001);  *Williams v. The 5300 Columbia Pike Corp.*, 891 F. Supp. 1169, 1175 (E.D. Va. 1995).  And since the only allegations about Perelman and MacAndrews & Forbes concern conduct more than four years ago, whatever they did, and whatever could be attributed to them, is beyond the antitrust laws' four year statute of limitations.  15 U.S.C. § 15b.

In sum, Counts 2 and 3 must be dismissed with prejudice because they do not allege an actionable antitrust conspiracy.  Applying the principles of *Copperweld,* it is plain that the allegations, in Count 2 and 3, of a conspiracy among Imperial, other companies owned directly or indirectly by Imperial, officers of some of these companies, and a lawyer and law firm

---

13   In para. 66 of the Complaint, Prakash alleges that MacAndrews & Forbes is "successor in interest" to Consolidated Cigar, and its subsidiaries CCB and Max Rohr.  Thus, even as Prakash improperly alleges that the previous owner of a corporation could be its "successor in interest," he recognizes the unitary interest among the defendants in this case.

representing two of those companies fail to state a claim upon which relief can be granted. Similarly, Count 11, to the extent based on "derivative liability" for violation of the antitrust laws, must be dismissed with prejudice as well.

## V.      COUNTS 2, 3, 4, AND 11 MUST BE DISMISSED BECAUSE THEY LACK THE SPECIFICITY REQUIRED TO SUPPORT A CLAIM THAT THE ANTITRUST LAWS WERE VIOLATED.

Prakash's very general allegations of Sherman Act conspiracies in Counts 2 and 3, and his even more vague allegation, in Count 4, of "exclusionary, predatory and anti-competitive acts and strategies in violation of 15 U.S.C. §§ 12-27, fail to state claims on which relief can be granted.  Further, to the extent that Count 11 asserts that individual defendants have "derivative liability" for corporate defendants' violation of the Antitrust laws, it must be dismissed as well.

Under the Supreme Court's decision in *Twombly*, a plaintiff alleging an antitrust conspiracy claim bears the burden to state sufficient detail to establish the "grounds of his entitlement to relief."  *Id.* 550 U.S. at 555 (internal punctuation and citation omitted). Accordingly, "more than labels and conclusions" are required, and a "formulaic recitation of the elements" of the conspiracy cause of action "will not do." *Id.*  The factual allegations "must be enough to raise a right to relief above the speculative level[.]"  *Id.*

To survive a motion to dismiss, a conspiracy claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.  While "a naked assertion of conspiracy in a § 1 complaint . . . gets the complaint close to stating a claim, . . . without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'"  *Id*. at 557.  Therefore, "[s]imple allegations in the amended complaint, such as a general date of when the conspiracy likely began and that parties are acting in a similar fashion, are insufficient to establish an agreement[,]" *Total Benefits*, 552 F.3d at 436 (citation omitted), and an antitrust plaintiff "must provide factual

allegations plausibly suggesting, not merely consistent with, such a claim." *Id. citing NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007).

Here, Prakash's allegations fall well short of this pleading threshold.  He does not allege a single fact concerning the existence of an actual agreement, when such a purported agreement was entered into, or which of the defendants specifically entered into such an agreement. Even the allegations of the purpose and scope of the supposed conspiracies are hopelessly vague.  For example, Prakash alleges that "Defendants conspired to procure registrations of numerous trademarks, mostly using common and descriptive terms, to impose high barriers of entry into the U.S. market for cigars and alternate smokes." Compl. ¶¶218, 232, 242.  The balance of the Complaint, which refers to a variety of trademarks, sheds no light on his allegation of marks "using common and descriptive terms".  The notion that a trademark, which is merely a term or symbol used to denote the source of a product, could prevent others from selling competing products under different marks, is unexplained.

Antitrust complaints like Counts 2, 3, and 4 fail to state a claim upon which relief can be granted.  As the Supreme Court stated  in *Twombly*:

> Apart from identifying a 7-year span in which the § 1 violations were supposed to have occurred (*i.e.*, "[b]eginning at least as early as February 6, 1996, and continuing to the present,"…), the pleadings mentioned no specific time, place, or person involved in the alleged conspiracies….  [T]he complaint here furnishes no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place….  [A] defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin.

*Twombly*, 550 U.S. at 565 n.10 (internal citations omitted).  Courts in the Sixth Circuit have consistently dismissed claims based on such general allegations.  *See, e.g., Total Benefits*, 552 F.3d at 436 (plaintiffs failed to allege when the defendants joined the purported conspiracy, "where or how this was accomplished, and by whom or for what purpose"); *CBC Cos., Inc. v.*

*Equifax, Inc.*, 561 F.3d 569, 572 (6th Cir. 2009) (complaint failed to allege "key facts to substantiate an antitrust injury").

The lack of specificity concerning the antitrust allegations reveals that Prakash's claim, when boiled down to its essentials, is nothing more than a narrow dispute among alleged competitors over the use of certain trademarks – a claim has "nothing to do with antitrust injury or the antitrust laws." *CBCInnovis v. Equifax Info. Servs. LLC*, No. 2:06-cv-654, 2008 U.S. Dist. LEXIS 11700, at *19 (S.D. Ohio Feb. 4, 2008), *aff'd* 561 F.3d 569 (6th Cir. 2009).  Accordingly, Prakash's claims of conspiracy under §§ 1 and 2 of the Sherman Act should be dismissed.

## VI.  COUNTS 5 AND 6 OF THE COMPLAINT MUST BE DISMISSED AS TO ALL DEFENDANTS FOR FAILURE TO STATE A CLAIM.

The Fifth and Sixth Counts of the Complaint are captioned "False Representation and Source of Origin" and "Deceptive Advertising" under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  They allege that Defendants have made statements falsely associating their cigars with authentic "Dutch" or "Cuban" cigars in an effort to divert customers.  Monetary damages are claimed.

In the Sixth Circuit, in order to state a claim for false advertising under 15 U.S.C. § 1125(a), a plaintiff must demonstrate: "(1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff." *Herman Miller, Inc. v. Palazzetti Imps. and Exps., Inc.*, 270 F.3d 298, 323 (6th Cir. 2001) (citation omitted); *see also Kal Kan*, 197 F. Supp. 2d at 1068 (citation omitted).  Counts 5 and 6 fail to state a claim upon which relief can be granted because the Complaint does not allege facts to support the elements of causation and injury, and does not

37

identify specific false statements or instances in which consumers have been misled in their product purchases.

### A. Counts 5 and 6 Do Not Plead a Causal Link Between Defendants' Alleged Statements and Harm to a Competing Business.

The allegations of Counts 5 and 6 are wholly insufficient to state a claim under the Lanham Act because, *inter alia*, no facts are pled to suggest a causal link between the challenged statements and harm to Somya.

Because the Complaint alleges that Somya "used the mark TREAT exclusively in production and selling of herbal, non-tobacco smokes. . ." (Compl. ¶33), it is clear that Somya is the only entity who could possibly have been harmed by false or misleading statements made by the Defendants.  However, there is no allegation that Somya sells authentic "Dutch" or "Cuban" products.  Because the false advertising of which Counts 5 and 6 complain is the alleged representation that Defendants' products are of "Dutch" or "Cuban" origin, or have "Dutch" or "Cuban" characteristics, the Complaint must allege that Somya sells authentic "Dutch" or "Cuban" products in order to state a claim.  It does not, and there is no reason to believe that it could, in good faith, do so.

Because the Complaint does not allege that Somya and any defendant compete in the sale of allegedly authentic "Dutch" or "Cuban" products, Counts 5 and 6 must be dismissed. Although the Sixth Circuit has not squarely addressed the issue, several circuits have held that in order to have standing to bring claims for false advertising under 15 U.S.C. § 1125(a), a plaintiff must be in actual or direct competition with the defendant and assert a competitive injury.  *See Jack Russell Terrier Network of N. Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (holding that to establish "standing pursuant to the 'false advertising' prong of § 43(a) of the Lanham Act…, a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the

plaintiff's ability to compete with the defendant") (citations omitted); *see also Hutchinson v. Pfeil*, 211 F.3d 515, 520 (10th Cir. 2000) (holding that the plaintiff lacked standing because his hopes of eventually obtaining a product to compete with the defendant were too remote, and his inability to compete with the defendant was not a function of the defendant's alleged misconduct); *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999) (affirming district court's holding that "a party must demonstrate that it 'has a reasonable interest to be protected" by asserting "a discernible competitive injury") (citations omitted); *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993) (holding that to have standing, "the plaintiff must assert a discernible competitive injury").

Here, Somya's only alleged or reasonable interest is its desire to sell herbal cigarettes under the trademark TREAT.  There is no suggestion that Somya's cigarettes have a "Dutch" or "Cuban" origin.  Accordingly, the Complaint does not allege a causal link between Defendants' allegedly false statements and harm to Somya and Counts 5 and 6 should be dismissed with prejudice.

**B.     Plaintiff Has Failed to Plead Specific Facts to Support His False Advertising Claim.**

"When a plaintiff makes a claim for damages under the Lanham Act based on deceptive or ambiguous advertising, the claim can only be established by proof of actual deception (i.e., evidence that individual consumers perceived the advertising in a way that misled them about the plaintiff's product).  A plaintiff must present evidence "that a 'significant portion' of the consumer population was deceived."  *Herman Miller, Inc.*, 270 F.3d at 323 (citation omitted); *see Kal Kan*, 197 F. Supp. 2d at 1070 ("[T]he injury in fact and causation requirements can be met by showing that some consumers bought the defendants' product, under a mistaken belief about that product, when they otherwise would have purchased the plaintiff's product") (citation omitted).

39

Here, Plaintiff has not made any specific allegation that individual consumers perceived the allegedly false advertising in a way that misled them about Defendants' products, or that they purchased Defendants' products under a mistaken belief.  In fact, Plaintiff has not set forth any specific false statement alleged to have been made by Defendants, nor has he identified where or to whom it was made or the impact of such statement on consumers.  Therefore, it is clear that Plaintiff has utterly failed to plead specific facts sufficient to state a claim for false advertising under Sixth Circuit law.

## VII. TO THE EXTENT BASED ON THE CEASE AND DESIST LETTERS OR THE OPPOSITION PROCEEDING, COUNTS 1-4 AND 8-11 OF THE COMPLAINT CONCERN PRIVILEGED CONDUCT TO WHICH NO LIABILITY ATTACHES.

Prakash's central complaint, as noted, is that Max Rohr and Altadis objected to the use of the mark TREAT for the sale of cigarettes, and Max Rohr objected, formally, to the registration of that mark.  These objections were based on Max Rohr's ownership of the registered trademark DUTCH TREATS for cigars, and Altadis's use of that mark for the sale of cigars.  This activity is featured in the allegations of Count 1 (Compl. ¶204-205), 2 (Compl. ¶219), 3 (Compl. ¶231), and 4 (Compl. ¶241), and may be behind the very general allegations of unfair competition and tortious interference in Counts 8, 9 and 10, as well as the "derivative liability" claim in Count 11.  To the extent that these claims are based on actions taken to protect trademarks, they must be dismissed.  Actions taken to protect legal rights are privileged, and the defendants who take those actions cannot be held liable for them.

### A. No Actionable Antitrust Claim May Be Based on the Enforcement of Trademark Rights.

Actions to maintain and police trademarks cannot form the basis for federal antitrust liability.  Thus the Court must dismiss Counts 2-4 to the extent that they are based on defendants' efforts to protect the DUTCH TREATS mark or any other mark.  In an analogous case, this court dismissed federal antitrust claims based on trademark policing, holding such

measures do not constitute antitrust violations.  *Weber v. NFL,* 112 F. Supp. 2d 667 (N.D. Ohio

2000).

　　　　As here, the *Weber* plaintiff asserted antitrust claims based on defendant "abusing their

rights as trademark holders."  *Id.* at 669.  Again, as here, the *Weber* plaintiff's allegations

stemmed, in part, from a cease-and-desist letter sent by counsel for the NFL.  *Id.* at 672.  In

dismissing the claims, the court held that measures taken to protect trademark rights do not

violate antitrust laws:

> Courts have found that efforts to protect trademark rights, even
> those that go as far as bringing suit against a party who has
> allegedly infringed upon or diluted the trademark owner's rights,
> represent fair competition, further general trademark policies, and
> ***do not constitute violations of antitrust laws.***
>
> 　　　　　　　　　　　　***
>
> The weight of the authority dictates that ***legal efforts to protect
> trademark rights simply do not constitute a restraint of trade in
> violation of antitrust laws****. . . .*

*Id.* at 672-73 (emphasis added); *see also Clorox Co. v. Sterling Winthrop, Inc.,* 117 F.3d 50, 56

(2d Cir. 1997) (" 'in almost every reported instance where the antitrust misuse of a trademark has

been raised as a defense [in a trademark infringement suit], it has been rejected' ") (citation

omitted); *Drop Dead Co v. S.C. Johnson & Son, Inc.,* 326 F.2d 87, 96 (9th Cir. 1963) (bringing a

trademark-infringement suit is a "lawful act" that constitutes the "aggressive competition and

promotion that anti-trust law seeks to protect").

　　　　The efforts of trademark owners and licenses to prevent trademark dilution and customer

confusion by policing the use or registration of confusingly similar marks represent fair

competition.  "[P]laintiff must do more than allege that a defendant has sought to enforce his

trademark rights to state an antitrust claim."  *Weber,* 112 F. Supp. 2d at 673.  Accordingly,

plaintiff's claims for violation of the Sherman Act and Clayton Act must be dismissed. Although

no case was found where a plaintiff tried to make a RICO claim based on trademark enforcement, the logic of the antitrust cases applies to the RICO claim as well.

**B.     The *Noerr-Pennington* Doctrine Bars Counts 2, 3, and 4 to the Extent that Those Claims Are Based on the Cease-and-Desist Letters or on the Opposition Proceedings.**

The *Noerr-Pennington* doctrine bars antitrust claims based upon conduct that is protected by the First Amendment of the United States Constitution.  *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.* 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).  *Noerr-Pennington* immunity applies to litigation, and applies in this case to require dismissal of Counts 2, 3, and 4, to the extent that they are based upon the cease and desist letters or the Opposition Proceeding.

It is well accepted that the *Noerr-Pennington* doctrine protects a trademark owner from antitrust liability based upon pre-litigation policing letters or litigation because a " 'trademark holder has the right to defend himself against infringement' by sending trademark policing letters to alleged infringers."  *The Thermos Co. v. Igloo Prod. Corp.*, No. 93 C 5826, 1995 U.S. Dist. LEXIS 18382, at *16 (N.D. Ill. Dec. 13, 1995) (citation omitted).  Based on this holding, the *Thermos* court dismissed plaintiff's antitrust claims for failure to state a claim.  *See also Gardner v. Clark*, 101 F. Supp. 2d 468, 473 (N.D. Miss. 2000) (dismissing antitrust counterclaims pursuant to *Noerr-Pennington* because counter-defendant's trademark enforcement activities were "either directly attributable to litigation or indirectly concerned litigation activities that occurred prior to the initiation" of the suit); *Coca-Cola Co. v. Omni Pac. Co.*, No. C 98-0784 S1, 1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) (holding defendants' counterclaim for antitrust violations based, in part, on threats of litigation, failed to state a claim upon which relief could be granted).

CLE - 2603062.7

Although the *Noerr-Pennington* doctrine will not bar antitrust claims where a party opposing the immunity shows that the litigation is a mere "sham,"  plaintiff's conclusory allegation that the "defendants'" trademark-protection efforts were a sham fails to meet the standard that would except his claims from *Noerr-Pennington* immunity.  First, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (citations omitted). Second, the allegations of the Complaint themselves contradict the conclusory "sham" allegation and show that Prakash has not stated a claim of "sham" litigation as that term has been defined. In *Prof'l Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49 (1993), the Court set forth a two-part test for the sham exception to the *Noerr-Pennington* defense.  To satisfy that exception, a plaintiff must first prove that the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and second, that the "baseless lawsuit conceals 'an attempt to interfere *directly* with the business relationships of the competitor…." *Id.* at 60 (internal quotation marks and citations omitted).

On the face of the Complaint, the cease-and-desist letters and the Opposition were neither objectively baseless nor an attempt to interfere directly with a competitor's business relationships.  The cease-and-desist letters and the opposition were based on the fact that Prakash's TREAT mark was confusingly similar to Max Rohr's DUTCH TREATS mark, which has been a registered trademark in use for decades.  *See* Grimes Decl., Ex. 1.

Moreover, Plaintiff was attempting registration of his mark for "filter-tipped cigarettes" in the same class as DUTCH TREATS cigars, International Class 34.  *See* Grimes Decl., Ex. 1. Even if defendants ultimately do not prevail in their challenge to Plaintiff's registration, their actions to protect their registered mark from dilution by a similar mark in the same class as DUTCH TREATS was far from objectively baseless.  It is precisely the type of action that

43

*Noerr-Pennington* seeks to protect.  *See The Thermos Co.*, 1995 U.S. Dist. LEXIS 18382, at *17 (citing *Prof'l Real Estate Investors* and rejecting assertion of sham litigation, holding "the allegations in Thermos' complaint, if true, clearly show a violation of Thermos' valid trademark and, therefore, Thermos' action is not a 'sham' lawsuit because it attempts to protect a valid and incontestable trademark.") (citation omitted).

### C.     State-Law Claims Made in Counts 8 Through 10 Are Barred by the Litigation Privilege.

Just as trademark-policing activities cannot form the basis of an antitrust lawsuit, they also cannot form the basis for any of Prakash's state law claims.  In Ohio, where a statement made in a pleading or court proceeding bears "some reasonable relation to the judicial proceeding in which it appears[,]" parties and their attorneys are absolutely immune from suit based on the statement.  *Surace v. Wuliger,* 495 N.E.2d 939, 943 (Ohio 1986) (reversing court of appeals and reinstating trial court's judgment dismissing complaint, and holding the absolute immunity for litigation-related activities to be a "liberal" one).  It is beyond dispute that the statements in the cease-and-desist letters and trademark-opposition filings directly relate to defendants' actions to protect their trademark.

The litigation privilege "extends to every step in the proceeding, from beginning to end." *M.J. DiCorpo, Inc. v. Sweeney,* 634 N.E.2d 203, 209 (Ohio 1994) (citation omitted). Communications, such as the cease and desist letter, that are an " 'initial step in a judicial proceeding,' " are entitled to absolute immunity.  *Id.* at 210 (citation omitted); *see also Baldwin v. Adidas Am., Inc.*, No. C-2-02-265, 2002 U.S. Dist. LEXIS 19626, at *7 (S.D. Ohio July 29, 2002) (applying privilege to statements made in petition for cancellation of trademark); *Wexler v. Jewish Hosp. Ass'n. of Cincinnati*, Nos. C-820654, C-820906, 1983 Ohio App. LEXIS 11806, at *23-24 (Ohio Ct. App. Oct. 26, 1983) (applying privilege to statements made in letter attorney sent to administrative board prior to litigation); *Urban v. Fulton*, No. 49921, 1985 Ohio App.

LEXIS 9701, at *6-7 (Ohio Ct. App. Dec. 19, 1985) (applying privilege to letter winding-up divorce proceedings, holding privilege applies to "all aspects of the case; the prologue, the trial and the epilogue").

The litigation privilege extends to statements made in relation to quasi-judicial procedures, and thus it covers defendants' statements made in relation to their opposition of Prakash's trademark. *See Baldwin*, 2002 U.S. Dist. LEXIS 19626, at *7 (statements on petition for cancellation of a trademark before the PTO's Trademark Trial and Appeals Board protected by an absolute privilege); *see also Barilla v. Patella,* 760 N.E.2d 898, 906 (Ohio Ct. App. 2001); *Horsley v. Wal-Mart, Inc.*, No. 97CA17, 1997 Ohio App. LEXIS 5988 (Ohio Ct. App. Dec. 23, 1997); *Stiles v. Chrysler Motors Corp.,* 624 N.E.2d 238 (Ohio Ct. App. 1993).

Because Ohio's litigation privilege is absolute, applies to pre-litigation communications and to quasi-judicial proceedings, defendants are not subject to liability under federal or state law, for sending the cease and desist letters, or for the Opposition Proceeding.

## VIII.   COUNTS 8, 9, AND 10 MUST BE DISMISSED FOR THE SAME PLEADING DEFICIENCIES THAT INFECT COUNTS 2-6.

Counts 8, 9, and 10, which allege violations of state unfair competition laws, suffer from the same pleading deficiencies as the antitrust claims in Counts 2-4 and the Lanham Act claims in Counts 5-6.

First, and most conspicuously, these portions of the Complaint simply do not meet *Twombly's* requirement of "enough facts to state a claim for relief that is plausible on its face." *Twombly, supra.*  Counts 8, 9 and 10 allege no facts at all, except the very general statement, in Count 8, that defendants engaged in "willfully passing off their goods as those of Cuban or Dutch origin."  Compl. ¶303.  No facts are alleged to support the claim, in Count 10, of tortious interference with business advantage.  Such a claim would require allegations of  "(1) the existence of a business relationship between plaintiff and a third party; (2) knowledge on the part

of the alleged wrongdoer of the existence of the business relationship between the plaintiff and the third party; (3) intent on the part of the alleged wrongdoer to cause the third party to discontinue or terminate the business relationship; and (4) damages to plaintiff resulting therefrom." *Metropolis Night Club v. Doe,* No. 66184, 1994 Ohio App. LEXIS 5783, at *12-13 (Ohio Ct. App. Dec. 22, 1994); *Khosla v. Magruder Mem. Hosp.,* No. 92OT053, 1993 Ohio App. LEXIS 3291, at *8 (Ohio Ct. App. June 30, 1993). There are no such allegations.

Second, to the extent that Counts 8-9 are intended to characterize, as violations of state law, the facts alleged in Counts 5 and 6 as Lanham Act violations, they are subject to dismissal for exactly the same reasons. Ohio courts recognize that the evaluation of a claim for violation of Ohio's unfair competition laws (Count 8) or of Ohio Rev. Code § 4165.02, the Ohio Deceptive Trade Practices Act (Count 9) involves "essentially the same analysis as that applied in assessing unfair competition under the federal statues." *Cesare v. Work,* 520 N.E.2d 586, 590 (Ohio Ct. App. 1987), *citing Jewel Companies, Inc. v. Westhall Co.,* 413 F. Supp. 994, 999 (N.D. Ohio 1976); *Dawson v. Blockbuster, Inc.,* No. 86451, 2006 Ohio App. LEXIS 1138 (Ohio Ct. App. March 16, 2006). Thus, Counts 8 and 9 fail for the same reasons that Counts 5 and 6 fail: neither Prakash nor Somya has standing to complain of the alleged misuse of marks containing "Dutch" or "Cuban" terms or devices, since neither is selling a product that uses such a mark.

**IX.** **COUNT 7 OF THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF HAS NO STANDING TO SEEK CANCELLATION OF ANY MARK EXCEPT DUTCH TREATS, AND THIS COURT LACKS SUBJECT MATTER JURISDICTION OF THAT CLAIM.**

After taking into account Prakash's lack of standing to assert Claims 1-6 and 8-11 of the Complaint, and the failure of any of these Counts to state a claim upon which relief can be granted, only Count 7 remains. Yet Count 7, too, must be dismissed because this Court lacks subject matter jurisdiction of the claims it asserts. Count 7 seeks the cancellation of the U.S.

CLE - 2603062.7

registration of 56 marks belonging to CCB or Max Rohr:  47 allegedly "Cuban" marks,[14] four

DUTCH MASTERS marks[15], DUTCHIES, and DUTCH TREATS.  Those portions of Count 7

that relate to marks other than DUTCH TREATS must be dismissed because Prakash has not

pled a "case or controversy" between the parties concerning those marks:  it is apparent that he

has no personal interest in the outcome of the requested cancellations, or a reasonable basis for

the belief that he has been or will be damaged by registration of the marks.  Once these aspects

of Count 7 are eliminated, the only claim remaining before the Court would be Prakash's claim

against Max Rohr for the cancellation of the registration of DUTCH TREATS.  Even if this

claim were not already pending before the PTO, this Court lacks subject matter jurisdiction of a

case consisting solely of a claim for cancellation of a mark.

> **A.     The Allegations of Count 7 Concerning Marks Other than DUTCH TREATS Must be Dismissed.**
>
> > **1.     Plaintiff lacks Article III Standing to Challenge the Registration of Marks other than DUTCH TREATS.**

As a preliminary matter, "[i]n courts created pursuant to Article III of the United States

Constitution, a plaintiff must make out a 'case or controversy' between himself and a defendant

to have standing."  *Ritchie v. Simpson*, 170 F.3d 1092, 1094 (Fed. Cir. 1999), *citing Warth v.*

*Seldin*, 422 U.S. 490, 498-499 (1975).  With regard to the "case or controversy" requirement, the

Supreme Court has stated:

> In its constitutional dimension, standing imports justiciability: whether the
> plaintiff has made out a 'case or controversy' between himself and the defendant
> within the meaning of Art. III.  This is the threshold question in every federal
> case, determining the power of the court to entertain the suit.  As an aspect of
> justiciability, *the standing question is whether the plaintiff has 'alleged such a*

---

[14]     As discussed *supra*, at Section III, the  Complaint contends that 47 "Cuban" marks were obtained in violation of  the Helms-Burton Act and other laws regulating trade with Cuba.  It is also claimed that registrations for three other "Cuban" marks—ROYAL CUBAN, ROYAL HAVANA and HAVANA SWEETS – were obtained through fraud on the PTO (Compl. ¶¶184-195). Thus, under Count 7, the registrations of 50 "Cuban" marks are at issue.

[15]     The four DUTCH MASTERS marks, referred to by their registration numbers in Compl. ¶35, are DUTCH MASTERS and DUCTH MASTERS DESIGN.  *See* Dize Decl., Ex. B.

CLE - 2603062.7

> *personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf . . .*

*Warth*, 422 U.S. at 498-99 (internal citations omitted) (emphasis added).  To satisfy the "case or controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate:

> (1) that the plaintiff have [sic] suffered an 'injury in fact' - an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Bennett v. Spear*, 520 U.S. 154, 167 (1997), *citing Lujan*, 504 U.S. at 560-561.

Here, it is overwhelmingly clear that Prakash has not established a case or controversy with regard to the cancellation of the registration of the 50 alleged "Cuban" marks, the four DUTCH MASTERS marks or DUTCHIES.  As to these 55 marks, there is not a single allegation that would support the inference that Prakash sustained a concrete and particularized "injury in fact" as a result of the registration of any of these marks, and it is impossible to imagine how he could do so.  The mark that Prakash seeks to register is TREAT.  That term does not appear in Fifty-five (55) of the fifty-six (56) registrations that Prakash seeks to cancel.[16]

Prakash has not alleged such an "injury in fact" in his Complaint.  Accordingly, he has not established a case or controversy under Article III with regard to these trademarks.

### 2.    Plaintiff Does Not Have Standing to Petition to Cancel Trademarks Under the Lanham Act.

---

[16]    Notably, two of the "Cuban" trademarks whose registration Prakash seeks to cancel, MONTECRISTO EDMUNDO and MONTECRISTO CLASSIC COLLECTION, have not yet registered as of the date of this filing and therefore cannot be cancelled.  In addition, the trademark ROYAL CUBAN, which Prakash also seeks to cancel, is not a live registration.  Cancellation, therefore, is a moot point.

In addition to the Article III case or controversy requirement, in order to have standing to bring a cancellation claim under the Lanham Act, a party must show that it has a "real interest" in the case, that is, a personal interest in the outcome of the proceeding, and a "reasonable basis" for its belief of damage.  *See Ritchie*, 170 F.3d at 1095.  "This 'real interest' requirement stems from a policy of preventing 'mere intermeddlers' who do not raise a real controversy from bringing oppositions or cancellation proceedings in the PTO".  *Id.*  To satisfy this requirement, the moving party must set forth a "direct and personal stake" in the outcome of the cancellation. *Id.*  In addition, the moving party must explain how he will be damaged and these allegations must have a reasonable basis in fact (*i.e.*, the belief of damage alleged must be more than a subjective belief).  *Id.* at 1098.  Specifically, the cancellation petitioner must show "a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark."  *Halicki Films, LLC v. Sanderson Sales and Mktg.*, 547 F.3d 1213, 1228-29 (9th Cir. 2008) (emphasis added), *quoting Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984); *see also Soro v. Citigroup*, 287 Fed. Appx. 57, 60 (11th Cir. 2008) (cancellation "petitioner has to show that he has a real commercial interest in the disputed mark, and a reasonable basis for the belief that he would be damaged by the registration of the mark").

A cancellation petitioner may demonstrate a real commercial interest in the disputed mark where the parties' marks are highly similar and are used on similar goods.  *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 944-45 (Fed Cir. 2000) (senior user of mark LASER for golf clubs and golf balls had direct commercial interest in canceling junior user's registration of mark LASERSWING for golf practice device); *Herbko Int'l, Inc. v. Kappa Books*, 308 F.3d 1156, 1160-61 (Fed. Cir. 2002) (publisher of books under the trademark CROSSWORD COMPANION had direct commercial interest in canceling registered mark

CROSSWORD COMPANION for crossword puzzle system).  In contrast, the only mark in Count 7 that is conceivably similar to Plaintiff's proposed mark is Max Rohr's mark DUTCH TREATS, in that both marks contain the word formative "TREAT."  Moreover, as the Complaint concedes, DUTCH TREATS is the only mark that has been cited in opposition to Plaintiff's registration of TREAT.  None of the other trademarks that Plaintiff seeks to cancel have any similarity whatsoever to Plaintiff's proposed mark.  With regard to the fifty-five (55) trademarks other than DUTCH TREATS, it is clear that Plaintiff has not alleged a "personal stake" or a real commercial interest in their cancellation or any explanation of how these registrations damage him.

Because Plaintiff has no personal stake in the outcome of proceedings affecting trademarks other than DUTCH TREATS, or any reasonable belief of damage, Plaintiff does not have standing to cancel any of the trademarks referenced in the Complaint with the possible exception of DUTCH TREATS (owned by Max Rohr).  For this reason, the Seventh Count of the Amended Complaint must be dismissed as to all trademarks except DUTCH TREATS, for lack of standing, and as to all defendants except Max Rohr.[17]

**B.      The Remainder of Count 7 Must Be Dismissed Because a Claim for Cancellation of a Trademark Registration Under the Lanham Act Cannot Be the Sole Basis of Federal Jurisdiction.**

Section 37 of the Lanham Act is understood to permit a district court to order the cancellation of registration, but only "in any action involving a registered mark."  15 U.S.C. § 1119.  Once this Court has dismissed Counts 1-6 and 8-11 of the Complaint, there would not be "any action involving a registered mark" remaining to which Prakash's cancellation claim could be joined, and this Court would lack subject matter of the cancellation claim standing

---

[17]      All of the fifty-six (56) trademarks that Plaintiff seeks to cancel are owned by either Max Rohr or CCB. Compl. ¶¶36-37; Dize Decl. ¶9; *see also id.* Exs. A and B.  Therefore, Max Rohr and CCB are the only defendants against which a claim could be made under the Seventh Count of the Amended Complaint.  However, CCB has no ownership interest in the DUTCH TREATS trademark, which is owned exclusively by Max Rohr.  Therefore, Max Rohr is the only defendant against which there can be a claim under Count Seven.

50

alone.  That is true whether Count 7 concerns all 56 marks of which Prakash complains, or only the mark DUTCH TREATS.

A case is one "involving a registered mark", as contemplated by 15 U.S.C. § 1119, only if, independently of the cancellation claim, the right to use a registered mark is at issue.  Absent such an additional claim, the court lacks subject matter jurisdiction.  As stated in *Universal Sewing Machine Co. v. Standard Sewing Equip. Corp.*, 185 F. Supp. 257, 260 (S.D. N.Y. 1960):

> [We do not agree] that an original suit may be instituted by one in the position of the present plaintiff, in the district court for cancellation of another's federal registration where no other basis for jurisdiction is present…. *In our view § 37 assumes a properly instituted and otherwise jurisdictionally supportable action involving a registered mark.  That not being the case here, we are without jurisdiction of the subject matter and upon that ground we must dismiss the complaint.* (emphasis added).

*See also* J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition* § 30:110 (4th ed. 2009) ("Although the courts have cancellation power concurrent with the Patent and Trademark Office, that power extends only to cases where there is, apart from the cancellation claim, some other independent ground of federal jurisdiction, such as a claim of infringement of a registered mark, or diversity jurisdiction"); *Magic Foam Sales Corp. v. Mystic Foam Corp.*, 167 F.2d 88, 90 (6th Cir. 1948) (recognizing that 15 U.S.C. § 1119 authorizes the Court to order cancellation of trademark registrations "where jurisdiction exists"); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873-74 (3d Cir. 1992) ("we do not believe the court [in a prior decision] intended to construe section 37 to provide a cancellation remedy in the absence of an underlying basis of jurisdiction"; affirming district court's dismissal of cancellation claim for lack of jurisdiction).  To support district court jurisdiction of a cancellation claim, it is not enough that the parties are alleged to be competitors.  *Windsurfing Int'l Inc. v. AMF Inc.,* 828 F.2d 755, 758-59 (Fed. Cir. 1987).

After this Court has dismissed Counts 1-6 and 8-11 for lack of standing and failure to state a claim, and has dismissed those portions of Count 7 that relate to marks in which Prakash has no personal stake or real commercial interest, the only claim would be Prakash's against Max Rohr and the DUTCH TREATS trademark.  In this event, this Count will have no independent basis for federal jurisdiction.  As set forth above, 15 U.S.C. § 1119 would not apply; it can be used only in a proceeding that otherwise "involves" a registered mark.  Therefore, if the only claim remaining in the case following resolution of this Motion to Dismiss is one for cancellation of the registration of DUTCH TREATS, that claim must be dismissed.

### C.     Absent An Independent Basis for Federal Jurisdiction, Plaintiff Must First Exhaust His Administrative Remedies Before Resorting to the Courts.

The dismissal of Prakash's claim for canceling the registration of DUTCH TREATS will appropriately leave Prakash to litigate that claim where he first filed it, in the PTO.  "[O]ne seeking cancellation offensively and relying solely upon that claim for federal jurisdiction would seem to be relegated to first exhausting his administrative remedies before resorting to the courts. Such a situation . . . must be distinguished from the cases where there is present some independent basis of federal jurisdiction, and wherein the validity of a registered trademark is brought into issue, for example, by way of defense or counterclaim."  *Universal Sewing Mach. Co.*, 185 F. Supp. at 259-60 (internal citations omitted); *see also Merrick v. Sharp & Dohme, Inc.*, 185 F.2d 713, 717 (7th Cir. 1950) ("Congress has confined the registration of trade-marks to the Patent Office of the United States. The courts of the United States have no jurisdiction over registration proceedings except that appellate jurisdiction given them by the Trade-Mark Act").

To the extent that Prakash's cancellation claim in Count 7 is akin to a declaratory judgment claim, it is recognized that the declaratory judgment too should not be used to pre-empt agency action.  As the Supreme Court has stated:

CLE - 2603062.7

> [The] declaratory judgment procedure will not be used to preempt and prejudge issues that are committed for initial decision to an administrative body or special tribunal…. Responsibility for effective functioning of the administrative process cannot be thus transferred from the bodies in which Congress has placed it to the Courts.

*Public Service Comm'n v. Wycoff Co.*, 344 U.S. 237, 246-47 (1952); *see also Homemakers, Inc. v. Chicago Home for the Friendless*, 313 F. Supp. 1087, 1089 (N.D. Ill. 1970) ("this Court is without jurisdiction under the Declaratory Judgment Act where the only issue is one party's right to a registration and infringement, misuse or unfair competition are not involved"; dismissing declaratory judgment action regarding validity of trademark registration for failing to allege a justiciable controversy within the jurisdiction of the Court), *aff'd*, No. 18403, 1971 U.S. App. LEXIS 11081 (7th Cir. 1971), *cert. denied*, 404 U.S. 831; J. Thomas McCarthy, 6 *McCarthy on Trademarks and Unfair Competition* § 32:53 (4th ed. 2009) ("an applicant whose mark is opposed before the Trademark Board, or a registrant whose mark is attacked for cancellation before the Trademark Board, cannot short-circuit the administrative process by filing suit for declaratory judgment in the federal courts.") Thus, "[i]f a petition for cancellation of a federally registered mark is the sole basis of a plaintiff's claim for declaratory judgment in the federal courts, the court should dismiss the case and relegate the party to the administrative process of a petition to cancel before the Trademark Board." *Id.* at § 30:110.

Thus, assuming that the only claim remaining in the case following resolution of this Motion to Dismiss is Count 7, Defendants respectfully submit that the Court should dismiss this action and allow the parties to resume their trademark Opposition Proceeding before the Trademark Trial and Appeal Board of the PTO. Plaintiff should not be permitted to maintain his cancellation claim in Federal Court absent an independent basis of federal jurisdiction and should be required to continue with the unfinished Opposition Proceeding that is pending.

## CONCLUSION

This Court should dismiss the Complaint fully and finally, and enter judgment in favor of all defendants now.  As a *pro se* plaintiff, Prakash cannot represent his corporation in this Court.  Moreover, because it was his corporation, and not Prakash himself, that allegedly suffered competitive injury, Prakash has no standing to make the RICO, antitrust, Lanham Act, or state law claims raised in Counts 1 through 6 or 8 through 11 of the Complaint.  Moreover, Prakash cannot prosecute Count 7 of the Complaint in this Court.  As the applicant for registration of the mark TREAT, he lacks any real interest in challenging the registration of 55 of the 56 trademarks about which Count 7 complains.  Furthermore, no matter how many trademark registrations Prakash had standing to challenge, this Court lacks subject matter jurisdiction of freestanding cancellation claims.  Such claims may be brought only in the PTO, where, in fact, Prakash's claim for cancellation of the registration DUTCH TREATS is now pending.  Because this Court lacks subject matter jurisdiction, and the Complaint fails to state a claim upon which relief can be granted, the Complaint should be dismissed.

CLE - 2603062.7

OF COUNSEL:                                  Respectfully submitted,

HAHN LOESER + PARKS LLP                      /s/ Deborah A. Coleman
                                             Deborah A. Coleman (#0017908)
                                             dacoleman@hahnlaw.com
                                             Oliver J. Dunford (#0073933)
                                             odunford@hahnlaw.com
                                             Aubrie Knight Wancata (#0080635)
                                             aknightwancata@hahnlaw.com
                                             Jon Paul Anthony (#0085237)
                                             janthony@hahnlaw.com
                                             200 Public Square, Suite 2800
                                             Cleveland, Ohio  44114-2316
                                             Phone:  216-621-0150
                                             Fax:  216-241-2824

                                             *Attorneys for Defendants Altadis U.S.A. Inc.,
                                             Cuban Cigar Brands, N.V., Altadis Holdings
                                             U.S.A. Inc., Max Rohr, Inc., Imperial
                                             Tobacco Group PLC, Gary R. Ellis, Lewis I.
                                             Rothman, Grimes & Battersby LLP, Charles
                                             W. Grimes, Ronald O. Perelman,
                                             MacAndrews & Forbes Holdings Inc., Theo
                                             W. Folz, 800-JR Cigar Inc., James L.
                                             Colucci, and George Gershel*

## <u>CERTIFICATION OF COUNSEL</u>

I hereby certify that the instant matter has not yet been assigned to a case track with regard to the instant Joint Motion of Defendants to Dismiss, with attached Memorandum in Support. A Motion for Leave to Exceed Page Limitation for cases to which no track has been assigned has been filed herewith.

Respectfully submitted,

/s/ Deborah A. Coleman
*One of the Attorneys for Defendants Altadis*
*U.S.A. Inc., Cuban Cigar Brands, N.V.,*
*Altadis Holdings U.S.A. Inc., Max Rohr, Inc.,*
*Imperial Tobacco Group PLC, Gary R. Ellis,*
*Lewis I. Rothman, Grimes & Battersby LLP,*
*Charles W. Grimes, Ronald O. Perelman,*
*MacAndrews & Forbes Holdings Inc., Theo*
*W. Folz, 800-JR Cigar Inc., James L.*
*Colucci, and George Gershel*

CLE - 2603062.7

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2010, this Memorandum in Support of Defendants' Joint Motion to Dismiss was filed electronically and a copy sent to Rohit Prakash, *pro se,* via regular U.S. mail, 1510 South Hametown Road, Copley, Ohio 44321.

 /s/ Deborah A. Coleman

*Attorney for Defendants, Altadis U.S.A. Inc., Altadis Holdings U.S.A. Inc., Cuban Cigar Brands, NV, Max Rohr, Inc., Imperial Tobacco Group PLC, 800-JR Cigar Inc., Lewis I. Rothman, Grimes & Battersby LLP, Charles W. Grimes, Ronald O. Perelman, MacAndrews & Forbes Holdings Inc., Gary R. Ellis, Theo W. Folz, James L. Colucci and George Gershel*

CLE - 2603062.7