LEXSEE

**HITACHI MEDICAL SYSTEMS AMERICA, INC., Plaintiff, vs. DANIEL BRANCH, et al., Defendant.**

**CASE NO. 5:09-cv-01575**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION**

**2010 U.S. Dist. LEXIS 19405**

**March 4, 2010, Decided**
**March 4, 2010, Filed**

**COUNSEL:** [*1] For Hitachi Medical Systems America, Inc., Plaintiff: Stephanie Dutchess Trudeau, LEAD ATTORNEY, Ulmer & Berne - Cleveland, Cleveland, OH; Christine E. Watchorn, Ulmer & Berne - Columbus, Columbus, OH.

For Daniel Branch, Defendant: David J. Coyle, Thomas P. Dillon, Shumaker, Loop & Kendrick, Toledo, OH.

For David Branch, Martin Kern, Defendants: John C. Weisensell, Michael J. Palumbo, Bernlohr & Wertz, Akron, OH.

**JUDGES:** HONORABLE SARA LIOI, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** SARA LIOI

**OPINION**

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the separate motions of Defendant Daniel Branch and Defendants David Branch and Martin Kern to dismiss Plaintiff Hitachi Medical Systems America, Inc.'s complaint (Doc. No. 1) for lack of personal jurisdiction pursuant to Rule 12(b)(2), failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), and, as to count XII of the complaint, lack of subject matter jurisdiction pursuant to Rule 12(b)(1). While defendants have filed two separate motions, the arguments raised therein are virtually indistinguishable and the Court shall address both motions in this single memorandum order and opinion. For the reasons that follow, the Court [*2] **DENIES** the defendants' motions to dismiss in their entirety.

**I. FACTUAL AND PROCEDURAL HISTORY**

The facts of this case are taken from Plaintiff's Amended Complaint (Doc. No. 1) and Opposition (Doc. No. 24) and are assumed true for the purposes of this Memorandum Opinion and Order. Plaintiff Hitachi Medical Systems America, Inc. ("Hitachi") is a Delaware corporation with its principal place of business in Twinsburg, Ohio. Hitachi sells and services Magnetic Resonance Imaging (MRI) equipment. Defendant Daniel Branch ("Daniel") [1] is a Florida resident and a shareholder and Chief Financial Officer of Horizon Medical Group, Inc. ("Horizon"). Defendant David Branch ("David") is a Florida resident and a shareholder and Chief Executive Officer of Horizon. Defendant Martin Kern ("Kern") is a Florida resident and a shareholder and officer of Horizon. Horizon is a former customer of Hitachi, having bought MRI equipment from Hitachi between 2002 and 2004 and not a named defendant in this case.

> 1   The Court shall refer to Daniel and David Branch by their first names to alleviate confusion. No disrespect is intended.

Hitachi and Horizon are not strangers to each other, nor to litigation. On July 9, 2007, [*3] Hitachi filed suit in this Court against Horizon and certain individual LLCs which operated Horizon's medical centers ("Horizon litigation"). (Case No. 5:07-cv-02035-SL.) After a lengthy litigation concluding with a jury trial, Hitachi obtained judgments in the amount of $ 3,286,159.51 against Horizon and its associated individual LLCs. (Horizon litigation, Doc. No. 251.) Horizon and the LLCs have refused to pay the judgment, which was entered on November 10, 2008.

The alleged conduct that forms the basis of this lawsuit began in 2005, and was discovered by Hitachi in January 2009. In 2005, Hitachi alleges, Horizon trans-

ferred "all of Horizon's assets to its affiliate, Med Fund LLC," an entity owned by JFB Holdings, Inc ("JFB Holdings"). (Doc. No. 1 at PP 21-22.) Daniel, David, and Kern are officers and shareholders of JFB Holdings, and, according to Hitachi, therefore owners of Med Fund. (*Id.* at P 24.) Defendants continued to assert, however, that Horizon was an operating entity that "manage [d] all the centers, it gets a fee from the centers for management." (*Id.* at P 27.) Between 2005 and

2008, Med Fund assumed certain liabilities of Horizon. (*Id.* at P 28.) In 2006, Med Fund made [*4] a payment of $ 160,000 to Kern. (*Id.* at P 29.) Hitachi broadly refers to the Horizon-to-Med Fund transfer in its complaint as the "2005 transfer," and the Court shall do the same.

Hitachi further complains about the "2008 transfer," which occurred while the Horizon litigation was ongoing. On approximately May 15, 2008, Daniel testified that Horizon was a going concern that paid its bills and would be able to pay its debts to Hitachi. (*Id.* at P 30.) Very soon thereafter, and while the Horizon litigation was still ongoing, the assets of Horizon and the individual LLCs, and Med Fund, were sold to a third party purchaser pursuant to an Asset Purchase Agreement ("the APA.") (*Id.*) Hitachi learned about the 2008 transfer on January 13, 2009, when Horizon produced a copy of the APA pursuant to post-judgment discovery and its request for a judgment debtor's exam in connection with the Horizon litigation. (*Id.* at P 32-33.)

On July 9, 2009, Hitachi filed its complaint in this lawsuit. (Doc. No. 1.) On September 3, Daniel filed a similar motion to dismiss Hitachi's complaint. (Doc. No. 19.) On September 24, David and Kern filed a motion to dismiss. (Doc. No. 21.) On October 27, Hitachi filed a combined [*5] opposition to the motions to dismiss. [2] (Doc. No. 24.) Defendants have filed separate replies. (Doc. Nos. 28, 30.) Against this backdrop, these motions are ripe for decision.

    2  Contemporaneously with their opposition, Hitachi filed a motion to strike the declarations (of David and Kern) that accompanied David and Kern's motion to dismiss, on technical grounds. (Doc. No. 25.) On October 30, 2009, David and Kern supplemented their motion to dismiss with identical declarations that remedied the technical deficiencies identified by Hitachi's motion to strike. (Doc. No. 27.) Therefore, Hitachi's motion to strike is **DENIED AS MOOT**.

## II. STANDARD OF REVIEW

### A. Personal Jurisdiction

Hitachi bears the burden of setting forth a prima facie showing of personal jurisdiction over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). On a motion to dismiss pursuant to Rule 12(b)(2), the Court has three procedural alternatives; it may (1) decide the motion on affidavits alone; (2) permit discovery in aid of deciding the motion; or (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Id.* When the Court elects to decide the motion upon the written submissions, [*6] it must view the affidavits, pleadings and related documentary evidence in the light most favorable to the plaintiff. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The Court is not, however, precluded from considering undisputed factual representations of the defendant that are consistent with the representations of the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997). Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930). Where, as here, however, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than conducting an evidentiary hearing or limited discovery, the plaintiff's burden is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (internal quotation marks omitted), and "the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." [3] *Theunissen*, 935 F.2d at 1458.

    3  Neither [*7] party has requested either limited discovery or an evidentiary hearing.

"In dealing with a diversity case, [courts] look to the law of the forum state to determine whether personal jurisdiction exists." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). That is, personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant [] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). In *Bird*, however, the Sixth Circuit stated:

    We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitu-

tional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 1994 Ohio 229, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam). Nevertheless, in evaluating whether personal [*8] jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird*, 289 F.3d at 871-72. Personal jurisdiction may be based on either general or specific jurisdiction. *Id*. at 873. In this case, Hitachi seeks specific jurisdiction over defendants in connection with the 2005 and 2008 transfers. Specific jurisdiction exists, consistent with due process, if a defendant's contacts with the forum state satisfy all three prongs of the test set forth in *Southern Machine Co. v. Mohasco Indus., Inc*., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's [*9] activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

"Jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Weller v. Cromwell Oil Co*., 504 F.2d 927, 929 (6th Cir. 1974) (so holding despite allegations that the corporation was the alter-ego of the individual defendants). "On the other hand, their status as employees does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). The Sixth Circuit has held that:

> The mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal

capacity does not preclude the exercise of personal jurisdiction over those defendants. Hence, where an out-of-state agent is *actively and personally involved* in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether she personally availed herself of the forum and the reasonably foreseeable [*10] consequences of that availment.

*Balance Dynamics Corp. v. Schmitt Indus. Inc*., 204 F.3d 683, 698 (6th Cir. 2000) (emphasis added).

## B. Rule 12(b)(6)

The propriety of dismissal pursuant to Rule 12(b)(6) is a question of law and "[d]ismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). We assume the factual allegations in the complaint are true and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings, LLC v. Booth Creek Management Corp*., 335 Fed. Appx. 587 (6th Cir. 2009) (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)). In construing the complaint in the light most favorable to the non-moving party, "the court does not accept the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v. Disponett*, 332 Fed. Appx. 232 (6th Cir. 2009) (citing *In re Sofamor Danek Group, Inc*., 123 F.3d 394, 400 (6th Cir. 1997)). "To survive a Rule 12(b)(6) motion, the nonmoving party must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [. . [*11] .]. Factual allegations must be enough to raise a right to relief above the speculative level." *ABA Indus., Inc. v. Fifth Third Bank*, 333 Fed. Appx. 994 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))).

## III. LAW AND ANALYSIS

### A. Personal Jurisdiction

Hitachi elucidates the theory of its case in its opposition, and reciting that theory here illuminates the discussion of personal jurisdiction:

> The right to payment at issue here has been reduced to judgment [in the Horizon litigation], but rather than senselessly pursue the judgment debtors -- which Defen-

2010 U.S. Dist. LEXIS 19405, *

dants have either rendered insolvent or sold off to third parties -- [Hitachi] has elected to pursue the individual Defendants under alter-ego/veil piercing theories.

(Doc. No 24 at p. 19.) It is undisputed that Horizon, which was a party to the contract with Hitachi and also at one point had franchise agreements with businesses in this state, is subject to personal jurisdiction in Ohio. Hitachi argues that because it alleges that Horizon and Daniel, David, and Kern are alter egos, [*12] defendants are subject to personal jurisdiction in Ohio. For the purpose of this motion to dismiss and in light of Hitachi's "relatively slight" burden to make a "prima facie showing" of personal jurisdiction, *see Theunissen, supra*, the Court agrees.

"Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court." *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (citing *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (collecting cases)). "The exercise of jurisdiction over an alter ego is compatible with due process because a corporation and its alter ego are the *same entity* -- thus, the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the International Shoe due process analysis." *Sys. Div., Inc. v. Teknek Elecs., Ltd.*, 253 Fed. Appx. 31, 37 (Fed. Cir. 2007) (emphasis [*13] in original). Moreover, the exercise of personal jurisdiction over an alleged alter ego requires application of "a less onerous standard" than that necessary for piercing the corporate veil for liability purposes. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). Therefore, the Court turns to whether Hitachi has made a prima facie showing that Daniel, David, and Kern are the alter ego of Horizon.

**B. Choice of Law**

The Court must determine which law to apply to determine whether Hitachi has made the requisite prima facie showing. Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987). Here, the forum state is Ohio, and this Court would ordinarily apply its choice of law provisions. The

potential importance of the choice of law ramifications to the personal jurisdiction and ultimate liability issues in this case are great. In light of the minimal attention given to this issue by both parties, however, and as explained below, for the purposes of these motions to dismiss, "the laws of [*14] the states do not conflict, [so] no choice-of-law analysis is necessary." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).

Hitachi urges this Court to apply Ohio law, but concedes Defendants may argue that Delaware law should apply to the alter ego analysis. (Doc. No. 24 at p. 14.) Defendants argue, albeit in the section of their briefs addressing the 12(b)(6) challenge, that "federal courts have followed the Restatement § 307 to hold that [alter ego analysis] is governed by the state of incorporation." (Doc. No. 21 at p. 12.) Hitachi asserts that Horizon and JFB Holdings are (or were) Delaware corporations. (Doc. No. 24 at p. 26 n. 11.)

Under Ohio law,

the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and [*15] wrong.

*Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.*, 67 Ohio St. 3d 274, 1993 Ohio 119, 617 N.E.2d 1075, 1086 (Ohio 1993). The first element is a restatement of the alter ego doctrine, which requires that plaintiff "show that the individual and the corporation are fundamentally indistinguishable." *Id*. In deciding whether the company is an alter ego of the individual, Ohio courts consider such factors as:

(1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation

was a mere facade for the operations of the dominant shareholder(s).

*LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App. 3d 417, 602 N.E.2d 685, 689 (Ohio App. 1991). While the *Belvedere* test remains controlling law as to the first and third prongs in Ohio, the Ohio Supreme Court recently clarified the second prong of that test in *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506, 2008 Ohio 4827, 895 N.E.2d 538 (2008). [*16] In *Dombroski*, the Ohio Supreme Court resolved a split in the interpretation of the second prong of the *Belvedere* test among several Ohio district courts of appeals by stating:

> [W]e hold that to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct. The first and third prongs of the *Belvedere* test are not affected by this ruling and must still be met for a piercing claim to succeed.

*Dombroski*, 119 Ohio St. at 513. Finally, "because of the equitable nature of the veil-piercing doctrine, no list of factors can be exclusive or exhaustive." *Carter-Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 749 (6th Cir. 2001) (applying Ohio law).

As this court has explained, "[p]ersuading a Delaware Court to disregard the corporate entity is a difficult task [. . .]. The legal entity of a corporation will not be disturbed until sufficient reason [*17] appears [. . .]. In an appropriate case, however, the corporate veil may be pierced." *Plaskon Elec. Materials v. Allied-Signal*, 904 F. Supp. 644, 656 (N.D. Ohio 1995) (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.* Case No. 1131, 15 Del. J. Corp. L. 1030, 1989 Del. Ch. LEXIS 114 at *10 (Del. Ch. Sept. 19, 1989) (citations omitted)). Delaware courts have held that, in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable considerations among members of a corporation demand it, the corporate veil may be pierced. *See, e.g., Pauley Petroleum, Inc. v. Continental Oil Co.*, 43 Del. Ch. 366, 231 A.2d 450 (1967). Further, the *Harco* court explicitly accepted the alter ego theory of piercing the corporate veil, adopting the test set forth by the District Court of Delaware in *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988):

> an alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation. These factors include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation [*18] was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Id*. As in Ohio, however, "no single factor could justify a decision to disregard the corporate entity, but [. . .] some combination of them was required and that an overall element of injustice or unfairness must always be present, as well." *Plaskon Elec. Materials*, 904 F. Supp. at 656 (citing *Harco*, 1989 Del. Ch. LEXIS 114, at *11.)

Under either Ohio or Delaware law, Hitachi has made a prima facie showing that Daniel, David, and Kern are the alter ego of Horizon sufficient to withstand the motions to dismiss based on personal jurisdiction. Hitachi first provides the January 14, 2009, deposition of Daniel Branch, which provides prima facie evidence of, among other things, the commingling of corporate funds, the absence of corporate records, and that corporate formalities were not observed. (Doc. No. 24-2.) In that deposition, Daniel testifies that Horizon ceased doing business [*19] in 2005, yet admits to using general ledgers in Horizon's name which run through at least July 31, 2007. Daniel's testimony also states, in connection with money transfers between the company and Daniel, David, and Kern, that "yeah, there was a lot of money in and a lot of money out at that particular time. There was a lot of wiring going in and there was a lot of wiring going out." (*Id*. at p. 88.) Daniel explains the transfers, which are sizable especially as to Kern, as repayments of loans that defendants made to the company in order to allow the company to meet its payroll obligations. The loans, however, were apparently not memorialized in any manner. Hitachi also cites to, and provides deposition evidence of, a number of lease payments for Daniel and David's Lexus and Porsche, respectively, and payments to a Jet Sales and Service, a jet share program. (Doc. No. 24-2 at p. 96; Doc. No. 24-5 at p. 89.) Moreover, while Defendants argue that Hitachi has failed to provide evidence of Defendants' dominance and control of Horizon,

Daniel and David have previously represented to this Court that they were the chief financial officer, and chief executive officer, respectively, and were [*20] 20% and 33% shareholders, respectively, of that corporation. (Horizon litigation, Doc. No. 126-1 at p. 9.)

As defendants correctly argue, Hitachi's claim that Horizon was grossly undercapitalized cannot be proven by merely showing that the company was not profitable, nor is it proved by the company's eventual insolvency. But, as discussed above, no single factor is dispositive under either Ohio or Delaware law. Moreover, there is sufficient evidence to support a conclusion that the "overall element of injustice or unfairness" is present, *see Plaskon Elec. Materials, supra*, and the "equitable nature" of the doctrine, *see Carter-Jones Lumber Co., supra*, should weigh in favor of finding personal jurisdiction. This Court has specifically found that Daniel Branch has made misrepresentations regarding the financial status of Horizon for the purpose of obscuring assets. (Doc. No. 24-4 at pp. 5-6.) Hitachi asserts, and provides evidence in the form of an asset purchase agreement, that while the Horizon litigation was pending, Horizon's (or Med Fund's, or both) assets were sold to a third party. (Doc. No. 24-6.) The Ohio Supreme Court's recent clarification *of Belvedere* does not affect the analysis [*21] here, as the alleged violation of the Fraudulent Transfer Act suffices as conduct "in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski*, 119 Ohio St. 3d at 513.

Therefore, this Court concludes that, for the purposes of these motions to dismiss, Hitachi has made a prima facie showing that Daniel, David, and Kern and Horizon are alter egos and exercises personal jurisdiction over defendants on that ground. This prima facie showing, however, is merely that. "A threshold determination that personal jurisdiction exists 'does not relieve [the plaintiff] [. . .] at the trial of the case-in-chief from proving the facts upon which jurisdiction is based by a preponderance of the evidence.'" *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1215 (6th Cir. 1989) (quoting *United States v. Montreal Trust Co*., 358 F.2d 239, 242 n. 4 (2d Cir.)). A pretrial ruling denying a 12(b)(2) motion to dismiss "does not purport to settle any disputed factual issues germane to the underlying substantive claim. What is settled is the court's power to exercise personal jurisdiction over a defendant, nothing more." *Val Leasing, Inc. v. Hutson*, 674 F. Supp. 53, 55 (D. Mass. 1987). [*22] The Supreme Court has made explicitly clear that the party asserting jurisdiction "must carry throughout the litigation the burden of showing that he is properly in court." *McNutt v. General Motors Acceptance Corp*., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135(1936).

Given the Court's conclusion that under either Ohio or Delaware law, Hitachi has made the requisite prima facie showing to survive a motion to dismiss, Defendants' motion to dismiss pursuant to Rule 12(b)(2) is therefore **DENIED**. The Court notes, however, that "given the divergence among jurisdictions as to their piercing law, the choice-of-law approach followed can have outcome-determinative consequences." Gregory S. Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Disregard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. ANN. SURV. AM. L. 85, 125 (2008). This Court assumes without deciding that there may be significant, perhaps outcome-determinative, differences in the application of the alter ego analysis under Delaware and Ohio law to this case, and will expect both parties to more thoroughly brief this issue in future relevant filings.

## C. Rule 12(b)(6)

### 1. The Fraudulent Transfer Claims (Counts  [*23] II through VIII)

Defendants next contend that the fraudulent transfer claims must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted because Delaware, not Ohio, law controls the analysis as to whether the defendants are the alter ego of Horizon. While defendants may or may not ultimately be correct that Delaware law controls the alter ego analysis, it does not necessarily follow that the transfers complained of by Hitachi are also governed by Delaware law. Again, Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *See Klaxon Co., supra*. In *Morgan v. Biro Manufacturing*, 15 Ohio St. 3d 339, 342, 15 Ohio B. 463, 474 N.E.2d 286 (1984), the Ohio Supreme Court held that Ohio courts must look instead to the balancing test set forth in the Restatement (Second) of Conflict of Laws in determining which state's law to apply to tort actions. *See also Charash v. Oberlin Coll*., 14 F.3d 291, 296 (6th Cir. 1994) (explaining that Ohio now applies the Restatement analysis to tort actions rather than *lex loci delicti*). "Therefore, in Ohio, a party may overcome the presumption that the law of the place where the injury occurs will be applied to a  [*24] tort action, if it can demonstrate that another state has a more significant relationship to the action." *Muncie Power Prods. v. United Techs. Auto., Inc*., 328 F.3d 870, 874 (6th Cir. 2003).

"Section 145 of the Restatement, which governs torts generally, sets forth the analysis to be undertaken by courts in a tort action in determining whether another state has a 'more significant relationship.'" *Id*. That section directs courts to consider the following four factors, and states in relevant part:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated [*25] according to their relative importance with respect to the particular issue.

RESTATEMENT (SECOND) OF Conflict OF LAWS § 145 (1971). "Section 6 provides further guidance for analysis under the Restatement and describes several general principles to be considered when conducting a choice-of-law analysis. These principles include: the interests of each state in having its law applied; the relevant policies of the forum; certainty, predictability and uniformity of result; ease in the determination and application of the law to be applied; the promotion of interstate order; and the basic policies underlying the field of law." *Muncie Power Prods.*, 328 F.3d at 874 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)).

"The internal affairs doctrine is a conflict of laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs. A corporation's internal affairs include matters peculiar to the relationship among or between the corporation and its current officers, directors, and sharehold-

ers." *Bryan v. DiBella*, 2009 Ohio 1101 at *13 (Ohio Ct. App. Mar. 12, 2009). "[O]therwise a [*26] corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S. Ct. 2629, 73 L. Ed. 2d 269 (1982); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAW § 307-08 (1971). The Restatement explains the doctrine by offering examples of internal affairs "which involve primarily a corporation's relationship to its shareholders":

Steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares. Matters which may also affect the interests of the corporation's creditors include the issuance of bonds, the declaration and payment of dividends, loans by the corporation to directors, officers and shareholders, and the purchase and redemption by the corporation of outstanding shares of its own stock.

RESTATEMENT (SECOND) OF CONFLICT OF LAW § 302 cmt. a (1971).

Contrary to Defendants' assertions, the internal [*27] affairs doctrine does not mandate the application of Delaware law to Hitachi's fraudulent transfer claims. Notwithstanding the fact that several of the fraudulent transfer claims involve transfers to defendants, who are corporate officers and stockholders, the claims involve the rights of Hitachi, a creditor, and are not internal corporate governance issues that are typically the subject of the internal affairs doctrine. *See Faulkner v. Kornman (In re Heritage Org., L.L.C.)*, 413 B.R. 438, 463 (Bankr. N.D. Tex. 2009). Examining the relevant factors as stated above, the Court finds that Ohio law should apply to Hitachi's fraudulent transfer claims. The alleged injury occurred in Ohio, and the parties' relationship was centered here. While Delaware has an interest in regulating its entities, Ohio's interest in protecting its creditors outweighs Delaware's interest. *See Stanziale v. Dalmia (In re Allserve Systems Corp.)*, 379 B.R. 69, 79-80 (Bankr. D.N.J. 2007) (interest of New Jersey in protecting its creditors outweighs interest of Delaware in regulating its entities). Moreover, while the allegedly fraudulent transfers did not occur in Ohio, neither did they occur in

Delaware. *See Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 425-28 (S.D.N.Y. 2006) [*28] (interest of jurisdiction where fraudulent transfer occurred outweighs interest of partnership in having internal relationships governed by law of state under which it is organized).

Ohio is the state where the alleged injury occurred, and Ohio has the most significant relationship to this action. Therefore, this Court finds that Ohio law applies to Hitachi's fraudulent transfer claims. [4] Defendants' motions to dismiss counts II through VIII pursuant to Rule 12(b)(6) are therefore **DENIED**.

> [4] The Court also notes that even if it were to accept Defendants' argument and hold that the fraudulent transfer claims must be brought under Delaware law, both Delaware and Ohio are among the 42 states that have enacted the Uniform Fraudulent Transfer Act, and Hitachi would need only to amend its complaint to state a claim under the Delaware statute. *See* Ohio Rev. C. §§ 1336.01 *et seq.* and Del. Code tit. 6, Subtit. II, Ch. 13, §§ 1301 *et seq.*

**2. The Ancillary Claims (Counts I, IX through XIII)** [5]

> [5] Hitachi erroneously names two counts "Count XII." The Court will treat the count entitled "Injunctive Relief" as Count XII and will discuss the following count, entitled "Punitive Damages," as Count XIII.

Defendants [*29] attack counts I, and IX through XIII on two grounds. Defendants first argue that because these claims are ancillary to the fraudulent transfer claims, they must be dismissed upon the dismissal of the underlying claims. Next, Defendants argue that counts I, and IX through XII do not present independent causes of action upon which liability can be based. Defendants' first argument is meritless because the Court has denied Defendants' motion to dismiss the fraudulent transfer claims as discussed in the preceding paragraphs.

Count I of Hitachi's complaint sets forth the allegations supporting plaintiff's argument that Daniel, David, and Kern are the alter ego of Horizon and JFB Holdings. While Defendants are undoubtedly correct that "an alter ego claim is not by itself a cause of action," *Spartan Tube & Steel v. Himmelspach (In re RCS Engineered Prods. Co.)*, 102 F.3d 223, 226 (6th Cir. 1996), it is evident from the complaint that Count I plays the preeminent role in this litigation. Dismissal of Count I, the allegations of which are incorporated by reference into each and every other claim, on the technical ground that it is set forth in its own enumerated count is inappropriate in light [*30] of Rule 8's dictates that "[n]o technical form

of pleading is required" and "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8(d)(1), 8(e). Thus, while the Court notes that Count I does not state an independent claim for relief and merely seeks recovery from Daniel, David, and Kern for causes of action that would otherwise only obtain from Horizon or JFB Holdings, the Court declines to dismiss Count I. *See Ruffing v. Masterbuilt Tool & Die, LLC*, 2009 U.S. Dist. LEXIS 4754 at *43 (N.D. Ohio Jan. 23, 2009).

Counts IX ("Attachment"), X ("Garnishment"), XI ("Receiver"), and XII ("Injunction") are likewise enumerated as separate claims. As Defendants correctly note, these counts are not independent causes of action, but rather forms of potential relief. [6] Hitachi concedes this point, and claims only that it has "essentially reserved the option to move the Court for the requested relief [with respect to Counts IX-XI]." While plaintiff's complaint is inartfully styled, the Court declines to dismiss Counts IX-XI on technical grounds, and accepts the proposition as set forth in Daniel's reply which states "Defendant [Daniel Branch] has no objections to these allegations remaining [*31] in the complaint so long as it is clear that they do not state separate causes of action and are merely possible remedies that plaintiff may seek from the Court through the filing of motions or writs." (Doc. No. 30 at p. 9.)

> [6] The Court notes that Plaintiff's complaint also lists the four potential remedies under its prayer for relief. (Doc. No. 1, P 127.)

With respect to Count XII and Defendants' additional argument that this Court does not have subject matter jurisdiction pursuant to Rule 12(b)(1) to grant injunctive relief which amounts to a prejudgment attachment under *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S. Ct. 1961, 144 L. Ed. 2d 319 (1999), the Court accepts that Hitachi has reserved its right to later seek prejudgment injunctive relief, but has not yet done so. As such, this issue is not yet ripe for review. Therefore, the Court likewise declines to dismiss Count XII.

Count XIII seeks punitive damages. In Ohio, punitive damages are not an independent cause of action, but are, when appropriate, "awarded as a mere incident of the cause of action in which they are sought." *See Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 650, 1994 Ohio 324, 635 N.E.2d 331 (1994); *Bishop v. Grdina*, 20 Ohio St. 3d 26, 28, 20 Ohio B. 213, 485 N.E.2d 704 (1985) [*32] ("No civil cause of action in this state may be maintained simply for punitive damages."). Again, however, dismissal of the claim for punitive damages on the technical ground that it is listed as a separately enumerated count is inappropriate here. Defendants also argue that the Ohio Uniform Fraudulent Transfer Act,

specifically OHIO REV. CODE ANN. 1336.06, does not provide for punitive damages and that Count XIII must be dismissed on that ground. This argument is without merit. "In a case involving a fraudulent transfer, the creditor may obtain damages and 'any other relief that the circumstances may require,' including punitive damages and attorney fees if warranted." *Stewart v. R.A. Eberts Co.*, 2009 Ohio 4418 at *25 (Ohio Ct. App. Aug. 18, 2009) (citing OHIO REV. CODE ANN. 1336.07(A)(3)(c) and 1336.10). Therefore, the Court declines to dismiss Count XIII.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) are **DENIED**.

**IT IS SO ORDERED**.

Dated: March 4, 2010

/s/ Sara Lioi

**HONORABLE SARA LIOI**

**UNITED STATES DISTRICT JUDGE**

LEXSEE

**ROBERT J. KWAIT & ASSOCIATES, INC., Plaintiff, v. HEALTH-MARK DIAGNOSTICS, L.L.C., et al., Defendants.**

**Case No. 1:97-CV-512**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION**

**1998 U.S. Dist. LEXIS 22880**

**February 23, 1998, Filed**

**DISPOSITION:**    [*1]  Defendants' motion to Quash Summons and to Dismiss for Lack of Personal Jurisdiction DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff marketer filed an action against defendants, a manufacturer of medical products and its distributor, seeking to recover commissions allegedly owed in connection with the marketing and sale of certain products. Defendants filed motions to dismiss for lack of personal jurisdiction.

**OVERVIEW:** The marketer, an Ohio corporation, filed an action in Ohio against defendants, Florida and Delaware corporations, in order to recover commissions allegedly owed to the marketer in connection with the promotion and sale of certain medical diagnostic and pharmaceutical products. The court denied defendants' motions to dismiss for lack of jurisdiction. The court held that under Ohio's long arm statute, defendants transacted business in Ohio because their products were distributed and marketed throughout Ohio and defendants communicated with the marketer in Ohio via telephone calls and mail correspondence. Further, the exercise of jurisdiction over defendants fully comported with traditional notions of fair play and substantial justice under constitutional due process considerations. The marketer set forth a prima facie case of jurisdiction, and it was foreseeable to defendants that they might be subject to litigation in Ohio based on their relationship with the marketer. Thus, dismissal for lack of personal jurisdiction was not warranted.

**OUTCOME:** The court denied the motions to dismiss.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Challenges*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN1]When a defendant challenges personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving that jurisdiction is proper. In meeting this burden, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific facts to support jurisdiction. It is within the court's discretion to rule on a 12(b)(2) motion before trial, or to defer the hearing and determination of the motion until trial. Fed. R. Civ. P. 12(d). If the court chooses to decide the motion before trial, it may do so in one of three ways. First, it may decide the motion on the basis of the written submissions alone. Under this option, the plaintiff need only make a prima facie showing that jurisdiction is proper. This burden is relatively slight, and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. The court's other options are to permit discovery in aid of the motion, or to hold an evidentiary hearing on the merits of the motion. These methods for assessing the issue of personal jurisdiction are unwieldy and time consuming. They are, thus, most appropriate where the court determines that a defendant's motion raises substantial questions about the ability of the court to exercise jurisdiction over it and the fundamental fairness of doing so, but there remain disputed issues of credibility or fact.

1998 U.S. Dist. LEXIS 22880, *

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN2]Where any disputed issues of fact are integrally related to the merits of the plaintiff's claims and serious questions exist as to the validity of the defendants' objections to the exercise of jurisdiction over it, the court can and should decide the issue preliminarily, on the basis of written submissions alone. When considering whether to exercise jurisdiction over a non-resident defendant in a diversity case, or in a case where federal subject matter jurisdiction exists but the federal statute does not provide for service of process, a federal court must apply the law of the forum state in which it sits. Fed. R. Civ. P. 4(e).

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
*Contracts Law > Contract Conditions & Provisions > General Overview*
[HN3]Ohio Rev. Code § 2307.382 provides in part: A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person transacting any business in this state. The transaction of business provision confers jurisdiction on an out-of-state resident who conducts business or has dealings with individuals in the State of Ohio. This section is a valid support for jurisdiction over a defendant in a breach of contract or tort action arising out of a commercial relationship between businessmen. The term "transacting any business" encompasses a wide range of activity. The "transacting any business" provision is very broadly worded, and "transact" includes simply carrying on or prosecuting of business negotiations, which encompasses the completion of contracts, and far more. Clearly, entering into an ongoing business relationship with an Ohio entity, particularly where that relationship calls for substantial in-state activity by the Ohio entity, is sufficient to satisfy this prong of the Ohio long arm statute.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
[HN4]With respect to the constitutional prong of the jurisdictional analysis, jurisdiction falls into two catego-

ries, specific and general. A proper exercise of general jurisdiction requires the defendant's contacts with the forum state to be of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN5]In determining whether the court may exercise specific jurisdiction, the Sixth Circuit Court of Appeals employs the following three-part test: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. While each one of these requirements must be satisfied before the court can exercise jurisdiction over a defendant, when the first two prongs of the test are satisfied, an inference arises that the third element, fairness, is also present. The factors the court must consider in determining the third prong of the test include: (1) whether the defendant should have foreseen the possibility of a foreign suit; (2) whether the defendant was a passive or active participant in the transaction in question; and (3) the extent of the forum's interest in the controversy.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN6]Personal availment is the sine qua non of in personam jurisdiction, and a defendant who purposefully directs his acts toward the forum state must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. If the defendant should reasonably have foreseen that his actions would have consequences in the forum state, then his acts were directed toward that state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*

[HN7]Telephone calls and written communications into the state are sufficient contacts for jurisdictional purposes where the person communicating with an Ohio resident could have anticipated that those communications would cause consequences in that state.

**COUNSEL:** For ROBERT J. KWAIT & ASSOCIATES, INC., plaintiff: Richard S. Mitchell, Esq., Goodman, Weiss, Miller, Cleveland, OH.

For HEALTH-MARK DIAGNOSTICS, L.L.C., TECHNICAL CHEMICALS & PRODUCTS, INC., defendants: Jeffrey L. Nischwitz, Esq., Richard John Ambrose, Esq., Nischwitz, Pembridge & Chriszt, Cleveland, OH.

For DANIEL W HAMMER, neutral: Daniel W. Hammer, Sr., Esq., Thompson, Hine & Flory, Cleveland, OH.

**JUDGES:** KATHLEEN McDONALD O'MALLEY, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** KATHLEEN McDONALD O'MALLEY

**OPINION**

*MEMORANDUM & ORDER*

Plaintiff Robert J. Kwait & Associates ("RJK") brings this action against Health-Mark Diagnostics, L.L.C. ("HMD") and Technical Chemicals and Products, Inc. ("TCPI"). RJK accuses defendants of failing to pay RJK commissions owed in connection with the marketing and sale of certain medical devices and pharmaceutical products manufactured by TCPI and marketed through HMD. Presently pending before the Court are "Motions to Quash Summons and to Dismiss for Lack of Personal Jurisdiction" filed by each of the defendants. For the reasons that follow, defendants' [*2] motions are **DENIED**. [1]

> 1 Neither defendant explains why its motion is captioned both "Motion to Quash" and "Motion to Dismiss." Both defendants rely entirely on their contention that this Court lacks jurisdiction over their person and that it should dismiss this action for that reason. Neither defendants points to any defect in the summons issued or in the form of service of process employed by plaintiff; neither explains why an order quashing such summons or service would be justified. Accordingly, the Court treats defendants' motions solely as motions to dismiss under Rule 12(b)(2), Fed. R. Civ. P.

**I.**

[HN1]When a defendant challenges personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving that jurisdiction is proper. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (*citing McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 80 L. Ed. 1135, 56 S. Ct. 780 (1936)). In meeting this burden, the plaintiff [*3] may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific facts to support jurisdiction. *Id.*

It is within the Court's discretion to rule on a 12(b)(2) motion before trial, or to defer the hearing and determination of the motion until trial. Fed. R. Civ. P. 12(d); *Theunissen*, 935 F.2d at 1458. If the Court chooses to decide the motion before trial, it may do so in one of three ways. First, it may decide the motion on the basis of the written submissions alone. Under this option, the plaintiff need only make a prima facie showing that jurisdiction is proper. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988); *General Acquisition, Inc. v. Gencorp, Inc.*, 766 F. Supp. 1460, 1485 (S.D. Ohio 1990). This burden is relatively slight, and the Court must consider the pleadings and affidavits in the light most favorable to the plaintiff. *Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir. 1983); *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980), *cert. denied*, 450 U.S. 981, 67 L. Ed. 2d 816, 101 S. Ct. 1517 (1981). The Court's other two [*4] options are to permit discovery in aid of the motion, or to hold an evidentiary hearing on the merits of the motion. *Theunissen*, 935 F.2d at 1459. These alternative methods for assessing the issue of personal jurisdiction are unwieldy and, time consuming. They are, thus, most appropriate where the Court determines that a defendant's motion raises substantial questions about both the ability of the Court to exercise jurisdiction over it and the fundamental fairness of doing so, but there remain disputed issues of credibility or fact.

[HN2]Where as here, any disputed issues of fact are integrally related to the merits of the plaintiff's claims and serious questions exist as to the validity of the defendants' objections to the exercise of jurisdiction over it, the Court can and should decide the issue preliminarily, on the basis of written submissions alone. At this stage of the case, therefore, RJK need only make a prima facie showing that personal jurisdiction over HMD and TCPI exists.

When considering whether to exercise jurisdiction over a non-resident defendant in a diversity case, or in a case where federal subject matter jurisdiction exists but the federal statute [*5] does not provide for service of process, a federal court must apply the law of the forum

state in which it sits. Fed. R. Civ. P. 4(e); *Theunissen*, 935 F.2d at 1459 (diversity subject matter jurisdiction); *Onderik v. Morgan*, 897 F.2d 204, 208 (6th Cir. 1989) (citing *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1268 (6th Cir. 1984)) (federal subject matter jurisdiction). Personal jurisdiction must comport with *both* the state long arm statute and the Due Process Clause of the U.S. Constitution. *International Shoe Co. v. State of Wash., Office of Unemp. Comp & Placement*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945).

Thus, in determining whether this Court has personal jurisdiction over defendants, the Court must first look to the Ohio long arm statute, Ohio Rev. Code § 2307.382. *Welsh*, 631 F.2d at 439. [HN3]The statute provides in pertinent part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person:
>
> > (1) Transacting any business in this state;
>
> * * *

The transaction of business [*6] provision in subsection (1) confers jurisdiction on an out-of-state resident who conducts business or has dealings with individuals in the State of Ohio. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 559 N.E.2d 477 (Ohio 1990), *cert. denied*, 499 U.S. 975, 113 L. Ed. 2d 717, 111 S. Ct. 1619 (1991). Subsection (1) is a valid support for jurisdiction over a defendant in a breach of contract or tort action arising out of a commercial relationship between businessmen. *In- Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 231 (6th Cir. 1972). The term "transacting any business" encompasses a wide range of activity. *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 638 N.E.2d 541 (Ohio 1994). The Ohio Supreme Court has noted that the "transacting any business" provision is "very broadly worded," and that "transact" includes simply "carrying on or prosecuting of business negotiations," which encompasses the completion of contracts, and far more. *Kentucky Oaks*, 559 N.E.2d at 480 (citing *Black's Law Dictionary*, 1341 (5th ed. 1979)). Clearly, entering into an ongoing business [*7] relationship with an Ohio entity, particularly where that relationship calls for substantial in-state activity by the Ohio entity, is sufficient to satisfy this prong of the Ohio long arm statute. *See, e.g.,*

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996); *Wright International Express, Inc. v. Roger Dean Chevrolet, Inc.*, 689 F. Supp. 788, 790 (S.D. Ohio 1988).

The Court must next determine whether constitutional due process guarantees are offended by the exercise of jurisdiction in a given case. Thus, the Court must assure itself that the defendant had the requisite minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.

[HN4]With respect to this constitutional prong of the analysis, jurisdiction falls into two categories, specific and general. "A proper exercise of general jurisdiction requires the 'defendant's contacts with the forum state [to be] of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated [*8] to the defendant's contacts with the state.'" *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989), *cert. denied*, 493 U.S. 1058, 107 L. Ed. 2d 953, 110 S. Ct. 870 (1990)). [HN5]In determining whether the court may exercise specific jurisdiction, the Sixth Circuit employs the following three part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). While each one of these requirements must be satisfied before the Court can exercise jurisdiction over a defendant, when the first two prongs of the *Mohasco* test are satisfied, [*9] an inference arises that the third element, fairness, is also present. *Mohasco*, 401 F.2d at 381. The factors this Court must consider in determining the third prong of the test include: (1) whether the defendant should have foreseen the possibility of a foreign suit; (2) whether the defendant was a passive or active participant in the transaction in question; and (3) the extent of Ohio's interest in

the controversy. *Reliance Electric Co. v. Luecke*, 695 F. Supp. 917, 921 (S.D. Ohio 1988).

[HN6]Personal availment is the *sine qua non* of *in personam* jurisdiction, and a defendant who purposefully directs his acts toward the forum state "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); *Theunissen*, 935 F.2d 1454. 1460. If the defendant should reasonably have foreseen that his actions would have consequences in the forum state, then his acts were directed toward that state. *Mohasco*, 401 F.2d at 382; *In- Flight Devices*, 466 F.2d at 226. [*10]

## II.

TCPI is a publicly traded Florida corporation that manufactures and sells medical diagnostic products (e.g., pregnancy tests) which it distributes to pharmaceutical chains (e.g., Revco, Walgreens, Eckerds) for sale under that drug chain's private label. TCPI presently distributes its products through HMD, which in turn, distributes TCPI's products through local marketing reps or distributors. HMD, a limited liability Delaware corporation, is wholly owned by TCPI. Health-Mark Diagnostics, Inc. ("HMDI") was a limited liability Delaware corporation which participated in distributing products for TCPI before HMD was formed in 1995.

While TCPI products are distributed throughout Ohio, TCPI and HMD assert that this Court may not assert personal jurisdiction over them. First, TCPI and HMD assert that they do not, and never had had, offices, employees or facilities in Ohio and that their contacts with this state are, thus, insufficient to justify the assertion of general jurisdiction over them. Next, TCPI and HMD assert that it would be inappropriate to exercise specific jurisdiction over them because they have not purposely availed themselves of the privilege of acting in this [*11] state and certainly have not done so as it relates to RJK and the cause of action RJK asserts. Indeed, the defendants contend that they have never transacted any business with RJK, in Ohio or otherwise. While they concede that RJK has marketed TCPI products in Ohio, HMD and TCPI assert that RJK never entered into or maintained a business relationship with either of them; instead defendants assert RJK did business with HMDI, which is now defunct, and with an independent contractor doing business with HMD, Herb Slifer. Moreover, while defendants admit that John Pippert, an officer of both entities, met with RJK in Ohio during the relevant period, HMD claims that meeting was insufficient to confer jurisdiction over it and TCPI contends that Pippert was not acting *on its behalf* when he went to Ohio. For these reasons, defendants claim that it would be unfair and unreasonable to hale them into this Court to respond to the plaintiff's claims.

RJK does not argue that defendants are subject to the general jurisdiction of this Court. RJK asserts, instead, that both HMD and TCPI are subject to the specific jurisdiction of this Court because they have engaged in substantial business dealings [*12] with RJK, thereby availing themselves of the privilege of acting in this state, and that they have had more than minimal contact with the state in the course of doing so. In this context, RJK disputes all of defendants' factual assertions and submits affidavits and documentary evidence in support of the positions it takes.

First, RJK addresses defendants' claim that, since HMDI is now out of business, RJK's claims against that entity, if any, died with it. RJK points out the following: (1) HMDI was a Delaware corporation whose president was John Geppert and whose majority shareholder as of 1994 was TCPI; (2) on March 30, 1995, the very day on which HMD was formed as a Delaware limited liability company, HMDI was merged into that entity; (3) TCPI was the principal participant in HMD when formed and is now its sole owner; and (4) Geppert, now the president of HMD, executed the Certificate of Formation for that entity in conjunction with Jack Aronowitz, President and CEO of TCPI. Thus, RJK claims, with substantial support, that HMD and TCPI are both liable for the obligations of HMDI as the successors-in-interest to it and that HMDI's contacts with RJK and Ohio are attributable to defendants [*13] for jurisdictional purposes. [2]

> 2 Defendants do not dispute that HMDI transacted business in Ohio with RJK when it contracted with RJK to act as HMDI's distributing agent in this state.

In response, defendants shift gears somewhat; they claim that, while HMD *may* be a successor in interest to HMDI, TCPI is not because HMD is a wholly owned subsidiary of, but is independent from, TCPI. [3] This argument is made, however, despite the submission of documents and sworn statements from RJK making it clear that TCPI has previously characterized HMD as one of its *divisions*, not subsidiaries, and has, at least to RJK, held it out as such.

> 3 Defendants do not argue *that, if they are* successors-in-interest to HMDI, they somehow disclaimed or are not liable for its obligations. Defendants focus, instead, on their contention that HMD and TCPI are distinct entities.

[*14] RJK also responds to defendants' claim that TCPI and HMD should be treated separately by pointing out that RJK has alleged that TCPI and its principals are

alter egos of HMD. RJK explains that, while discovery has not yet occurred, it can allege in good faith that the individuals who own and operate TCPI and HMD overlap to a great degree and that, at times, individuals have held themselves out as being affiliated with one of these entities, when it appears they are actually on the payroll of the other. RJK also offers evidence, which is not insubstantial, that the two entities are not maintained as distinct entities and that their operations, and, perhaps, finances, are integrated. While RJK ultimately may be unable to prove some or all of these allegations, in light of the materials submitted to date, they certainly are not frivolous.

With respect to Slifer, and defendants attempts to distance themselves from him, RJK submits documentation that directly refutes defendants' characterization of Slifer's status. It is clear that, at some point before it submitted its briefs to this Court on the current motion, TCPI and HMD *both* viewed Slifer as an employee. Indeed, in January, [*15] 1996, Slifer was appointed "Vice President Private Label Sales" *for HMD*, reporting to John Pippert, in his capacity as Senior Vice President *of TCPI*, and received medical and other benefits *as a TCPI employee*. [4] Slifer's own business cards indicate that he is a Vice President of HMD, a *division* of TCPI. Thus, RJK has made a substantial showing that Slifer (who defendants admit transacted business with RJK and traveled to Ohio in order to do so) was acting as an agent of HMD and TCPI when dealing with RJK in Ohio.

> 4   This arrangement further undercuts TCPI's claim that HMD and TCPI were independent entities.

Defendants' claims that they never directly did business with RJK are also strongly and, at least at this stage, credibly rebutted by RJK. Defendants themselves characterized RJK as their representative, both in internal documentation and in their dealings with third parties. Indeed, RJK attaches a press release to its opposition brief, in which TCPI touted its relationship with RJK as recently [*16] as May, 1996. Defendants' dealings with RJK just prior to this litigation, in which they purport to define, delimit and ultimately sever their relationship with RJK are further support for the notion that some direct business relationship with one or both defendants did, in fact, exist.

Finally, as to the issue of defendants' direct physical contacts with Ohio, there is no dispute that John Pippert attended a meeting in Ohio, during the relevant period, to discuss the very issues raised by this action. At the time, Pippert was both Senior Vice President of TCPI *and* Vice President of HMD. While defendants assert he was only at the meeting in the latter capacity, they offer no documentation limiting his role at the meeting and RJK

asserts it was not, in fact, so limited. In light of the evidence referenced above regarding the integration of the operations of HMD and TCPI and of RJK's apparent relationship with both, defendants' after-the-fact attempt to define Mr. Pippert's role is suspect. Defendants' attempt to discount the importance of this meeting, regardless of the role Pippert played, is also unavailing. HMD contends that, because this meeting occurred at Hopkins International [*17]   Airport (rather than plaintiff's offices) and was allegedly arranged by a "third party" acting as an independent contractor (*i.e.*, Slifer), the meeting was not meaningful for jurisdictional purposes. The Court, quite simply, fails to understand this argument. That the meeting took place, that it took place in Ohio, that it took place during the relevant time period and that it relates to the business relationship upon which RJK premises its action are all highly relevant jurisdictional facts. Where in Ohio it occurred, or who arranged for the parties to meet, do not change the fact that the meeting occurred in this forum.

Defendants also do not dispute that agents of TCPI and HMD, while acting as such, had telephone contacts with RJK and corresponded through the mail with RJK to RJK's offices here in this state. Again, while defendants try to minimize the jurisdictional importance of these types of contacts, they do not deny their existence, leaving essentially unrebutted RJK's claim that it had these types of direct contacts with both HMD and TCPI on several different occasions. [5]

> 5   [HN7]Telephone calls and written communications into the state are sufficient contacts for jurisdictional purposes where the person communicating with an Ohio resident could have anticipated that those communications would cause consequences in that state. *E.g.*, *CompuServe Inc.*, 89 F.3d 1257, 1265; *Garrett v. Ruth Originals*, 456 F. Supp. 376 (S.D. Ohio 1978).

[*18] **III.**

Given the above, the Court has no trouble concluding that RJK has made a *prima facie* showing sufficient to justify the exercise of jurisdiction over both HMD and TCPI. And, the Court concludes that the decision to exercise jurisdiction over these defendants fully comports with traditional notions of fair play and substantial justice.

Defendants' jurisdictional argument is premised, and indeed depends, upon the factual assertions they make regarding their relationships with HMDI, Slifer, each other and, ultimately, with RJK. RJK credibly rebuts each of those factual assertions, however. Thus, there is substantial evidence that both TCPI and HMD transacted business with RJK, through HMDI, through Slifer, and

1998 U.S. Dist. LEXIS 22880, *

directly. There is also significant evidence that defendants' contacts with this state, through visits of its agents (including Slifer) and officers (including Pippert), as well as through its telephone and mail contacts, directly relate to the formation, continuation and alleged breach of the business relationship upon which RJK predicates this cause of action. Finally, this same evidence justifies the conclusion that HMD and TCPI both should have foreseen the [*19] possibility of an action against them in Ohio.

For all these reasons, the Court concludes that the exercise of personal jurisdiction over the moving defendants satisfies the requirement of Ohio's long arm statute and of due process. Accordingly, the defendants' motion to Quash Summons and to Dismiss for Lack of Personal Jurisdiction are **DENIED**.

**IT IS SO ORDERED**.

**KATHLEEN McDONALD O'MALLEY**

**UNITED STATES DISTRICT JUDGE**



Not Reported in F.Supp., 1988 WL 8983 (N.D.Ill.)
**(Cite as: 1988 WL 8983 (N.D.Ill.))**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1988 WL 8983 (N.D.Ill.)
**(Cite as: 1988 WL 8983 (N.D.Ill.))**
HOnly the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
Melissa A. WILLIAMS, Plaintiff,
v.
D. RICHEY MANAGEMENT CORPORATION, a corporation, Tod Lapidus, David L. Richey,
Robert Stark, individually and as agents, officers, and employees of D. Richey
Management Corporation, Defendants.
**No. 87 C 6398.**

Jan. 28, 1988.

*MEMORANDUM OPINION*

KOCORAS, District Judge:

**\*1** This employment dispute is presently before the court on defendants' motion
to dismiss. For the reasons contained herein, defendants' motion is granted in
part and denied in part.

FACTS

Defendant D. Richey Management Corporation ("D. Richey Management") is a private
investigative firm which operates throughout the United States, including the
Northern District of Illinois, and in Canada. Defendants David L. Richey and Tod
Lapidus are corporate officers of D. Richey Management, and defendant Robert
Stark is an employee. None of the individual defendants are residents of Illi-
nois.

On June 19, 1985, plaintiff, Melissa A. Williams, began working for D. Richey
Management as a Confidential Field Agent. During the course of her employment,
Ms. Williams allegedly observed defendant Stark engaging in unprofessional and
illegal behavior, which she reported to defendant Richey. Plaintiff also alleges
that both Mr. Stark and Mr. Lapidus made unwelcome sexual advances toward her
during certain business trips. Plaintiff claims that she reported only Mr.
Stark's advances because of Mr. Lapidus's status as an officer of her employer.
On December 17, 1985, Mr. Lapidus allegedly offered Ms. Williams a promotion
which she declined. Mr. Lapidus terminated Ms. Williams' employment five days
later, allegedly stating that she was "too tall, too pretty, [and] too memora-
ble" for the job. *See* Pl.Compl., Exh. A and B.

On June 20, 1986, plaintiff filed identical letters with the Illinois Department
of Human Rights ("IDHR") and the Equal Employment Opportunity Commission
("EEOC") charging that her termination was retaliatory and discriminatory being
based on her report of Mr. Stark's behavior, and her refusal of both Mr. Stark's
and Mr. Lapidus's sexual advances. The EEOC issued a Notice of Right-to-Sue
which plaintiff allegedly received on April 22, 1987. Plaintiff filed the in-
stant seven-count complaint on July 21, 1987.

In Counts I and II plaintiff alleges that defendants' actions violated Title VII
of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., in that: (1) she
suffered sexual discrimination because defendants Stark and Lapidus made unwel-
come sexual advances toward her which the other defendants ratified and approved
and because she was paid less than her male counterparts (Count I); and (2) her
discharge was in retaliation for her rightful complaints regarding Mr. Stark's
alleged sexual harassment, which complaints were ignored by defendants Richey
and Lapidus (Count II). Count III is brought pursuant to the Equal Pay Act, 29
U.S.C. § 206(d)(1), and alleges that defendants intentionally paid plaintiff
less than her male counterparts. In Counts IV and V plaintiff alleges that de-
fendants' actions violated the Racketeering Influenced and Corrupt Organization
Act ("RICO"), 18 U.S.C. §§ 1961 et seq. Counts VI and VII contain state law
claims for assault and battery and breach of contract, respectively.



Not Reported in F.Supp., 1988 WL 8983 (N.D.Ill.)
**(Cite as: 1988 WL 8983 (N.D.Ill.))**

Defendants now move to dismiss plaintiff's complaint as to the individual defendants for lack of personal jurisdiction. Additionally and alternatively, defendants move to dismiss certain portions of plaintiff's complaint for failure to state a claim, as follows: (1) all Title VII claims against the individual defendants; (2) the unequal pay claims against all defendants; (3) the RICO claims against all defendants; (4) the assault and battery claim as to D. Richey Management and Richey; and, (5) the breach of contract claim against all defendants. Each argument will be discussed *seriatim*.

DISCUSSION

**\*2** The first issue before the court is whether this court may exercise jurisdiction over the persons of defendants Richey, Lapidus, and Stark. Plaintiff contends that jurisdiction is proper under 28 U.S.C. § 1331. § 1331, however, merely confers jurisdiction over the subject matter of plaintiff's complaint, not over the persons of defendants. "Before a federal court may exercise personal jurisdiction over a defendant, ... there must be authorization for service of summons on the defendant." *Omni Capital Int'l. v. Rudolf Wolff & Co.,* --- U.S. ----, No. 86–740, slip op. at 6–7 (Dec. 8, 1987). Rule 4(f) of the Federal Rules of Civil Procedure permits process to be served only "within the territorial limits of the state in which the district court is held," unless a federal statute or rule authorizes service beyond those limits. Congress alone has the power to create service-of-process rules, and it did not provide for nationwide service of process in Title VII actions. *See Omni, supra,* at 11–12. Nationwide service may be effected in a civil RICO action, 18 U.S.C. § 1965(b), however, as discussed *infra,* plaintiff's RICO allegations fail to state a claim upon which relief may be granted. Therefore, since none of the individual defendants were inhabitants of or found within Illinois, nor did any of them consent to service, we must look to the Illinois long-arm statute to determine whether this court may exercise personal jurisdiction over them. F.R.C.P., Rule 4(e). *See Omni, supra,* at 7–8.

The portions of the Illinois long-arm statute relevant to the instant case, are as follows:

Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

(3) The ownership, use, or possession of any real estate situated in this State....

Ill.Rev.Stat. ch. 110, ¶ 2–209(a). In her complaint, plaintiff alleges that defendants Richey and Lapidus have transacted and continue to transact business within Illinois and that defendant Stark has transacted and continues to transact business within Illinois on behalf of defendant D. Richey Management. The affidavits of Richey and Lapidus establish that their business transactions within Illinois were also solely on behalf of D. Richey Management.

In Illinois, the conduct of a person in a representative capacity cannot be relied upon to exercise individual personal jurisdiction over that person. *Hurletron Whittier Inc. v. Barda,* 82 Ill.App.3d 443, 402 N.E.2d 840, 843 (1st Dist.1980). The existence of personal jurisdiction must be established by acts of the defendant which invoked the protection of Illinois law for the personal benefit of that defendant. *Id.* Plaintiff has alleged no such acts on the part of Richey, Lapidus, or Stark. Moreover, plaintiff has not alleged that any of the



Not Reported in F.Supp., 1988 WL 8983 (N.D.Ill.)
**(Cite as: 1988 WL 8983 (N.D.Ill.))**
individual defendants committed acts in Illinois *which gave rise to* any of her alleged causes of action-a prerequisite to jurisdiction under § 2-209. Ill.Rev.Stat. ch. 110, ¶ 2-209(a) and (c). Thus, it is clear that this court may not exercise personal jurisdiction over defendants Richey, Lapidus, and Stark. Accordingly, plaintiff's complaint against the individual defendants is dismissed for lack of personal jurisdiction. We will now examine the sufficiency of the allegations against D. Richey Management.

**\*3** Defendant contends that plaintiff's unequal pay claim contained in Count III must be dismissed because no such claim was contained in plaintiff's EEOC charge. Plaintiff admits that she failed to raise this claim in her EEOC charge, she argues, however, that this claim should not be barred because the scope of a discrimination complaint must be interpreted liberally. Apparently, both parties have misperceived the nature of plaintiff's Count III equal pay claim. If indeed plaintiff intended to bring Count III under Title VII, then the claim is barred because it was neither specifically included in plaintiff's EEOC charge, nor do we find it like, reasonably related to, or growing out of the allegations of sexual harassment and retaliatory discharge which were included therein. *See Jenkins v. Blue Cross Mut. Hospital Ins., Inc.*, 538 F.2d 164 (7th Cir.), *cert. denied,* 429 U.S. 986 (1976); *Clay v. Quartet Mfg. Co.*, 644 F.Supp. 56 (N.D.Ill.1986). Affording plaintiff every benefit to which she is entitled on this motion, however, it appears that Count III is brought pursuant to the Equal Pay Act, 29 U.S.C. §§ 206(d)(1) and 216(b), rather than Title VII. The Equal Pay Act does not require that a party file any administrative claim as a prerequisite to filing a complaint in federal district court. *Feng v. Sandrik*, 636 F.Supp. 77, 83 (N.D.Ill.1986). Accordingly, defendant's motion to dismiss Count III on this basis is denied.

Defendant's next contention is that plaintiff's civil RICO claims must be dismissed for failure to state a claim. We agree. A *sine qua non* of any RICO claim is the allegation of at least two acts of racketeering activity as defined in 18 U.S.C. § 1961(1). Plaintiff has alleged no such activity. Accordingly, defendant's motion to dismiss plaintiff's RICO claims is granted.

Turning now to plaintiff's state law claims, it is clear that plaintiff's assault and battery count does not state a claim against D. Richey Management. It contains no allegation of wrongdoing on the part of anyone other than Mr. Lapidus and Mr. Stark over whom this court has no jurisdiction. Thus, Count VI is dismissed for failure to state a claim upon which relief may be granted.

Plaintiff's Count VII, alleging a breach of contract, also fails to state a claim. Plaintiff has pled no facts establishing the existence of a valid and enforceable contract, her full performance under the contract, defendant's breach, or her damages as a consequence of any breach. Even under the liberal pleading requirements afforded federal claimants under Rule 8(a)(2), the bald conclusions contained in Count VII cannot state a claim for breach of contract upon which relief might be granted.

**\*4** In conclusion, the complaint as against defendants Stark, Lapidus, and Richey is dismissed for lack of personal jurisdiction. Additionally, plaintiff's RICO, assault and battery, and breach of contract counts are dismissed for failure to state a claim pursuant to Rule 12(b)(6). Defendant's motion to dismiss Count III, however, is denied.

N.D.Ill.,1988.
Williams v. D. Richey Management Corp.
Not Reported in F.Supp., 1988 WL 8983 (N.D.Ill.)

END OF DOCUMENT

LEXSEE



Cited
As of: Apr 07, 2010

**A-DEC, Inc. v. Professional Equipment Manufacturing Co.**

**Civil No. 83-1118.**

**United States District Court for the District of Oregon.**

**1983 U.S. Dist. LEXIS 11560; 1984-1 Trade Cas. (CCH) P65,808**

**November 18, 1983**

**COUNSEL:** [*1] Richard A. Hayden and Laurel S. Terry, of Stoel, Rives, Boley, Fraser and Wyse, Portland, Ore., for plaintiff

Robert Fabrikand and Joseph L. Bianculli, of Casson, Calligaro & Mutryn, Washington, D.C., Thomas A. Balmer and Jack Landau, of Lindsay, Hart, Neil & Weigler, Portland, Ore., for defendant

**OPINION BY:** FRYE

**OPINION**

Opinion and Order

FRYE, J.: This is an action for a declaratory judgment under 28 U.S.C. § 2201. Plaintiff, A-DEC, Inc. (A-DEC), is a manufacturer of dental equipment. Defendant, Professional Equipment Manufacturing Company (PEMNCO), is a seller and servicer of dental equipment. PEMCO has in the past purchased hundreds of thousands of dollars worth of dental equipment from A-DEC, which PEMCO then resold to consumers. In June and July of 1983, A-DEC's representatives decided to terminate PEMCO as a dealer of A-DEC's product. A-DEC also terminated three other dealers. PEMCO responded by threatening to sue A-DEC for wrongful termination of an alleged distributorship agreement and for violations of antitrust laws. A-DEC then filed this suit for a declaratory judgment that its termination of PEMCO was neither a wrongful termination nor a violation of the antitrust [*2] laws. A-DEC then filed its threatened suit in New Jersey. A-DEC is an Oregon corporation with its principal place of business in Oregon. PEMCO is a New Jersey corporation with its principal place of business in New Jersey.

PEMCO has moved to transfer this case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1406(a), or alternatively under 28 U.S.C. § 1404(a). Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The issue in this case is complicated by the special venue and service of process provision of 15 U.S.C. § 22, which provides:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

This section is similar to other [*3] special jurisdiction/venue provisions in other federal laws, including 15 U.S.C. § 78aa, a statute this court recently considered in Poindexter v. Wedbush, Noble, Cooke, Inc., Civ. No. 82-1126 (D. Ore. December 22, 1982), Opinion and Order at 5-10. The general effect of such statutes is this: so long as the special venue requirements of the sections are met, then a defendant may be served with process outside of the district according to the service-of-process provisions of the sections. This in turn may allow a court to exercise personal jurisdiction over a defendant in situations where personal jurisdiction would not have been possible under the service-of-process provisions governing suits

Page 1

based on diversity of citizenship alone. See Fitzsimmons v. Barton, 589 F. 2d 330 (7th Cir. 1979).

A-DEC's first argument that venue and personal jurisdiction are proper in this case is based on 15 U.S.C. § 22. Plaintiff argues that because PEMCO made substantial purchases from A-DEC in Oregon over the past years, the "transacting business" requirement of section 22 is met, giving this court personal jurisdiction over PEMCO and making venue proper in this district. See In re Chicken Antitrust [*4] Litigation, 407 F. Supp. 1285, 1290-94 (N.D. Ga. 1975), McCrory Corp. v. Cloth World, Inc., 378 F. Supp. 322, 324 (S.D. N. Y. 1974).

However, the issue is complicated because the present suit is a declaratory judgment action in which the federal cause of action arises from PEMCO's side of the legal and factual dispute. This has implications for the so-called "well pleaded complaint rule," which in general states that federal subject matter jurisdiction cannot be predicated on the existence of a federal matter which arises in a case only as a matter of defense. In the present case, A-DEC is not alleging that PEMCO violated the federal antitrust laws; rather, A-DEC seeks a declaration that it did not violate those laws. Although the mechanism of the declaratory judgment action apparently allows such a claim to be brought in federal court without violating the well pleaded complaint rule, see 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2767 at 739-40 (1983), in terms of the real interests of the parties, defendant PEMCO is in fact an antitrust "plaintiff" (it alleges to have suffered harm from A-DEC's violation of the antitrust laws), and plaintiff A-DEC [*5] is in fact the antitrust "defendant" (the party allegedly violating the antitrust laws).

This in turn has implications for A-DEC's argument that personal jurisdiction and venue are proper in this district under 15 U.S.C. § 22. The expansive venue and service-of-process provisions of 15 U.S.C. § 22 were enacted so that antitrust plaintiffs -- those injured by actions of others in violation of the antitrust laws -- could obtain redress in their home states rather than "resorting to distant forums for redress of wrongs done in the places of their business or residence." United States v. Scophony Corp. of America, 333 U.S. 795, 808 (1948). See also United States v. National City Lines, 334 U.S. 573 (1948), Eastland Construction Co. v. Keasby & Mattison Co., 358 F. 2d 777 (9th Cir. 1966). Here, A-DEC, the antitrust "defendant," is attempting to use 15 U.S.C. § 22 and the declaratory judgment mechanism in combination to trun the statutory scheme on its head, with the result that PEMCO, in fact an antitrust "plaintiff," will be forces to litigate its antitrust case against A-DEC in a district where it would not be subject to person jurisdiction in a diversity case. See infra. Because [*6] section 22 was enacted to allow those alleging an antitrust injury

to sue at home, this court rules that parties in a declaratory judgment action must be aligned according to their real interests for purposes of section 22. In other words, the expansive venue and service of process provisions of section 22 shall only apply to allow for expanded personal jurisdiction as against corporations that allegedly have violated the antitrust laws.Otherwise, the policy of favoring antitrust plaintiffs, (e.g., those alleging antitrust injury) in venue and jurisdictional matters could be wholly defeated in any case by a preemptive declaratory judgment action by the alleged wrongdoer.

A-DEC also alleges other bases for proper venue and personal jurisdiction. An alternative basis for subject matter jurisdiction in this case is 28 U.S.C. § 1332 (diversity of citizenship). Plaintiff argues that considering this case as a diversity case, venue is proper under 28 U.S.C. § 1391(a). However, section 1391(a) only applies by its terms to "[a] civil action wherein jurisdiction is founded only on diversity of citizenship. . . ." (emphasis added). "If there is any additional basis for federal jurisdiction [*7] other than diversity, [section 1391(a)] is inapplicable." 1 J. Moore, et al. Moore's Federal Practice P0.142[3] at 1384 (2d ed. 1982). Moreover, PEMCO argues that without the expansive service-of-process provision of 15 U.S.C. § 22, personal jurisdiction over defendant in the District of Oregon is lacking, because of PEMCO's lack of contacts with the state. If this court is without personal jurisdiction over PEMCO, it may transfer the case to a district where personal jurisdiction and venue are proper, Goldlawr v. Heiman, 369 U.S. 463 (1962), instead of dismissing the case altogether.

Personal jurisdiction depends on two factors: first, whether a defendant can be reached by the state's long-arm statute, Cascade Corp. v. Hiab-Foco AB, 619 F. 2d 36 (9th cir. 1980), and second, whether the exercise of jurisdiction comports with the constitutional requirement of due process. Id. PEMCO argues that under the Oregon cases it contacts with the state are insufficient to allow it to be reached under the state long-arm statute, ORS 14.035. Given the facts of this case, the court finds this is correct. PEMCO is a corporation organized and existing under the laws of New Jersey. PEMCO's [*8] principal place of business is New Jersey. PEMCO sells dental products primarily in the New York metropolitan area, but to a lesser degree throughout New England. All of PEMCO's officers and employees work in New Jersey. PEMCO is not now and never has been licensed to do business in Oregon. It has never employed agents to solicit business in Oregon.It has never advertised in any publication primarily distributed in Oregon, and has never made any sales in Oregon. In fact, PEMCO's sole contact with Oregon is ordering dental supply equipment by phone and mail from A-DEC, which is located in Oregon. The purchase of non-specifically manufactured

1983 U.S. Dist. LEXIS 11560, *; 1984-1 Trade Cas. (CCH) P65,808

goods by mail and telephone from an Oregon company is, without more, insufficient to form the basis for personal jurisdiction under the Oregon long-arm statute. See Neptune Microfloc, Inc. v. First Florida Utilities, Inc., 261 Or. 494, 495 P. 2d 263 (1972), Perkins v. Bartlett Construction Co., 57 Or. App. 817, 646 P. 2d 672 (1982); compare State ex rel. White Lumber Sales, Inc. v. Sulmonetti, 252 Or. 121, 448 P. 2d 571 (1968).

Now, Therefore, It is Hereby Ordered that because this court does not have personal jurisdiction over the defendant, [*9] defendant's motion to transfer this action pursuant to 28 U.S.C. § 1406(a) to the United States District Court for the District of New Jersey is Granted.

LEXSEE



Cited
As of: Apr 07, 2010

**PLASKOLITE, INC., Plaintiff, v. ZHEJIANG TAIZHOU EAGLE MACHINERY
CO., LTD., et al., Defendants.**

**Case No. 08-487**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
OHIO, EASTERN DIVISION**

**2008 U.S. Dist. LEXIS 99395**

**December 9, 2008, Decided
December 9, 2008, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff United States
manufacturer sued defendants, a Chinese company and
an import company, alleging violations of the Robinson-
Patman Act and the Clayton Act, 15 U.S.C.S. §§ 13(c)
and 15(a). The Chinese company moved to dismiss for
lack of proper service and lack of personal jurisdiction.
The import company moved to dismiss based on im-
proper venue and lack of personal jurisdiction. Defen-
dants also moved to transfer under 28 U.S.C.S. § 1404.

**OVERVIEW:** The manufacturer, located in Ohio, made
and sold plastic sheeting to retailers. The Chinese com-
pany made plastic sheeting which the import company
obtained and sold to a large national home improvement
retailer. Both the import company and the retailer were
located in Georgia. The manufacturer alleged that defen-
dants engaged in commercial bribery, by granting kick-
backs or bribes to buyers employed by the retailer in
exchange for the retailer's business. The manufacturer
relied on 28 U.S.C.S. § 1391(c) and (d), and 15 U.S.C.S.
§ 22, for its assertion that venue was proper. The court
found that exercising personal jurisdiction over the im-
port company would offend due process considerations
and the import company had no connection with the
state. The import company's contacts with the state of
Ohio were not sufficient to establish venue under § 22.
Venue was proper over the Chinese company because §
1391(d) authorized an alien to be sued in any district and
once venue had been established, § 22 authorized

worldwide service of process. Defendants established
that transferring this case served the convenience of the
parties and witnesses, and was in the interests of justice.

**OUTCOME:** The motions to transfer venue were
granted and the motions to dismiss were denied as moot.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > In Personam Actions > Challenges
Evidence > Procedural Considerations > Burdens of
Proof > General Overview*
[HN1]A plaintiff has the burden of proving that the court
has personal jurisdiction over the defendants.

*Civil Procedure > Venue > General Overview
Evidence > Procedural Considerations > Burdens of
Proof > General Overview*
[HN2]The party bringing a motion to transfer venue un-
der Fed. R. Civ. P. 12(b)(3) and 28 U.S.C.S. § 1404
bears the burden of proving that the transferee district is
a more convenient forum for litigation of the action.

*Civil Procedure > Jurisdiction > Personal Jurisdiction
& In Rem Actions > In Personam Actions > General
Overview
Civil Procedure > Venue > General Overview*

[HN3]Courts generally consider the question of personal jurisdiction before addressing the issue of proper venue. A court may first analyze the question of venue when the resolution of the venue issue resolves the case before the court. Where defendants have challenged a court's power over their persons and, at the same time, have moved alternatively for transfer, the interests of judicial economy are best served by initial address of the transfer issue.

*Antitrust & Trade Law > Clayton Act > Jurisdiction & Venue*

[HN4]Section 12 of the Clayton Act, 15 U.S.C.S. § 22, states: any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

*Antitrust & Trade Law > Clayton Act > Jurisdiction & Venue*
*Civil Procedure > Venue > General Overview*

[HN5]The United States District Court for the Southern District of Ohio, Eastern Division holds that 15 U.S.C.S. § 22's venue provision can be supplemented by the general venue statute for alien but not domestic defendants. 28 U.S.C.S. § 1391(d) is unique among general venue statutes; permitting aliens to be sued in district is a principle with roots in "the beginning of the Republic."

*Antitrust & Trade Law > Clayton Act > Jurisdiction & Venue*
*Civil Procedure > Venue > Corporations*

[HN6]The holding of Go-Video, Inc. v. Akai Elec. Co., Ltd., permits a plaintiff to sue only an alien corporation in any district; nothing in Go-Video permits a domestic corporation to be sued in any district. Rather, a domestic corporation could only be sued according to § 12 of the Clayton Act, 15 U.S.C.S. § 22.

*Antitrust & Trade Law > Clayton Act > Jurisdiction & Venue*

[HN7]Section 12 of the Clayton Act, 15 U.S.C.S. § 22, states: any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business. Inhabitant means incorporated under the laws of that jurisdiction. Being "found" in a district is generally

equated with "doing business" there, and requires greater contacts than does "transacting business." Corporations are found where they have "presence" and "continuous local activities" in the district.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*

[HN8]The law of the forum state determines whether assertion of personal jurisdiction is proper.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*

[HN9]Ohio Rev. Code Ann. § 2307.382(A)(6) states that jurisdiction can be asserted over a non-resident defendant that caused tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

*Civil Procedure > Venue > Corporations*

[HN10]28 U.S.C.S. 1391(c) states: for purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*

[HN11]In the face of a properly supported motion for dismissal, a plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. If the court chooses to decide the motion on the written submissions alone, it must consider the pleadings and affidavits in the light most favorable to the plaintiff.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*

[HN12]In Ohio, district courts apply the Fed. R. Civ. P. 56(e) standard to affidavits in support of a motion to dismiss, requiring that they shall be made on personal knowledge, and that a court will disregard averments of facts outside the affiants' personal knowledge. Statements prefaced by "I believe" or those made upon "understanding" are properly subject to a motion to strike.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Challenges*
[HN13]Where personal jurisdiction is challenged, the plaintiff has the burden of establishing that jurisdiction exists.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN14]Due process requires that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Purposeful Availment*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Substantial Contacts*
[HN15]A district court conducts a three-part test to determine whether personal jurisdiction is proper, asking: (1) whether the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) whether the cause of action arose from the defendant's activities there; and (3) whether the acts of the defendant or consequence caused by the defendant had a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. The United States Court of Appeals for the Sixth Circuit has adopted the "stream of commerce plus" theory, such that the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state.

*Civil Procedure > Venue > General Overview*
[HN16]The general venue statute states: an alien may be sued in any district. The statute therefore provides for venue to lie in any jurisdiction where service of process may be effected.

*Antitrust & Trade Law > Clayton Act > Jurisdiction & Venue*

[HN17]With regard to an antitrust action, several circuits have held that foreign corporations may be served pursuant to § 12 of the Clayton Act's , 15 U.S.C.S. § 22, world-wide service of process provision without first satisfying § 12's venue clause because the service and venue clauses are "independent." The United States Court of Appeals for the Third Circuit holds that for purposes of personal jurisdiction, minimum contacts are judged based on an alien defendant's aggregate national contacts, not its local contacts. Finally, given the unique nature of the general alien venue statute, a plaintiff can establish venue pursuant to 28 U.S.C.S. § 1391(d), instead of relying solely upon § 12's venue clause.

*Antitrust & Trade Law > Clayton Act > Jurisdiction & Venue*
*Civil Procedure > Venue > Corporations*
[HN18]With regard to an antitrust action, nationwide service of process under § 12 of the Clayton Act, 15 U.S.C.S. § 22, is available to a plaintiff who establishes venue under 28 U.S.C.S. § 1391(d).

*Antitrust & Trade Law > Clayton Act > Jurisdiction & Venue*
*Civil Procedure > Venue > General Overview*
[HN19]With regard to an antitrust action, 28 U.S.C.S. § 1391(d), authorizes an alien to be sued in any district. Once venue has been established, § 12 of the Clayton Act, 15 U.S.C.S. § 22, authorizes worldwide service of process.

*Antitrust & Trade Law > Clayton Act > Jurisdiction & Venue*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts*
[HN20]Where a statute authorizes world-wide service, the exercise of personal jurisdiction over an alien corporation comports with due process so long as the corporation has sufficient minimum contacts with the United States at large. Service beyond the bounds of the territorial United States raises questions as to the contact of the defendant with the United States. Where jurisdiction authorized by Clayton Act, and process served on alien corporation under § 12 of the Clayton Act, 15 U.S.C.S. § 22, national contacts analysis appropriate. Federal statutes conferring "world-wide service of process" also permit a federal court to base its in personam jurisdiction upon the aggregate contacts with the United States of an alien defendant. In an antitrust suit against an alien corporation, the court finds that personal jurisdiction can be obtained in any district pursuant to the nationwide ser-

vice provision under the Clayton Act, provided the corporation has adequate national contacts.

*Civil Procedure > Venue > Motions to Transfer > Convenience of Parties*
*Civil Procedure > Venue > Motions to Transfer > Convenience of Witnesses*
*Civil Procedure > Venue > Motions to Transfer > Interests of Justice*

[HN21]28 U.S.C.S. § 1404(a) states: for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. The party bringing a motion to transfer venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C.S. § 1404 bears the burden of proving that the transferee district is a more convenient forum for litigation of the action.

*Civil Procedure > Venue > Motions to Transfer > General Overview*

[HN22]A district court has broad discretion in deciding whether to grant or deny a motion to transfer pursuant to 28 U.S.C.S. § 1404(a). In ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice."

*Civil Procedure > Venue > Motions to Transfer > General Overview*

[HN23]In ruling on a 28 U.S.C.S. § 1404(a) motion, a court need not limit itself to the three statutory factors. Rather, the court should consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.

*Civil Procedure > Venue > Motions to Transfer > General Overview*

[HN24]With regard to a change of venue, the private interests include: a plaintiff's forum preference as manifested in the original choice; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the for a; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum.

*Civil Procedure > Venue > Motions to Transfer > General Overview*

[HN25]With regard to a change of venue, public interests include: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the for a; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Civil Procedure > Venue > Motions to Transfer > General Overview*

[HN26]A district court may transfer an action even if it lacks personal jurisdiction over the defendant.

**COUNSEL:**  [*1] For Plaskolite, Inc., Plaintiff: James Allison Wilson, Jr, LEAD ATTORNEY, Kenneth J Rubin, Terry Morrow Miller, Vorys Sater Seymour & Pease, Columbus, OH.

For Zhejiang Taizhou Eagle Machinery Co, LTD, also known as Taizhou Eagle Group, LTD, Defendant: Marc J Kessler, LEAD ATTORNEY, Hahn Loeser & Parks - 2, Columbus, OH; Kerry Renker Green, Hahn Loeser + Parks LLP, Columbus, OH.

For Global Home Industries, LLC, Defendant: C. Craig Woods, LEAD ATTORNEY, Squire Sanders & Dempsey - 2, Columbus, OH; David N Schaeffer, PRO HAC VICE, Kidd & Vaughan LLP, Atlanta, GA.

**JUDGES:**  EDMUND A. SARGUS, JR., UNITED STATES DISTRICT JUDGE. Magistrate Judge King.

**OPINION BY:** EDMUND A. SARGUS, JR.

**OPINION**

**OPINION AND ORDER**

This matter is before the Court on Defendants' renewed Motions to Dismiss Plaintiff's Amended Complaint, or in the alternative, to Transfer Venue to the Northern District of Georgia. [1] (Docs. 18, 20). For the reasons that follow, Defendants' motions to transfer venue are GRANTED, and their motions to dismiss are DENIED as MOOT.

1 Defendants' initial motions to dismiss, docs. 6 and 9, were rendered MOOT by the filing of Plaintiff's Amended Complaint (doc. 11), and by

the filing of Defendants' renewed motions, addressed herein.

**I.**

Plaintiff [\*2] Plaskolite, Inc. is an Ohio corporation that manufactures and sells plastic sheet, such as lighting panels, to retailers. Defendant Zhejiang Taizhou Eagle Machinery Co., Ltd ("ZTE") is a Chinese company that manufactures various products, including plastic sheeting. Defendant Global Home Industries, LLC ("GHI") is a Georgia company that imports Chinese products, including those from ZTE, and sells them to The Home Depot, also located in Georgia. Defendant Zhejiang Eagle Industries is a Georgia entity that has not yet been served or entered an appearance in the case.

Plaintiff's Amended Complaint alleges violations of the Robinson-Patman Act and the Clayton Act on the part of Defendants in connection with the sale of plastic ceiling panels. (Am. Compl. at P 5); 15 U.S.C. §13(c), §15(a). Specifically, Plaintiff alleges that ZTE, ZEI, and/or GHI engaged in commercial bribery, by granting kickbacks or bribes to buyers employed by Home Depot in exchange for Home Depot's business. Plaintiff claims that it has suffered injury in the form of its lost business to Home Depot as a result of this antitrust violation.

Defendant ZTE moves to dismiss Plaintiff's claims for lack of proper service and [\*3] lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and 12(b)(5); GHI moves to dismiss based on improper venue and lack of personal jurisdiction. In the alternative, both Defendants seek to have the case transferred to the Northern District of Georgia under 28 U.S.C. §1404.

**II.**

[HN1]Plaintiff has the burden of proving that the Court has personal jurisdiction over Defendants. *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002). In contrast, [HN2]the party bringing a motion to transfer venue under Federal Rule 12(b)(3) and 28 U.S.C. § 1404 bears the burden of proving that the transferee district is a more convenient forum for litigation of the action. *See Eastman Outdoors Inc. v. Archery Trade Ass'n*, 2006 U.S. Dist. LEXIS 42835, 7-8 (E.D. Mich. June 6, 2006), *citing Terra Int'l, Inc. v. Miss. Chem. Corp*., 119 F.3d 688, 695 (8th Cir. 1997).

[HN3]Courts generally consider the question of personal jurisdiction before addressing the issue of proper venue. *See Leroy v. Great W. United Corp*., 443 U.S. 173, 99 S. Ct. 2710, 61 L. Ed. 2d 464 (1979). A Court may, however, first analyze the question of venue when "the resolution of the venue issue resolves the case before the Court." *Lomanno v. Black*, 285 F.Supp. 2d 637, 640 (E.D. Pa. 2003). [\*4] As one court has stated, where "defendants have challenged a court's power over their

persons and, at the same time, have moved alternatively for transfer, the interests of judicial economy are best served by initial address of the transfer issue." *Teleprompter Corp. v. Polinsky*, 447 F. Supp. 53, 54-55, 1977 U.S. Dist. LEXIS 13727 (S.D.N.Y. 1977).

Plaintiff relies on 28 U.S.C. § 1391(c) and (d), and the special venue provision of the Clayton Act, 15 U.S.C. § 22 ("Section 12"), for its assertion that venue is proper in this district. [HN4]Section 12 of the Clayton Act states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

Although the Sixth Circuit Court of Appeals has not yet considered the issue, many courts have analyzed the interaction of the Clayton Act's special venue provision and the general venue statute when a plaintiff relies on Section 12 to establish personal jurisdiction. Three different [\*5] approaches have emerged, with some courts requiring plaintiffs to use Section 12's venue provision exclusively when suing a domestic entity, but allowing plaintiffs to establish venue over an alien corporation under the general venue statute, 28 U.S.C. § 1391(d). *See, e.g., In re Auto. Refinishing Paint Antitrust Litig*., 2002 U.S. Dist. LEXIS 15099 (E.D. Pa. July 31, 2002), *affirmed*, 358 F.3d 288 (3d Cir. 2004); *GE v. Bucyrus-Erie Co*., 550 F. Supp. 1037, 1040 (S.D.N.Y. 1982); *Go-Video, Inc. v. Akai Elec. Co., Ltd*., 885 F.2d 1406, 1413 (9th Cir. 1989). Other courts allow for special and general venue provisions to be used interchangeably. *See, e.g., New York v. Morton Salt Co*., 266 F.Supp. 570, 574-75 (E.D. Pa. 1967). Last, some courts have held that Section 12 is the exclusive basis for venue in antitrust matters. *See, e.g., GTE New Media Servs. Inc. v. Bellsouth Corp*., 339 U.S. App. D.C. 332, 199 F. 3d 1343 (D.C. Cir. 2000); *Mgmt. Insights, Inc. v. CIC Enters., Inc*., 194 F.Supp. 2d 520, 532 (N.D. Tex. 2001).

This Court finds the analysis set out by the Ninth and Third Circuit Courts of Appeal in *Go-Video, Inc*. and *Automobile Refinishing* to be the most persuasive. Therefore, the Court adopts the first approach, [\*6] whereby [HN5]Section 12's venue provision can be supplemented by the general venue statute for alien but not domestic defendants. *See Brunette Machine Works Ltd. v. Kockum Indus. Inc*., 406 U.S. 706, 708, 92 S. Ct. 1936, 32 L. Ed.

2008 U.S. Dist. LEXIS 99395, *

2d 428 (1972) (recognizing that 28 U.S.C. § 1391(d) is unique among general venue statutes; permitting aliens to be sued in district is a principle with roots in "the beginning of the Republic").

It is not clear from Plaintiff's Amended Complaint or memoranda what approach it recommends to the Court. Plaintiff appears to assert that venue lies under 28 U.S.C. § 1391(c) for the domestic defendant, GHI, and under a combination of Section 12 and 28 U.S.C. § 1391(d) for the alien defendant, ZTE. The Court will analyze each basis.

*Venue and Personal Jurisdiction for Claims against GHI*

Following the approach adopted by the Third and Ninth Circuit Courts, the Court finds that Plaintiff must establish venue under Section 12 of the Clayton Act in order to pursue claims against GHI, a domestic entity, in this district. [HN6]"The holding of *Go-Video* permits a plaintiff to sue only an alien corporation in any district; nothing in *Go-Video* permits a domestic corporation to be sued in any district. Rather, a domestic [*7] corporation could only be sued according to Section 12." *Automotive Refining*, 2002 U.S. Dist. LEXIS 15099, *9, 358 F.3d at 296, n.10 (emphasizing the importance of distinguishing between out-of-state and foreign corporate antitrust defendants); *see also In re Magnetic Audiotape Antitrust Litig. v. BASF AG*, 171 F.Supp. 2d 179, 185 (S.D.N.Y. 2001).

Plaintiff cannot establish venue under [HN7]Section 12, which states: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business. . . ." 15 U.S.C. § 22. Inhabitant means "incorporated under the laws of that jurisdiction." *Automotive Refining*, 358 F.3d at 293 n.6 (quoting *Bucyrus-Erie*, 550 F. Supp. at 1041 n.5). "Being 'found' in a district is generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'" *Id*. Corporations are found "where [they have] 'presence' and 'continuous local activities' in the district." *Id.; Cumberland Truck Equip. Co. v. Detroit Diesel Corp.*, 401 F.Supp. 2d 415, 424 (E.D. Pa. 2005).

In lieu of analyzing [*8] venue under Section 12, Plaintiff contends that GHI is subject to personal jurisdiction under Ohio's long-arm statute, and therefore that venue is proper under the general venue statute, 28 U.S.C. § 1391(c). [2] *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (law [HN8]of the forum state determines whether assertion of personal jurisdiction is proper). Specifically, Plaintiff relies on [HN9]Ohio Rev. Code § 2307.382(A)(6), whereby jurisdiction can be asserted over a non-resident defendant that

"caus[ed] tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state."

2   [HN10]28 U.S.C. 1391(c) states: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. . . ."

Plaintiff's position in this regard is tenuous. Plaintiff's memorandum states that GHI engaged in corporate bribery with the knowledge that Plaskolite would be injured in Ohio. Plaintiff's Amended Complaint contains no such [*9] allegation. Rather, Plaintiff relies on the affidavit of John Szlag, National Sales Manager for Plaskolite, who states as follows: "I believe that both ZTE and Global Home was *(sic)* aware of Plaskolite's existence, knew of Plaskolite's location in Ohio, and were aware of the fact that Plaskolite is one of their competitors. In fact, I believe that ZTE and Global Home knew that Plaskolite was an existing supplier to Home Depot at the time ZTE and Global Home began their commercial bribery activity and, thus, knew that their conduct would damage Plaskolite by lost sales." (Szlag Aff. at PP18-19, doc. 22-2).

Plaskolite does not contest the facts set out in the affidavit of Haibin Chen, GHI's owner, which states that GHI has no employees, agents, property, or operations in Ohio. (Doc. 18-2, P4). GHI is not registered or licensed to do business in Ohio, and does not transact business with Ohio companies in Ohio or elsewhere. (Id.) Rather, it deals with the Home Depot in Georgia, and ships its imported products out of warehouses in Atlanta and Los Angeles. (Id.) Most importantly, according to Mr. Chen's affidavit, none of GHI's plastic sheet or ceiling panel products are sold in the state [*10] of Ohio, through Home Depot or otherwise, "as it is part of the Midwest Region, a territory in which The Home Depot does not sell products of GHI. . . ." (Id. at P5).

In considering Defendants' jurisdictional motions, the Court has discretion to decide the issues on affidavits, to order limited discovery on the issue of jurisdiction, or to conduct an evidentiary hearing. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). No party has requested a hearing in this case, and the Court finds that the facts in the record are sufficiently developed to allow for a reasoned decision based upon the parties' affidavits. The Court views the facts in a light most favorable to Plaskolite, the nonmoving party.[HN11] In the face of a properly supported motion for dismissal, however, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts

showing that the court has jurisdiction. *Id; see also Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989); *Mich. Nat. Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989) (If the court chooses to decide the motion on the written submissions alone, it must consider the pleadings [*11] and affidavits in the light most favorable to the plaintiff.)

Plaintiff's affidavit does not set forth specific facts in support of jurisdiction. Mr. Szlag's belief that GHI was aware of Plaskolite's existence and location, and his "understanding that some of the plastic sheets sold by ZTE and Global Home to Home Depot were resold by Home Depot in Ohio" are not based on personal knowledge, and constitute inadmissable speculation. *See Kemper v. Saline Lectronics*, 348 F.Supp. 2d 897, 899 (N.D. Ohio 2004) (applying [HN12]the Rule 56(e) standard to affidavits in support of a motion to dismiss, requiring that they "shall be made on personal knowledge," and determining that "the Court will disregard averments of facts outside the affiants' personal knowledge"); *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978) (statements prefaced by "I believe" or those made upon "understanding" are properly subject to a motion to strike); *Carey v. Beans*, 500 F.Supp. 580, 583 (E.D. Pa. 1980).

[HN13]Where personal jurisdiction is challenged, the plaintiff has the burden of establishing that jurisdiction exists. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988). Plaintiff Plaskolite [*12] has not come forward with facts establishing that GHI has any connection whatsoever with the state of Ohio, and has not proved that jurisdiction is appropriate under Ohio's long-arm statute. Assuming for purposes of the motion to dismiss that Plaintiffs allegations of commercial bribery are true, and that GHI and Plaskolite are competitors, there are no facts indicating that GHI acted with knowledge that a competitor would be injured in Ohio. Rather, the admissible facts in evidence show that no GHI products were resold in Ohio.

Exercising personal jurisdiction over GHI would also offend due process considerations. [HN14]"[D]ue process requires [] that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

[HN15]This Court conducts a three-part test to determine whether personal jurisdiction is proper, asking: (1) whether the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence [*13] in the forum state; (2) whether the cause of action arose from the defendant's activities there; and (3) whether the acts of the defendant or consequence caused by the defendant had a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Smith v. Home Depot USA, Inc.*, 294 Fed. Appx. 186, 2008 U.S. App. LEXIS 19858 (6th Cir. Sept. 17, 2008). Here, there is no evidence of availment, purposeful or otherwise, because there are no facts suggesting any connection between GHI and Ohio. Again assuming that GHI is a competitor of an Ohio company, Plaintiff Plaskolite, there is no allegation that Plaintiff's antitrust claims arise out of activities GHI undertook in Ohio. Moreover, even if GHI's products were eventually resold in Ohio, this Circuit has adopted the "stream of commerce plus" theory, such that "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 111-113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987), followed by *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 478 (6th Cir. 2003).

Plaskolite [*14] contends that due process is satisfied because GHI "sold its product to Home Depot knowing that Home Depot would resell such product in Ohio." Plaskolite's sole source of this assertion is the affidavit of John Szlag, wherein he states: "I believe that both ZTE and Global Home knew that the plastic sheets they were selling to Home Depot would be sold in Ohio. . . .I believe that both ZTE and Global Home therefore conducted business in Ohio." (Szlag Aff., doc. 21-2, at P21). As set out above, affidavits must be based on "personal knowledge" and statements of "belief" will not be considered. Plaintiff has provided no facts showing that its antitrust claims arise out of GHI's contacts with Ohio; rather, the facts indicate that GHI has no connections with this state, and exercising personal jurisdiction over GHI would be unreasonable.

Plaintiff has not succeeded in asserting a prima facie case that GHI is subject to personal jurisdiction in Ohio. *See Smith*, 294 Fed. Appx. 186, 2008 U.S. App. LEXIS 19858, *7; *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Absent personal jurisdiction, venue is also not appropriate in this Court under 28 U.S.C. § 1391(c) for Plaintiff's claims against GHI.

It is [*15] clear from the foregoing analysis that GHI's contacts with the state of Ohio are not sufficient to establish venue under Section 12. GHI is not incorporated in Ohio, and therefore is not an "inhabitant" of the State. *See Automotive Refinishing*, 358 F.3d at 293 n.6. Plaintiff does not assert that GHI has a "presence" or "continuous local activities" in the district, such that it

could be considered "found" here. *Id.; Cumberland Truck Equip. Co.*, 401 F.Supp. 2d at 424. Accordingly, venue for Plaintiff's claims against GHI is lacking in this district.

### Venue for Claims against Defendant ZTE

For its claims against the alien corporation, ZTE, Plaintiff asserts that venue is proper under Section 12 of the Clayton Act and the general venue provision of 28 U.S.C. § 1391(d). The[HN16] general venue statute states: "An alien may be sued in any district." The statute therefore provides for venue to lie in any jurisdiction where service of process may be effected.

[HN17]Several circuits have held that foreign corporations may be served pursuant to Section 12's world-wide service of process provision without first satisfying Section 12's venue clause because the service and venue clauses are "independent." *Automotive Refinishing*, 358 F.3d at 297. [*16] The Third Circuit Court of Appeals further held that for purposes of personal jurisdiction, minimum contacts are judged based on an alien defendant's aggregate national contacts, not its local contacts. *Id.* Finally, the court found that, given the unique nature of the general alien venue statute, a plaintiff could establish venue pursuant to 28 U.S.C. § 1391(d), instead of relying solely upon Section 12's venue clause. *Id.* at 293, 296. *See Cumberland Truck Equip.* Co., 401 F. Supp. 2d at 419.

In *Go-Video*, the Ninth Circuit analyzed the interaction between the Clayton Act's venue and nationwide service of process provisions, and the general venue statute. The court found that [HN18]nationwide service of process under Section 12 is available to a plaintiff who establishes venue under 28 U.S.C. § 1391(d). 885 F.2d at 1412 (*citing Bucyrus-Erie*, 550 F.Supp. 1037 (S.D.N.Y. 1982)). This Court agrees.

Turning to ZTE, the Court finds that venue is proper over Plaintiff's claims under the general venue statute, [HN19]28 U.S.C. § 1391(d), authorizing an alien to be sued in any district. Once venue has been established, Section 12 of the Clayton Act authorizes worldwide service of process. ZTE was served in [*17] Ohio; the disputed circumstances of such service of process are not relevant, given the unlimited scope of permissible service of process under Section 12.

The Court next considers whether ZTE is subject to personal jurisdiction in this district. [HN20]Where a statute authorizes world-wide service, the exercise of personal jurisdiction over an alien corporation comports with due process so long as the corporation has sufficient minimum contacts with the United States at large. *Go-Video*, 885 F.2d at 1414-15. *See also Fitzsimmons v. Barton*, 589 F.2d 330, 333 n. 4 (7th Cir. 1979) ("service

beyond the bounds of the territorial United States . . . raises questions as to the contact of the defendant with the United States"); *Mariash v. Morrill*, 496 F.2d 1138, 1142-43 (2d Cir. 1974) (service of process under § 27 of Securities Exchange Act requires examination of defendant's contacts with United States); *Steinberg & Lyman v. Takacs*, 690 F.Supp. 263, 265-66 (S.D.N.Y. 1988) (same); *Amtrol, Inc. v. Vent-Rite Valve Corp.*, 646 F.Supp. 1168, 1171 (D.Mass. 1986) (where jurisdiction authorized by Clayton Act, and process served on alien corporation under Section 12, national contacts analysis appropriate); [*18] *First Federal Savings & Loan v. Oppenheim, Appel, Dixon & Co.*, 634 F. Supp. 1341, 1345 (S.D.N.Y. 1986); *Bucyrus-Erie*, 550 F.Supp. at 1043. See also Lilly. Jurisdiction Over Domestic and Alien Defendants, 69 Va.L.Rev. 85, 132 (1983) ("federal statutes conferring 'world-wide service of process' also permit a federal court to base its in personam jurisdiction upon the aggregate contacts [with the United States] of an alien defendant"). In an antitrust suit against an alien corporation, the Court finds that personal jurisdiction can be obtained in any district pursuant to the nationwide service provision under the Clayton Act, provided the corporation has adequate national contacts. *See Go-Video*, 885 F.2d at 1414.

ZTE concedes that it is subject to personal jurisdiction in Georgia, based on the fact that it regularly transacts business with GHI in Georgia. It therefore follows that ZTE has sufficient national contacts with the United States to be subject to personal jurisdiction in this district under the broad scope of permissible service provided for in the Clayton Act, and the resulting reach of personal jurisdiction.

### Motion to Transfer Venue

Defendants have moved, in the alternative to [*19] dismissal, for the Court to transfer this action to the Northern District of Georgia. [HN21]28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party bringing a motion to transfer venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404 bears the burden of proving that the transferee district is a more convenient forum for litigation of the action. *See Proffitt v. Abbott Labs.*, 2008 U.S. Dist. LEXIS 72893, 15-16 (E.D. Tenn. Sept. 23, 2008); *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002).

[HN22]A district court has broad discretion in deciding whether to grant or deny a motion to transfer pursuant to § 1404(a). *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). "In ruling on a motion to transfer under § 1404(a), a district court should consider the

2008 U.S. Dist. LEXIS 99395, *

private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests [*20] of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)).

[HN23]In ruling on a Section 1404(a) motion, the Court need not limit itself to the three statutory factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995); *Tieman v. Victaulic Co.*, 2007 U.S. Dist. LEXIS 7036 (S.D. Ohio Jan. 31, 2007). Rather, the Court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (*citing* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters at § 3847 (2d ed. 1986)).

[HN24]The private interests have included:

> Plaintiff's forum preference as manifested in the original choice, 1A Pt. 2 Moore's P 0.345[5], at 4363; the defendant's preference, 15 Wright. Miller & Cooper § 3848, at 385; whether the claim arose elsewhere, id. § 3848; the convenience of the parties as indicated by their relative physical and financial condition, id. § 3849, at 408; the convenience of the witnesses [*21] - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, id. § 3851, at 420-22; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), id. § 3853.

[HN25]*Jumara*, 55 F.3d at 879. Public interests have included:

> the enforceability of the judgment, 1A Pt. 2 Moore's P 0.345[5], at 4367; practical considerations that could make the trial easy, expeditious, or inexpensive, id.; the relative administrative difficulty in the two fora resulting from court congestion, id., at 4373; 15 Wright, Miller & Cooper § 3854; the local interest in deciding local controversies at home, 1A Pt. 2 Moore's P 0.345[5], at 4374; the public policies of the fora, see 15 Wright, Miller & Cooper § 3854; and the familiarity of the trial

judge with the applicable state law in diversity cases, id.

*Jumara*, 55 F.3d at 879-80.

Considering all relevant factors, Defendants have established that transferring this case to the Northern District of Georgia serves the convenience of the parties and witnesses, and is in the interests of justice. Whereas in this district, the issues of venue and personal jurisdiction [*22] are complex with regard to ZTE and lacking with regard to GHI [3], both Defendants agree that they are subject to the jurisdiction of the Georgia courts based on their contacts in that forum. Rather than dismissing GHI from this matter and proceeding in this district solely against ZTE, the interests of justice and judicial economy dictate that the entire case be transferred to Georgia, where the action might have been brought originally. *See Proffitt*, 2008 U.S. Dist. LEXIS 72893, *15 (consideration of the interest of justice includes judicial economy, and trying related litigation together). Further, GHI is a Georgia company, with no presence in Ohio. The transactions between ZTE and GHI took place in Georgia, which is where Plaintiff's claims arose. Most, if not all non-party witnesses, including key Home Depot employees, are located in Georgia, likely outside the subpoena power of this Court. Last, Plaskolite does business nationwide, and therefore will not be unduly inconvenienced by litigating in Georgia. Accordingly, the private factors favor transferring this matter to Georgia. Likewise, the public factors weigh in favor of transfer. The commercial bribery alleged occurred in [*23] Georgia, if at all, between or involving Georgia corporations and residents. Georgia's courts will have greater ability to enforce any judgment against the Defendants, both of which have a presence, do business, and are subject to personal jurisdiction in that forum.

> 3 [HN26]The Court may transfer an action even if it lacks personal jurisdiction over the defendant. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962); *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964).

Thus, the Court transfers this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). The Court does not address the additional arguments contained in Defendants' motions to dismiss, including failure to state a claim, lack of standing, and lack of proper service, but rather finds that the interests of judicial economy are best served by transferring the case.

**III.**

For the foregoing reasons, the Court finds that venue over certain of Plaintiff's claims is improper in this District, and in the interests of justice, transfers the entire case to the Northern District of Georgia. Defendants' motions to transfer venue are GRANTED; Defendants' motions to dismiss are DENIED as MOOT. (Docs. 18, 20).

**IT IS**  [*24] **SO ORDERED**.

12-9-2008

**DATE**

/s/ Edmund A. Sargus, Jr.

**EDMUND A. SARGUS, JR**.

**UNITED STATES DISTRICT JUDGE**

LEXSEE



Positive
As of: Apr 07, 2010

MARVIN AMES v. WHITMAN'S CHOCOLATES, a division of PET
INCORPORATED and JAY G. SHOEMAKER and WHITMAN CORPORATION

CIVIL ACTION NO. 91-3271

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

1991 U.S. Dist. LEXIS 18389; 57 Fair Empl. Prac. Cas. (BNA) 1301

December 30, 1991, Decided
December 30, 1991, Filed; December 31, 1991, Entered

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee brought this Age Discrimination in Employment Act (ADEA) case against defendants, the corporate employer, its president, and its parent corporation, pursuant to 29 U.S.C.S. § 621 et seq. This matter was before the court on the parent corporation's motion to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and the president's motion to dismiss for failure to state a claim or for summary judgment.

**OVERVIEW:** The court granted the parent corporation's motion to dismiss for lack of personal jurisdiction, holding: (1) the employee had the burden of establishing sufficient contacts with the forum state to confer either specific or general jurisdiction; (2) there was no basis for exercising specific jurisdiction because there was no evidence that the parent corporation approved the employee's discharge; (3) general jurisdiction could not be exercised over the parent corporation unless it was shown that the subsidiary was its alter ego or agent, its mere instrumentality, or that the two corporations functioned as one integrated enterprise; (4) the court need only consider inferences that necessarily followed from the evidence; (5) the evidence and necessary inferences did not meet either the alter ego, the mere instrumentality, or the integrated enterprise tests. The court denied the corporate president's motion to dismiss or for summary judgment, applying a four part test and holding that the exhaustion of administrative remedies requirement

did not bar the claim against him because he did not show that he was prejudiced by the fact that he was not named in the administrative complaint.

**OUTCOME:** The court granted the parent corporation's motion to dismiss, but denied the president's motion to dismiss or for summary judgment.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
[HN1]A district court may assert jurisdiction over a nonresident defendant, such as the parent corporation, to the extent allowable under the due process clause of the federal constitution and the law of the state in which the court sits.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
[HN2]Jurisdiction can exist under Pennsylvania's general personal jurisdiction statute if a defendant corporation

Case: 5:10-cv-00033-BYP Doc #: 28-3 Filed: 04/07/10 37 of 71. PageID #: 547

1991 U.S. Dist. LEXIS 18389, *; 57 Fair Empl. Prac. Cas. (BNA) 1301

carries on a continuous and systematic part of its general business within the Commonwealth and, thus, has maintained continuous and substantial forum affiliations. Alternately, specific jurisdiction exists under Pennsylvania's Long Arm Statute, the reach of which is coextensive with the due process clause of the United States Constitution, if the cause of action arises from activities of defendant within Pennsylvania. The defendant, however, must have had sufficient minimum contacts within the forum so that maintenance of the suit would not offend notions of fair play and substantial justice, and the defendant reasonably could have anticipated being haled into court there.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Challenges*
[HN3]Where a jurisdictional defense has been raised, the plaintiff bears the burden of establishing contacts with the forum state sufficient to confer specific or general jurisdiction. Evidence before the court bearing on this question must be considered in the light most favorable to the plaintiff. Plaintiff, however, must come forward with sworn affidavits or other competent evidence to establish a prima facie case of jurisdiction. Pleadings alone and mere allegations will not suffice.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
[HN4]A foreign corporation is not subject to a forum state's jurisdiction merely because it owns stock in a subsidiary doing business within the state. General jurisdiction does exist, however, when the parent corporation exercises such a degree of control that (1) the subsidiary is its alter ego or agent, (2) the subsidiary is its mere instrumentality, or (3) the corporations function as one integrated enterprise.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Challenges*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction*
[HN5]On a motion to dismiss for lack of personal jurisdiction, the competent evidence which a plaintiff proffers must be viewed in the light most favorable to him as the non-moving party. Further, despite the requirement that the evidence be viewed in the light most favorable to plaintiff, the court need accept only those inferences that reasonably and necessarily follow from the evidence.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Doing Business*
[HN6]The alter ego test allows a court to disregard a parent company's separate existence when the two companies are alter egos and such disregard will prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability of a crime. Where a parent company constitutes one hundred percent of the stockholders of the subsidiary, it is to be expected that there will be directors which are common to both boards of both. It is quite possible that those who occupy such positions might exercise some degree of control over the subsidiary. Nevertheless, as long as the corporations are separate entities, the subsidiary will not be deemed to be the "alter ego" of the parent, no matter how much control the parent exercises.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > Corporate Formalities*
*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Sham Corporations*
[HN7]Under the mere instrumentality test the parent corporation will be held liable if (1) it controls the subsidiary to such a degree that the subsidiary is its instrumentality, (2) it is perpetrating a wrong, e.g., violating a statute, through its subsidiary, and (3) an unjust loss would result if the parent is allowed to be shielded by its separate corporation. Whether entities function as an integrated enterprise, on the other hand, requires a court to assess the interrelations of the operations, the common management, centralized control of labor relations and common ownership or financial control existing between the parent and the subsidiary.

*Business & Corporate Law > Agency Relationships > Establishment > General Overview*
[HN8]An agency relationship requires the presence and exercise of a master's control. The requisite inquiry is whether some nexus exists between the parent corporation and the subsidiary (or subsubsidiary) to indicate that the latter is not independent, but rather totally under the control and dominion of the parent.

*Civil Rights Law > Protection of Disabled Persons > Americans With Disabilities Act > General Overview*

1991 U.S. Dist. LEXIS 18389, *; 57 Fair Empl. Prac. Cas. (BNA) 1301

*Labor & Employment Law > Discrimination > Age Discrimination > Exhaustion of Remedies*
[HN9]Like claimants under Title VII of the Civil Rights Act, claimants under the Age Discrimination in Employment Act must exhaust all federal and any and all existing state law administrative remedies.

*Labor & Employment Law > Discrimination > Age Discrimination > Exhaustion of Remedies*
[HN10]The four factors pertaining to administrative filings and complaints as fulfilling the exhaustion requirement, which were set forth in Title VII cases and have since been applied in Age Discrimination in employment Act cases, are these: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the complaint; (2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the proceedings; (3) whether the unnamed party's absence from the proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. This four prong test, however, is not a mechanical one. Instead, each factor should be evaluated in light of the statutory purposes and the interests of both parties. No one factor is determinative and balancing is required. Prongs (1) and (4) are closely related in that collectively they are aimed at ferreting out and assessing the reasons for failing to name an entity.

**COUNSEL:** [*1] RONALD H. SURKIN, [COR LD NTC], ROSE TREE CORPORATE CENTER, 1400 N. PROVIDENCE ROAD, STE. 301-N, MEDIA, PA 19063, USA

ROBERT G. HAAS, [COR LD NTC], BLANK, ROME, COMISKY, & MC CAULEY, 1200 FOUR PENN CENTER PLAZA, PHILA, PA 19103, USA

ALLAN M. DABROW, [COR LD NTC], MESIROV, GELMAN, JAFFE, CRAMER & JAMIESON, 1735 MARKET STREET, PHILADELPHIA, PA 19103-7598, USA

MITCHELL FEIGENBAUM, [COR LD NTC], MESIROV, GELMAN, JAFFE, CRAMER, & JAMIESON, 1735 MARKET ST., PHILA, PA 19103, USA

**JUDGES:** Bartle

**OPINION BY:** BY THE COURT; HARVEY BARTLE

**OPINION**

*MEMORANDUM AND ORDER*

BARTLE, J. December 30th, 1991

This is an Age Discrimination in Employment Act ("ADEA") case filed pursuant to 29 U.S.C. § 621 *et seq.* The action was brought by Marvin Ames ("Ames") against (1) Whitman's Chocolates ("the chocolate company"), a division of Pet, Incorporated, which conducts a candy and chocolate manufacturing business in Pennsylvania; (2) Jay G. Shoemaker ("Shoemaker"), the former president of the chocolate company; and (3) Whitman Corporation ("the parent corporation"), the parent corporation of Pet with a principal place of business in Chicago, Illinois.

Plaintiff Ames contends that his employment as Vice President of Manufacturing [*2] and Technical Services for the chocolate company was terminated by defendants in violation of the ADEA. (Complaint at para. 5,9,12,13,14.) The parent corporation has moved for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure claiming lack of jurisdiction over the person. Shoemaker has moved for dismissal under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, claiming lack of subject matter jurisdiction and/or failure to state a cause of action because of Ames' failure to exhaust administrative remedies. [1] For the reasons set forth below, the motion of the parent corporation will be granted and the motions of Shoemaker will be denied. Additionally, the request of Ames for attorneys' fees and costs incurred in responding to the motions filed by Shoemaker will be denied.

> 1  Rule 12(b)(1) is concerned with "lack of jurisdiction over the subject matter," while Rule 12(b)(6) involves a "Failure to state a claim upon which relief can be granted." A summary judgment shall issue under Rule 56 if it is established "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[*3]  I. *The Motion of the Parent Corporation to Dismiss for Lack of Jurisdiction Over the Person.*

[HN1]A district court may assert jurisdiction over a nonresident defendant, such as the parent corporation, to the extent allowable under the due process clause of the federal constitution and the law of the state in which the

court sits. *See* Fed. R. Civ. P. 4(e); *International Shoe Co. v. Washington,* 326 U.S. 310, 316-317, 66 S.Ct. 154, 158 (1940); *North Penn Gas v. Corning Natural Gas,* 897 F.2d 687, 689 (3d Cir. 1990); *Provident National Bank v. California Savings and Loan Association,* 819 F.2d 434 (3d Cir. 1987); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir. 1984).

The uncontroverted facts establish that the parent corporation is not incorporated under the laws of the Commonwealth of Pennsylvania, does not qualify as a foreign corporation under the laws of the Commonwealth, and has not consented to be sued within the Commonwealth. [HN2]Jurisdiction, however, can exist under Pennsylvania's general personal jurisdiction statute if the corporation carries on "a continuous [*4] and systematic part of its general business within [the] Commonwealth" and, thus, has maintained continuous and substantial forum affiliations. *See* 42 Pa. Cons. Stat. Ann. § 5301; *Reliance Steel Products v. Watson, Ess. Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir. 1982); *North Penn Gas v. Corning Natural Gas, supra,* n.2 at 690.

Alternately, specific jurisdiction exists under Pennsylvania's Long Arm Statute, the reach of which is coextensive with the due process clause of the United States Constitution, if the cause of action arises from activities of defendant within Pennsylvania. The defendant, however, must have had sufficient minimum contacts within the forum so that maintenance of the suit would not offend notions of fair play and substantial justice, and the defendant reasonably could have anticipated being haled into court there. *See* 42 Pa. Cons. Stat. Ann. § 5322(b); *International Shoe v. Washington, supra* at 158; *North Penn Gas v. Corning Natural Gas, supra* at 690; *Provident National Bank v. California Federal Savings and Loan Association, supra* at 436-437; *Time Share Vacation Club v. Atlantic Resorts,* [*5] *Limited, supra* at 63.

Ames seeks to invoke specific jurisdiction on the ground that his termination was authorized and approved in advance by the parent corporation. (Complaint at para. 14; Memorandum of Law in Opposition to Motion to Dismiss at 2.) He further alleges the existence of general jurisdiction on the ground that facts exist "tending to show substantial involvement by Whitman Corp. in the operations of Pet and Whitman's [Chocolates]." (Memorandum of Law in Opposition at 3.)

[HN3]Where, as here, a jurisdictional defense has been raised, plaintiff bears the burden of establishing contacts with the forum state sufficient to confer specific or general jurisdiction. Evidence before the court bearing on this question must be considered in the light most favorable to the plaintiff. Plaintiff, however, must come forward with sworn affidavits or other competent evidence to establish a *prima facie* case of jurisdiction.

Pleadings alone and mere allegations will not suffice. *See North Penn Gas v. Corning Natural Gas, supra* at 689; *Stranahan Gear Company v. N L Industries,* 800 F.2d 53, 58 (3d Cir. 1986); *Time Share Vacation Club v. Atlantic Resorts, Ltd, supra* at 63, 66; [*6] *LaRose v. Sponco, Manufacturing, Inc.,* 712 F. Supp. 455, 458 (D.N.J. 1989); *Boehringer, Inc. v. Murawski Corporation,* 699 F. Supp. 59, 61 (E.D. Pa. 1988).

Plaintiff Ames contends that this Court has jurisdiction over the parent corporation because of its putative advance approval and authorization of his termination. Plaintiff, however, has failed to establish any such approval or authorization. The parent corporation has provided affidavits from William Moore, Vice President, Secretary and General Counsel of the parent corporation; defendant Jay G. Shoemaker, former President of the chocolate company; John C. Elbin, Vice President of Pet; and Miles Marsh, who was both Acting President of Pet and President of the parent corporation at the pertinent time. These affidavits establish that plaintiff's termination was not approved or authorized in advance by anyone in the parent corporation, including Mr. Marsh. (Moore affidavit at para. 10; Shoemaker affidavit at para. 2; Elbin affidavit at para. 4; Marsh affidavit at paras. 1, 2.)

Plaintiff alleges in response that he

is already in possession of evidence tending to contradict the assertions in [*7] the affidavit of William B. Moore, a Whitman Corp. officer, to the effect that Whitman Corp. was not involved in the day-to-day affairs of Pet, including matters relating to personnel.

(Memorandum of Law in Opposition at 2.) Plaintiff never specifies the nature of such evidence. Such an unsupported allegation is legally insufficient to sustain his burden of proof. Nor does he meet his burden by his additional sworn statement that "on information and belief, Marsh was aware of, authorized and ratified Shoemaker's decision to terminate me." (Ames affidavit at para. 7). This plainly is inadmissible hearsay evidence under the Federal Rules of Evidence which apply to this civil proceeding. *See* Fed. R. Evid. 1101.

In addition, plaintiff Ames asserts that he

has already propounded interrogatories and document requests directed in part to fleshing out these facts [relating to his termination], to which Whitman Corp. has refused to respond pending disposition of its motion.

(Memorandum of Law in Opposition at 2.) The interrogatories are not of record and plaintiff has not moved, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, for an order compelling discovery. Further, [*8] since Ames has not contradicted the parent corporation's

affidavit evidence, this Court is persuaded that "it would be inappropriate . . . to allow plaintiff to conduct a fishing expedition to construct a basis for jurisdiction." *Poe v. Babcock International, PLC,* 662 F. Supp. 4 (M.D. Pa. 1985).

Ames' alternate assertion of general jurisdiction is predicated upon his putative awareness "of significant facts tending to show substantial involvement by Whitman Corp. in the operations of Pet and Whitman's [chocolates]." (Memorandum of Law in Opposition at 3.) The law applicable to specific factual allegations of such involvement is well settled. [HN4]A foreign corporation is not subject to a forum state's jurisdiction merely because it owns stock in a subsidiary doing business within the state. General jurisdiction does exist, however, when the parent corporation exercises such a degree of control that (1) the subsidiary is its alter ego or agent, (2) the subsidiary is its mere instrumentality, or (3) the corporations function as one integrated enterprise. *See Lucas v. Gulf and Western Industries, Inc.,* 666 F.2d 800 (3d Cir. 1981); *Beckwith v. International Mill Services,* 617 F. Supp. 187 (E.D. Pa. 1985); [*9] *Kamens v. Summit Stainless, Inc.,* 586 F. Supp. 324 (E.D. Pa. 1984).

The specifics asserted by Ames to support his claim of the parent corporation's "substantial involvement" in the affairs of the chocolate company are these:

(1) The parent corporation authorized Pet to commission a study into the chocolate company's possible relocation and had officials attend meetings to discuss the relocation plan. Ames "understood" that the "final call" on relocation lay with the parent corporation. (Ames affidavit at para. 3.)

(2) Six (6) months before Ames' termination parent corporation officials announced, among other things, that the parent corporation "was 'undergoing a transformation from a loosely-held conglomerate to a more focused operating company'" and that additional reorganization might be considered where the parent corporation could "'gain greater efficiencies as an operating company.'" (Ames affidavit at para. 4; Exhibit 1 at 3, 7.)

(3) Two (2) months before Ames' termination the parent corporation announced a plan to discard "'its holding company structure for a more cost effective operating company structure'" and said that that program "would continue [*10] to move forward with 'cost reductions and reorganizations for greater efficiencies.'" (Ames affidavit at para. 5, Exhibit 1 at 11.)

(4) During the spring before Ames' termination the parent corporation commissioned a firm to study restructuring "the entire company." Based on conversations with Pet and chocolate company officials Ames "understood that [the parent corporation] had assumed a more active role in the day-to-day operations of the subsidiary." (Ames affidavit para. 6.)

(5) During the summer of 1990 there were shared common directors between Pet and the parent corporation when Miles Marsh, President and Chief Operating Officer ("COO") for the parent corporation, also served as President and Chief Executive Officer ("CEO") for Pet after Pet President and CEO J.Robert Cooper resigned because, it was reported in a trade magazine, of "'apparently agreeing with [the parent corporation's] management on the need for a change at Pet.'" (Ames affidavit at para. 7; Exhibit 3.)

(6) A senior human resources officer from the parent corporation accompanied a search firm representative to the chocolate company to prepare to interview candidates for the presidency of the company -- [*11] the position ultimately filled by Shoemaker. "'This suggests that [the parent corporation] was directly involved in hiring Shoemaker.'" (Ames affidavit at para. 8.)

(7) When he assumed the presidency of the chocolate company Shoemaker stated that revenue and profit goals and timetables had been set by Miles Marsh, the parent corporation's president. (Ames affidavit at para. 9.)

(8) Two (2) months after Ames' termination the corporate chairman and CEO announced that Miles Marsh had been given "'direct management responsibility for Pet'" and that the parent corporation "had moved to reduce operational costs through the elimination of a thousand jobs in its subsidiaries through 'retirement, attrition and severance.'" (Ames affidavit at para. 10; Exhibit 4.)

(9) During Ames' tenure as vice president for the chocolate company every capital expenditure over a certain dollar amount had to be approved by the parent corporation. (Ames affidavit at para. 11.)

(10) During Ames' employment he and other employees participated in a parent corporation stock ownership plan which was totally separate from Pet and the chocolate company. (Ames affidavit at para. 12.)

(11) During Ames' employment [*12] he and other key employees received stock options from the parent corporation. (Ames affidavit at para. 13.)

[HN5]The competent evidence which plaintiff has proffered must be viewed in the light most favorable to him as the non-moving party, *see Time Share Vacation Club v. Atlantic Resorts, supra* at 63, 66; *LaRose v. Sponco, supra* at 458. The evidence presented by the parent corporation, however, is relevant to the extent that it supplements -- rather than contradicts -- the plaintiff's competent evidence. Thus, the Court may properly also consider the parent corporation's evidence (1) that the

chocolate company was established before both its acquisition by Pet and Pet's acquisition by the parent corporation (Motion to Dismiss at paras. 16-20, Moore affidavit at paras. 1-4); (2) that only capital expenditures of a million dollars or more required corporate approval (Capital Appropriation Approval Policy of the parent corporation); and (3) that the senior human resources officer from the parent corporation who visited the chocolate company with the executive recruiter did so solely to provide the recruiter the opportunity to familiarize himself [*13] with the business and the scope of the company president's responsibilities (Wright affidavit at para. 3).

Further, despite the requirement that the evidence be viewed in the light most favorable to plaintiff, the Court need accept only those inferences that reasonably and necessarily follow from the evidence. Accordingly, since other inferences are equally likely, the Court declines to conclude that the parent corporation was "'directly involved in the hiring of Shoemaker.'" The Court also need not consider mere "plans" which have never been shown to have come to fruition at all, much less during the relevant time period. Neither is it bound by Ames' "understandings" based on non-specified conversations with unnamed Pet and chocolate company officials.

Thus narrowed, the competent evidence before the Court to be considered in deciding whether an alter ego, mere instrumentality or integrated enterprise test has been met, or whether the chocolate company served as an agent of the parent corporation, is as follows:

(1) the parent corporation authorized Pet to consider relocating the chocolate company and may have retained the right finally to decide whether relocation would occur;

[*14] (2) plans to change the parent corporation's role were announced and a restructuring study was commissioned;

(3) there was some shared common directorship during the summer of 1990 when Miles Marsh served as President and COO for the parent corporation and President and CEO for Pet;

(4) Marsh set goals and timetables for the chocolate company when Shoemaker assumed its presidency;

(5) the parent corporation retained the right to approve all capital expenditures of a million dollars or more; and

(6) various chocolate company employees participated in a parent corporation stock ownership plan and received parent corporation stock options.

It is this Court's conclusion that the foregoing evidence does not met either the alter ego, the mere instru-

mentality or the integrated enterprise test. See *Lucas v. Gulf*, supra; *Beckwith v. International Mill Services*, supra.

[HN6]The alter ego test allows a court to disregard a parent company's separate existence when the two companies are alter egos and "such disregard will 'prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone [*15] from liability of a crime.'" *Kamens v. Summit Stainless, Inc.*, supra 327 (quoting *Publicker Industries v. Roman Ceramics*, 603 F.2d 1065, 1069 (3d Cir. 1979)).

Where a parent company constitutes one hundred percent of the stockholders of the subsidiary, it is to be expected that there will be directors which are common to both boards of both. It is quite possible that those who occupy such positions might exercise some degree of control over the subsidiary. Nevertheless, as long as the corporations are separate entities, the subsidiary will not be deemed to be the "alter ego" of the parent, no matter how much control the parent exercises.

*Poe v. Babcock International*, supra at 6. *See also Berkowitz v. Allied Stores of Penn-Ohio, Inc.*, 541 F. Supp. 1209, 1214 (E.D. Pa. 1982). The evidence before this Court does not meet the alter ego test.

In addition, plaintiff Ames has not established that the chocolate company is a mere instrumentality of the parent corporation or that these entities function as an integrated enterprise. [HN7]Under the mere instrumentality test

the parent corporation will be [*16] held liable if (1) it controls the subsidiary to such a degree that the subsidiary is its instrumentality, (2) it is perpetrating a wrong, e.g., violating a statute, through its subsidiary, and (3) an unjust loss would result if the parent is allowed to be shielded by its separate corporation.

*Kamens v. Summit Stainless, Inc.*, supra at 327. Whether entities function as an integrated enterprise, on the other hand, requires a court to assess "the interrelations of the operations, the common management, centralized control of labor relations and common ownership or financial control existing between the parent and the subsidiary." *Beckwith v. International Mill Services*, supra at 189.

Applying these tests the *Beckwith* court, supra at 189 and 189-190, found that plaintiff had not met its jurisdictional burden where the executive vice president of the parent corporation was also the chairman of the board of the subsidiary, and where the subsidiary had the authority to develop its own budget, although the parent corporation retained the authority to approve or reject it. The

facts in the case before the court are even more compelling in favor [*17] of a conclusion of lack of personal jurisdiction over the parent corporation. Here, there is substantially less control than was exercised in *Beckwith*. Further, the chocolate company was not created by the parent corporation for "tax or finance purposes to carry on their business." *Poe v. Babcock International, PLC,* supra at 7. Unlike the situation considered in *Berkowitz v. Allied Stores of Penn-Ohio, Inc.,* supra at 1213-1214, the parent corporation here did not directly supervise and control the major decisions concerning the operations of the chocolate company.

Neither does the evidence establish an agency relationship between the parent corporation and the chocolate company so that the parent corporation is an "employer," as that term is defined in § 630(b) of the ADEA.

> 2  § 630(b) defines an "employer" for purposes of the ADEA as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . . The term also means (1) any agent of such a person . . ."

[*18]  [HN8]An agency relationship requires the presence and exercise of a master's control. The requisite inquiry is whether some nexus exists between the parent corporation and the subsidiary (or subsubsidiary) to indicate that the latter is not independent, "but rather *totally* under the control and dominion" of the parent. *Beckwith v. International Mill Services,* supra at 189 (emphasis added). *See also Odriozola v. Superior Cosmetic Distributors, Inc.,* 531 F. Supp. 1070, 1074 (D.P.R. 1982). Unlike the situation considered in *Bumpers v. International Mill Services, Inc.,* 595 F. Supp. 166, 170 (E.D. Pa. 1984), where there existed a factual issue as to whether the parent company ordered the termination of older employees receiving high salaries, the evidence does not establish such a relationship in this case.

The parent corporation's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure will be granted.

II. *The Motion of Shoemaker for Dismissal or for Summary Judgment Because of the Failure of Ames to Exhaust Administrative Remedies.*

[HN9]Like claimants under Title VII of [*19] the Civil Rights Act, claimants under the ADEA must exhaust all federal and any and all existing state law administrative remedies. *See* 42 U.C.S. § 2000(e)-5(f)(1); 29 U.S.C. § 626(d); 29 U.S.C. § 633(b); *Borecki v. Eastern International Management Corporation,* 694 F. Supp.

47, 53 (D.N.J. 1988); *Bumpers v. International Mill Services, Inc.,* supra at 168.

In this case, Ames filed charges with the Pennsylvania Human Relations Commission ("PHRC"), in accordance with 29 U.S.C. § 626(d), after his employment was terminated on August 21, 1990 by Shoemaker who was then president of the chocolate company. *See also* 29 U.S.C. § 633(a) and 42 Pa. Cons. Stat. Ann. § 957. In that filing Ames named only the chocolate company and the parent corporation. The failure to name Shoemaker is the basis for the pending motion to dismiss and/or motion for summary judgment.

To support his motions Shoemaker alleges

(1) that plaintiff Ames was represented by experienced labor counsel at all stages of the proceedings, including the filing of the administrative complaint (Motion to Dismiss at para. 9);

(2) that Ames and his counsel were aware of Shoemaker's [*20] involvement in Ames' termination before the filing of the administrative complaint (Motion to Dismiss at para. 14; Complaint at para. 12);

(3) that Shoemaker did not participate in the administrative hearings except in his capacity as president of the chocolate company (Motion to Dismiss at para. 12; Shoemaker affidavit at para. 8);

(4) that Shoemaker did not receive any indication that he would be charged individually (Motion to Dismiss at para. 12; Shoemaker affidavit at para. 8);

(5) that if Shoemaker had been personally named as a defendant "he may have retained personal counsel at the initiation of this Complaint at the administrative level" (Motion to Dismiss at para. 16; Shoemaker affidavit at para. 10); and

(6) that if Shoemaker had been aware of the potential for personal liability "he may have pursued an early negotiated settlement of this matter, as it related to him personally, in conjunction with his participation in the fact-finding conference." (Motion to Dismiss at para. 17; Shoemaker affidavit at para. 11.)

Ames does not dispute most of the foregoing facts stated by Shoemaker. He argues in response, however, than Shoemaker has failed to allege "any actual, [*21] as opposed to speculative, prejudice to his interests by not being named as Respondent in the charge." (Memorandum of Law in Opposition at 13.) He further notes that Shoemaker attended the PHRC fact-finding conference with two (2) attorneys -- one of whom is presently representing him and one of whom is a member of Pet's in-house legal staff -- and that during the conference he consulted with counsel on several occasions when asked questions. (Ames affidavit at para. 5.) *(See also* Shoe-

maker affidavit at para. 8 acknowledging participation in the PHRC fact-finding proceeding.)

Plaintiff Ames has presented corroborated and uncontradicted evidence, supported by affidavit and a PHRC memoranda, which establishes that Shoemaker's name was on the complaint originally prepared for filing with the PHRC but that his name was removed upon the advise of a PHRC investigator who said that the filing would otherwise be rejected by the PHRC and by the EEOC. (Ames affidavit at para. 4; Exhibit 2.) He also has provided a letter which was transmitted to Shoemaker's counsel before the now pending motions were filed. It explained the reason for Shoemaker's non-inclusion in the PHRC filing and offered [*22] to provide supporting documentation (Exhibit 4).

The test which this Court must apply, in determining whether Shoemaker's exclusion from the PHRC complaint warrants his dismissal from this court action, was articulated by the Third Circuit in *Glus v. G.C. Murphy Company,* 562 F.2d 880 (3d Cir. 1977). [HN10]The four factors pertaining to such administrative filings and complaints which were set forth in that Title VII case and have since been applied in ADEA cases, are these:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the . . . complaint;

2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the . . . proceedings;

3) whether its [the unnamed party's] absence from the . . . proceedings resulted in actual prejudice to the interests of the unnamed party; and

4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named [*23] party.

*Glus v. C.G. Murphy Company,* supra at 888. *See also Borecki v. Eastern International Management Corporation,* supra at 53. This four prong test, however, "is not a mechanical one. Instead, each factor should be evaluated in light of the statutory purposes of Title VII and the interests of both parties." *Glus v. G.C. Murphy Company,* 629 F.2d 248, 251 (3d Cir. 1980), *vacated on other grounds Retail, Wholesale & Dept. Store Union v. G.C. Murphy Company,* 451 U.S. 935, 101 S.Ct. 2013 (1981). No one factor is determinative and balancing is required. *See Borecki v. Eastern International management Corporation,* supra at 55.

Prongs (1) and (4) of the *Glus* test are closely related in that collectively they "are aimed at ferreting out and assessing the reasons for failing to name an entity." *Kouri v. Todd,* 743 F. Supp. 448, 451 (E.D. Va. 1990). In this case the corroborated and uncontradicted evidence establishes that Shoemaker was deleted as a defendant in the PHRC complaint upon the advise of a PHRC employee. Shoemaker's involvement in the relevant events, however, [*24] was plainly specified (PHRC Complaint at para. 3H,I), and those specifications were clearly sufficient to put both Shoemaker and the state administrative agency on not ice as to Shoemaker's alleged role. *Compare Borecki v. International Corporation,* supra at 54. Indeed, Shoemaker "received every indication that [his] conduct was being formally reviewed by the PHRC." *Kinnally v. Bell of Pennsylvania,* 748 F. Supp. 1136, 1140 (E.D. Pa. 1990). *See also Sandom v. Travelers Mortgage Services, Inc.,* 752 F. Supp. 1240, 1249 (D.N.J. 1990); *Acampora v. Boise Cascade Corporation,* 635 F. Supp. 66, 71 (D.N.J. 1986).

Prong (3) of the *Glus* test -- pertaining to the similarity of interests of named and unnamed parties -- also inures in favor of denying Shoemaker's motions. The allegedly discriminatory actions of Shoemaker occurred while he was acting within the scope of his employment with the result that "his interests could be adequately represented by his employer." *Borecki v. Eastern International Management Corporation,* supra at 54. In fact, it is reasonable to expect that Shoemaker, by [*25] virtue of his position as president of the chocolate company, could exercise authority over any litigation involving the company. *Compare Kouri v. Todd,* supra at 451. The law in this circuit is settled that the "court recognizes an exception when the unnamed party has received notice and when there is a shared commonality of interest with the named party." *Schafer v. Board of Public Education,* 903 F.2d 243, 251 (3d Cir. 1990).

The final *Glus* prong to be considered -- pertaining to whether an unnamed party's absence from administrative proceedings resulted in actual prejudice to his interests -- also is not supportive of Shoemaker's position. The uncontradicted evidence establishes that Shoemaker was in fact present at the PHRC proceeding. Further, the prejudice which he asks this Court to find -- based on his assertions that he might have retained personal counsel and sought an early settlement individually - is both speculative and unpersuasive. This is not a case in which Shoemaker faced possible exposure for legal fees and was precluded from attending the PHRC fact-finding hearing because he was not apprised in advance of the proceeding. [*26] *Compare Duva v. Bridgeport Textron,* 632 F. Supp. 880, 883 (E.D. Pa. 1985). Neither was he deprived of the opportunity to participate. in the hearing. *See Kouri v. Todd,* supra at 452. Under the balancing

test of *Glus,* which this Court must apply, Shoemaker is not entitled to either dismissal or to a summary judgment, and his motions under Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure will be denied.

III. *The motion of Ames for Attorneys' Fees and Costs Incurred in Responding to the Motion Filed by Shoemaker.*

Ames has moved for sanctions under Rule 11 of the Federal Rules of Civil Procedure, in the form of attorneys' fees and costs, claiming that a reasonable investigation of the facts, and a competent level of legal research, would have led counsel for Shoemaker to conclude that there was no legal basis for his motions filed under Rules 12 and 56 of the Federal Rules of Civil Procedure.

Insofar as counsel for Shoemaker was notified of Shoemaker's deletion as a defendant in the PHRC action based on the advice of a PHRC investigator *(see* Exhibit 4), this fact certainly could have been noted and discussed in [*27] his Rule 12 and Rule 56 motions. Neither the exclusion of a discussion about this deletion nor the applicable law, however, establishes a bad faith filing which would warrant the imposition of attorneys' fees and costs. *See, e.g., Duva v. Bridgeport Textron, supra* at

883. This Court will not assess fees and costs against defendant Shoemaker.

*ORDER*

AND NOW, this 30th day of December, 1991, for the reasons set forth in the accompanying Memorandum, IT IS HEREBY ORDERED that

(1) the motion to dismiss, for lack of personal jurisdiction, filed by defendant Whitman Corporation under Rule 12(b)(2) of the Federal Rules of Civil Procedure is GRANTED;

(2) the motion to dismiss and/or motion for summary judgment, for lack of subject matter jurisdiction and/or failure to state a cause of action, filed by defendant Jay G. Shoemaker under Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure is DENIED; and

(3) the motion for attorneys' fees and costs filed by plaintiff Marvin Ames under Rule 11 of the Federal Rules of Civil Procedure is DENIED.

BY THE COURT:

Harvey Bartle

J.

LEXSEE



Cited
As of: Apr 07, 2010

TUDOR CHIRILA, Plaintiff-Appellant, v. JOSEPH CONFORTE, et al., Defendants, and TIMOTHY CRIPPS, et al., Defendants-Appellees.

No. 00-16878

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

47 Fed. Appx. 838; 2002 U.S. App. LEXIS 20382

March 11, 2002 **, Submitted, San Francisco, California

** This panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

September 20, 2002, Filed

**NOTICE:** [**1] RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Nevada. D.C. No. CV-98-00449-ECR(PHA). Edward C. Reed, District Judge, Presiding.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a case alleging various claims arising from his termination, plaintiff employee appealed the United States District Court for the District of Nevada's dismissal of his second amended complaint for lack of personal jurisdiction over defendants, who were all subjects of the United Kingdom (the English defendants). The employee argued that the district court had personal jurisdiction, and had abused its discretion in denying leave to amend.

**OVERVIEW:** The employee failed to make out a prima facie case that the district court could exercise personal jurisdiction over the English defendants. The employee alleged that two other defendants engaged in tortious acts with the knowledge and consent of the English defendants. However, the district court correctly held that knowledge and consent-passive states of mind-did not constitute intentional acts directed at the forum state. Further, the court found that the employee's bare allegation English defendants conspired to terminate his employment was not enough to establish personal jurisdiction. Because the employee had failed to show that the English defendants made an appearance in district court and had otherwise failed to make out a prima facie case that the district court could exercise personal jurisdiction over the English defendants, there was no error in dismissing the second amended complaint for lack of personal jurisdiction. Finally, the district court did not abuse its discretion in denying the employee leave to amend his second amended complaint.

**OUTCOME:** The judgment of the district court was affirmed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*

[HN1]Appellate courts review de novo whether a plaintiff has made a prima facie showing of jurisdictional facts.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Full Faith & Credit > General Overview***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata***
[HN2]Whether claim preclusion bars litigation of personal jurisdiction is governed by the law of the forum.

***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata***
[HN3]In Nevada, res judicata applies when there is identity of the parties and of the issues and when the issue has been litigated on the merits.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
***Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss***
[HN4]Under Fed. R. Civ. P. 12(h)(1), the failure to raise the issue of personal jurisdiction in the first responsive pleading constitutes a waiver of that issue.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
***Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Waiver & Preservation***
[HN5]Fed. R. Civ. P. 12(g) states that a moving party that fails to include an available defense, such as lack of personal jurisdiction, may not make a subsequent motion based on the same defense except as provided in Fed. R. Civ. P. 12(h)(2).

***Civil Procedure > Parties > Joinder > Misjoinder***
[HN6]An attempt to join a third party in a motion, which is made without the consent of the third party or of the third party's attorney does not constitute a joinder.

***Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview***

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview***
[HN7]Since Nevada's long-arm statute extends to the outer reaches of the Due Process Clause, a Nevada court may exercise personal jurisdiction over a defendant unless the exercise would violate due process. Nev. Rev. Stat. 14.065(1) (2002). As a constitutional matter, a court may exercise personal jurisdiction over a foreign defendant as a matter of general jurisdiction or as a matter of specific jurisdiction (jurisdiction as to specific acts or transactions).

***Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Minimum Contacts***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview***
[HN8]To demonstrate specific jurisdiction under the effects test, the plaintiff must show that: (1) the defendants purposefully availed themselves of the benefits and protections of the laws of the forum state, (2) the plaintiff's claims arise out of the defendants' forum state-related activities and (3) the exercise of jurisdiction would be reasonable. To meet the purposeful availment requirement in a tort case, the plaintiff must allege an intentional action aimed at the forum state that causes harm that the defendants should have anticipated would be suffered in the forum state.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Consent***
***Criminal Law & Procedure > Criminal Offenses > Inchoate Crimes > Conspiracy > Elements***
[HN9]For purposes of personal jurisdiction, knowledge and consent-passive states of mind-do not constitute intentional acts directed at the forum state.

***Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
[HN10]The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough to establish personal jurisdiction.

**COUNSEL:** TUDOR CHIRILA, Plaintiff-Appellant, Pro se, Reno, NV.

For TIMOTHY CRIPPS, MICHAEL MACINNES, MOORE STEPHENS, JOHN PICKLES, Defendants-Appellees: Eugene J. Wait, Jr., Esq., Reno, NV.

For TIMOTHY CRIPPS, MICHAEL MACINNES, MOORE STEPHENS, JOHN PICKLES, Defendants-Appellees: Martin K. Deniston, Esq., WILSON, ELSER, MOSKOWITZ & DICKER, Los Angeles, CA.

**JUDGES:** Before: HUG, CUDAHY *** and TASHIMA, Circuit Judges.

*** The Honorable Richard D. Cudahy, Senior Circuit Judge of the United States Court of Appeals for Seventh Circuit, sitting by designation.

**OPINION**

[*840] MEMORANDUM *

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

[**2] Before: HUG, CUDAHY *** and TASHIMA, Circuit Judges.

*** The Honorable Richard D. Cudahy, Senior Circuit Judge of the United States Court of Appeals for Seventh Circuit, sitting by designation.

Tudor Chirila appeals the district court's dismissal of his second amended complaint for lack of personal jurisdiction over the defendants. The defendants here (the English defendants) are all subjects of the United Kingdom. Chirila argues that the district court had personal jurisdiction based on the "effects" test. Chirila additionally contends that the district court abused its discretion in denying him leave to amend his complaint. We affirm.

I.

This court has jurisdiction under 28 U.S.C. § 1291. [HN1]We review de novo whether Chirila has made a prima facie showing of jurisdictional facts. *See Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995) (holding that a plaintiff's prima facie showing of jurisdictional facts is reviewed de novo).

II.

This case arises out of the [**3] termination of Chirila from his position as President and sole director of A.G.E. Enterprises, Inc., and A.G.E. Corporation (collec-

tively AGE). Interestingly enough, AGE owns and operates the Mustang Ranch, a brothel -- legal in Nevada -- located in Storey County, Nevada. On August 7, 1998, Chirila filed a complaint alleging various state law claims arising from his termination against AGE, the English defendants and Joseph Conforte and Eduardo Neves, two employees of AGE, who helped manage the Mustang Ranch. Chirila then amended the complaint under Rule 15(a) of the Federal Rules of Civil Procedure, which, of course, permits amendment without leave of the court. *See* Fed. R. Civ. P. 15(a). This first amended complaint added federal RICO claims against the same defendants. AGE then filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim. In that motion, AGE's counsel wrote that the English defendants were at the same time making a "special appearance" to contest the sufficiency of service under Rules 12(b)(4) and 12(b)(5). However, no memorandum of points and authorities was submitted on behalf of the English defendants.

On September 24, 1999, the district court [**4] entered an order granting AGE's motion to dismiss as it related to the RICO claims. The court denied the motion to dismiss as it related to the sufficiency of service under Rules 12(b)(4) and 12(b)(5) because those issues had not been briefed. The district court allowed Chirila twenty days to file a second amended complaint to [*841] cure the deficiencies noted by the court, namely the failure to allege that his damages were proximately caused by the RICO predicate acts.

On October 5, Chirila filed his second amended complaint, which set forth various state law claims against the English defendants and against Conforte and Neves. AGE was dropped as a defendant at this stage. Chirila also filed an action along similar lines in state court.

On October 27, Chirila filed a notice of intent to enter in federal court a default judgment against the English defendants. Chirila asserted that the English defendants had made an appearance when they "joined" in AGE's motion to dismiss. Thereupon, the district court issued an order making clear that it had not ruled that the English defendants had made an appearance in the case. In November, the English defendants filed a motion under Rule 12(b)(2) [**5] to dismiss the second amended complaint for lack of personal jurisdiction. The district court granted that motion in August 2000 and Chirila appealed.

While this federal appeal was pending, the English defendants filed a motion to dismiss Chirila's state action for lack of personal jurisdiction. In January 2001, the state court granted this motion to dismiss, which was unopposed. Chirila then sought to set aside the dismissal

order. The state court denied Chirila's motion on the grounds that Chirila had failed to establish both excusable neglect in not filing an opposition to the motion to dismiss and the existence of a meritorious defense to the motion. Since Chirila's state action has been dismissed, the English defendants now argue that res judicata (claim preclusion) precludes Chirila from raising the issue of personal jurisdiction in this federal appeal.

[HN2]Whether claim preclusion bars litigation of personal jurisdiction is governed by the law of the forum, Nevada. *See Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 84 L. Ed. 2d 274, 105 S. Ct. 1327 (1985). [HN3]In Nevada, res judicata applies when there is identity of the parties and of the issues [**6] and when the issue has been litigated on the merits. *See Markoff v. New York Life Ins. Co.,* 92 Nev. 268, 549 P.2d 330, 332 (Nev. 1976). In *United States v. Van Cauwenberghe,* 934 F.2d 1048, 1060 (9th Cir. 1991), we held that a litigant who had lost on an issue of subject matter jurisdiction after full briefing could not relitigate the matter elsewhere. Unlike *Van Cauwenberghe,* however, the issue of jurisdiction in the case before us was not determined on the merits but by default, since the motion by the English defendants in the state court was unopposed. Thus, Chirila is not barred by res judicata from litigating the issue of personal jurisdiction on appeal here.

Chirila now argues that the English defendants waived their right to contest personal jurisdiction because they failed to raise this issue earlier in the motion by AGE to dismiss the first amended complaint. *See* Fed. R. Civ. P. 12(h)(1) [HN4](stating that failure to raise the issue of personal jurisdiction in the first responsive pleading constitutes a waiver of that issue). Chirila further contends that the English defendants' attempt to join in AGE's motion to dismiss constituted an [**7] appearance, and, since they failed to initially raise the defense of lack of personal jurisdiction, resulted in the English defendants waiving the personal jurisdiction defense. *See* Fed. R. Civ. Pro. 12(g) ([HN5]stating that a moving party that fails to include an available defense, such as lack of personal jurisdiction, may not make a subsequent motion based on the same defense except as provided in Rule 12(h)(2)). Both arguments are unpersuasive.

[*842] Chirila failed to raise the argument of waiver by the English defendants in his brief opposing the 12(b)(2) motion, which claimed lack of personal jurisdiction. Thus, we need not consider this argument on appeal. *See Singleton v. Wulff,* 428 U.S. 106, 120, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976); *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1488 n.4 (9th Cir. 1995). Further, the English defendants did not make an appearance in federal court. The alleged attempt by the English defendants to join in the motion to dismiss was made by an attorney representing AGE but not representing the English defendants. [HN6]An attempt to join a third party in a motion, which is made without the consent of the third party [**8] or of the third party's attorney does not constitute a joinder. Absent joinder, the English defendants did not make an appearance and, hence, did not waive the affirmative defense of lack of personal jurisdiction.

On the merits, however, the district court concluded that Chirila failed to make out a prima facie case that there was personal jurisdiction over the English defendants. [HN7]Since Nevada's long-arm statute extends to the outer reaches of the Due Process Clause, a Nevada court may exercise personal jurisdiction over a defendant unless the exercise would violate due process. *See Trump v. Eighth Judicial Dist. Court,* 109 Nev. 687, 857 P.2d 740, 747 (Nev. 1993); Nev. Rev. Stat. 14.065(1) (2002). As a constitutional matter, a court may exercise personal jurisdiction over a foreign defendant as a matter of general jurisdiction or as a matter of specific jurisdiction (jurisdiction as to specific acts or transactions). *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir. 1995).

Chirila concedes that the district court could not exercise general jurisdiction over the defendants. Chirila argues that there is specific jurisdiction because the English [**9] defendants have committed wrongful acts that have had an effect in Nevada, which is an application of the "effects" test. [HN8]To demonstrate specific jurisdiction under the effects test, Chirila must show that: (1) the English defendants purposefully availed themselves of the benefits and protections of the laws of Nevada, (2) the plaintiff's claims arise out of the defendants' Nevada-related activities and (3) the exercise of jurisdiction would be reasonable. *Id.* To meet the purposeful availment requirement in a tort case, Chirila must allege an intentional action aimed at Nevada that causes harm that the English defendants should have anticipated would be suffered in Nevada. *Core-Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1486 (9th Cir. 1993). Chirila failed to make any such allegation.

In his second amended complaint, Chirila alleged that Conforte and Neves engaged in tortious acts with the knowledge and consent of the English defendants. The district court, however, in its thorough review of Chirila's allegations, correctly held that [HN9]knowledge and consent-passive states of mind-do not constitute intentional acts directed at the forum state.

Chirila's final [**10] claim is that the English defendants conspired to terminate his employment, and submits that such an allegation of conspiracy is a sufficient prima facie showing of personal jurisdiction. There is a great deal of doubt surrounding the legitimacy of this conspiracy theory of personal jurisdiction. Although it

has been accepted by some courts, see, e.g., McLaughlin v. Copeland, 435 F. Supp. 513, 529-533 (D. Md. 1977) (reviewing the history of and applying the theory), others have rejected it, see, e.g., Gutierrez v. Givens, 1 F. Supp. 2d 1077, 1083 n.1 (S.D. Cal 1998) (rejecting the theory), Kipperman v. McCone, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976) (same). The use of the [*843] theory has been criticized by commentators, see, e.g., Ann Althouse, "The Use of Conspiracy Theory to Establish In Personam Jurisdiction," 52 Fordham L. Rev. 234 (1983), and we have rejected an analogous theory, see Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 492 (9th Cir. 1979) (rejecting a conspiracy theory of venue).

We last considered the conspiracy theory of personal jurisdiction in Underwager v. Channel [**11] 9 Australia, 69 F.3d 361, 364 (9th Cir. 1995). We did not reach a conclusion then on the validity of a conspiracy theory of person jurisdiction because Underwager "alleged no facts to even suggest a conspiracy between" the in-state and out-of-state defendants. Id. Thus, even if the theory was good law, Underwager would not have prevailed in his appeal. We reach the same conclusion with respect to Chirila. As the district court found, the claim of conspiracy here is made in the most conclusory manner. [HN10]"The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough." Stauffacher v. Bennett, 969 F.2d 455, 460 (7th Cir. 1992). Therefore, Chirila failed to make out a prima facie case that the district court could exercise personal jurisdiction over the English defendants.

Chirila's argument that the district court abused its discretion in denying him leave to amend his second amended complaint to address the personal jurisdiction deficiency is also unpersuasive. Although the district court did not grant Chirila an evidentiary hearing or preliminary discovery on the issue [**12] of personal jurisdiction, the court reviewed his complaint under a particularly lenient standard of review. *See Data Disc, Inc. v. Sys. Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977) (holding that a plaintiff must merely make out a prima facie case to withstand a motion to dismiss for lack of personal jurisdiction where there has been no evidentiary hearing). The district court applied the correct standard for review to the complaint (i.e., the plaintiff was required to make out only a prima facie case) when it denied Chirila leave to amend his second amended complaint. Thus, Chirila has no special entitlement to amend his complaint beyond that routinely recognized.

Under the appropriate standard of abuse of discretion, the district court did not err. Chirila had earlier been permitted to amend his first amended complaint. Moreover, Chirila should have known that the lack of personal jurisdiction issue could be raised at a later point in the proceedings and should have known that he needed to state facts in the complaint to support his contention, based on the effects test, that there was personal jurisdiction. Thus, the district court did not abuse its [**13] discretion in denying Chirila leave to amend his second amended complaint.

Because Chirila has failed to show that the English defendants made an appearance in district court and has otherwise failed to make out a prima facie case that the district court could exercise personal jurisdiction over the English defendants, there was no error in dismissing the second amended complaint for lack of personal jurisdiction.

AFFIRMED.

LEXSEE

**James Schultz, Plaintiff, v. Timothy Szott, et al., Defendants.**

**Case No. 3:08-CV-02718**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION**

**2009 U.S. Dist. LEXIS 66627**

**July 31, 2009, Decided**
**July 31, 2009, Filed**

**COUNSEL:** [*1] For James Schultz, Plaintiff: Craig A. Tank, LEAD ATTORNEY, Tank & Jelalian, Clinton Township, MI.

For Archdiocese of Detroit, Defendant: Thomas G Pletz, LEAD ATTORNEY, Shumaker, Loop & Kendrick, Toledo, OH; Ari W. Lehman, James J. Walsh, Thomas Van Dusen, Bodman - Troy, Troy, MI.

**JUDGES:** Vernelis K. Armstrong, United States Magistrate Judge.

**OPINION BY:** Vernelis K. Armstrong

**OPINION**

**MEMORANDUM DECISION AND ORDER**

The parties have consented to have the undersigned Magistrate enter a final judgment on all issues arising from this personal injury lawsuit filed under 28 U.S.C. § 1332(a). Pending is Defendant Archdiocese of Detroit's (Archdiocese) Motion to Dismiss filed pursuant to FED. R CIV. P. 12(b)(2) (Docket No. 5) to which Plaintiff filed a Response (Docket No. 9) and Defendant filed a Reply (Docket No. 10). For the following reasons, the Magistrate grants the Motion to Dismiss.

**I. PARTIES**

Plaintiff was born in Michigan in 1968, and resided there until 2006. In 2006, Plaintiff moved to Missouri (Docket No. 8 at P 8). At the time he filed the complaint, Plaintiff was a citizen of the State of Missouri (Docket No. 8 at P 3).

Ordained in January 1973, Defendant Szott was a priest and/or pastor in Defendant Archdiocese [*2] from 1973 until 2005 (Docket No. 1; Docket No. 5, Affidavit of Monsignor Ricardo E. Bass, at P 4). Upon information and belief, Defendant Szott was a citizen of the State of Arizona at the time of his death on August 21, 2008 (Docket No. 8 at Ps 4 & 35; Docket No. 5 at P 4, Affidavit of Monsignor Ricardo E. Bass).

Defendant Archdiocese is a geographical unit of authority in the Roman Catholic Church, located in Michigan (Docket No. 8 at P 5).

**II. FACTUAL BACKGROUND**

Defendant Szott served as a priest and/or pastor in the Archdiocese of Detroit, and remained under their supervision and control from 1973 to 2005. His many duties included counseling parishioners, including minor children, as well as supervising altar boys (Docket No. 8 at P 9). In 1973, Defendant Archdiocese assigned Defendant Szott to Ascension Parish in Warren, Michigan. Ascension Parish was under the supervision and control of Defendant Archdiocese (Docket No. 8 at P 11). From 1973 to 1976, Defendant Szott molested several young boys at Ascension Parish (Docket No. 8 at P 12). The family of John Doe One, informed Defendant Archdiocese of the abuse (Docket No. 8 at P 13).

In 1976, Defendant Archdiocese reassigned Defendant [*3] Szott as co-pastor to a parish in White Lake, Michigan, that was under their supervision and control. Defendant Szott remained at the St. Patrick parish until 1986 (Docket No. 8, at P 14 & 17). As members of the St. Patrick Parish, Plaintiff and his family placed trust in the Defendants, and were greatly influenced by them (Docket No. 8 at Ps 15 & 16). During this time, Defendant Szott was allowed unsupervised contact with children, including Plaintiff. During these unsupervised encounters, Defendant Szott molested Plaintiff on numerous occasions (Docket No. 8 at P 17).

In December 1980, Defendant Szott, in his role as priest and/or pastor, took Plaintiff and his two brothers to Orlando, Florida. Defendant Szott claimed the trip was to allow Plaintiff's parents to spend New Year's free of their children (Docket No. 8 at P 18). While in Orlando, Plaintiff and Defendant Szott shared a bed. While both were in bed, Defendant Szott rubbed his erect penis against the area of Plaintiff's rectum (Docket No. 8 at P 19).

In the summer of 1981, Defendant Szott, in his role as priest and/or pastor, took Plaintiff to Arizona for several weeks. Plaintiff and Defendant Szott shared a bed each night. [*4] Defendant Szott said the purpose of the trip was to reward Plaintiff for the work he had done in the rectory (Docket No. 8 at P 20).

In the winter of 1983, Defendant Szott, in his role as priest and/or pastor, and Father Jerome Brezinski, a fellow priest serving with Defendant Archdiocese, vacationed with Plaintiff in the Florida Keys. The purpose of the trip was to reward Plaintiff for the hard work he had done in the rectory. While in Florida, Father Brezinski observed physical contact of a sexual nature between Plaintiff and Defendant Szott but never reported the abuse (Docket No. 8 at P 21).

Also in 1983, Defendant Szott took Plaintiff to Sandusky, Ohio, for two days. The trip was to reward Plaintiff for his work as an altar boy. Plaintiff and Szott slept in the same bed during the trip. While lying on the same bed, Defendant Szott rubbed his erect penis against the area of Plaintiff's rectum (Docket No. 8, at P 22).

In 1984, Defendant Szott, in his role as priest and/or pastor, and Plaintiff vacationed together throughout Europe. The purpose of the trip was to reward Plaintiff for graduating from the eighth-grade. During the trip, Plaintiff and Defendant Szott shared the same bed [*5] (Docket No. 8 at P 23).

In 1986, Defendant Szott was reassigned as pastor to St. Agatha Parish in Redford, Michigan. St. Agatha Parish was under the supervision and control of Defendant Archdiocese (Docket No. 8 at P 24).

In 1989, Defendant Szott visited Europe with Mark Radke, Father Norman Nawrocki, John Doe Two, and others (Docket No. 8 at P 25). While in Italy, John Doe Two complained to Radke that he had been sexually assaulted by Defendant Szott (Docket No. 8 at P 26). Radke reported the incident to Father Nawrocki, a priest within Defendant Archdiocese (Docket No. 8 at P 27). Father Nawrocki failed to report the complaint (Docket No. 8 at P 28).

In 1995, Defendant Archdiocese reassigned Defendant Szott as pastor to St. Lawrence Parish in Utica, Michigan. St. Lawrence Parish was under the supervision and control of Defendant Archdiocese (Docket No. 8 at P 31). In the late 1990's Defendant Szott sexually assaulted John Doe Three, a child parishioner at St. Lawrence Parish in a hotel room in Northern Michigan (Docket No. 8 at P 32).

In 2003, Defendant Szott was convicted of child pornography possession and took a leave of absence (Docket No. 8, P 33). In that same year, Defendant Szott [*6] told the father of John Doe Three that he had been dealing with problems regarding child pornography for a long time. He stated that he had asked Cardinal Adam Maida, of Defendant Archdiocese, for help but had been ignored (Docket No. 8, P 34). In 2005, Defendant Szott was permanently removed from the priesthood. At that time, Szott moved to Arizona where he resided until his death in 2008 (Docket No. 8, P 35).

Plaintiff contends that the Defendant Archdiocese was aware that priests have intimate contact with children and other parishioners (Docket No. 8 at P 10). In fact, Defendant Archdiocese was informed that Defendant Szott had sexually abused children while serving at the Ascension Parish. Plaintiff alleges that these complaints gave Defendant Archdiocese actual and/or constructive notice that Defendant Szott had sexually abused children. Defendant Archdiocese did not stop Defendant Szott's inappropriate behavior and concealed his conduct from the public, including Plaintiff and his parents. Plaintiff alleges Defendant Archdiocese fraudulently represented that Defendant Szott was a priest qualified to be around children (Docket No. 8, at P 36). Plaintiff contends that Defendant [*7] Archdiocese failed to closely monitor and supervise Defendant Szott, despite his known inappropriate sexual contact with children. (Docket No. 8, at P 37).

The sexual abuse experienced by Plaintiff caused him to develop confusion, various coping mechanisms, and symptoms of psychological disorders including: shame, guilt, self-blame, depression, repressed memory, disassociation, and traumatic amnesia. It was not until April 2008, that Plaintiff began to recall the sexual abuse that occurred in Sandusky, Ohio. It was not until that same time period that Plaintiff began to know or had reason to know, of the link between his sexual abuse and his various psychological and emotional injuries. During this period, Plaintiff learned of Defendant Szott's abuse of other children (Docket No. 8, P 38). Plaintiff alleges Defendant Archdiocese's actions, or failure to act, contributed to Plaintiff's repression of memory and prevented him from recovering from the abuse (Docket No. 8, P 39).

### III. PROCEDURAL BACKGROUND

Plaintiff filed a complaint and Defendant Archdiocese filed a Motion to Dismiss pursuant to FED. R. CIV.

P. 12(b)(6)(2) (Docket Nos. 1 & 5). Plaintiff subsequently amended his complaint [*8] (Docket No. 8). Plaintiff filed a Response to the Motion to Dismiss (Docket No 9) and Defendant Diocese filed a Reply to Plaintiff's Response (Docket No. 10).

## IV. STANDARD FOR MOTION TO DISMISS

When presented with a Rule 12(b)(2) motion and opposition, a court has three alternatives: (1) it may decide the motion on the affidavits alone, (2) it may permit discovery in aid of deciding the motion, or (3) it may conduct an evidentiary hearing to resolve any factual questions. *Market/Media Research, Inc. v. Union-Tribune Publ'g. Co*., 951 F.2d 102, 106 (6th Cir. 1991) *cert. denied*, 506 U.S. 824, 113 S. Ct. 79, 121 L. Ed. 2d 43 (1992). The decision is within the discretion of the court, and can only be reversed for abuse of that discretion. *Id*. Where an evidentiary hearing is held on the merits of the motion, a plaintiff must prove jurisdiction by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P*., 134 F.3d 1269, 1272 (6th Cir. 1998). When no evidentiary hearing is held on the issue of jurisdiction, a plaintiff need only make a *prima facie* showing of personal jurisdiction. *Id*.

## IV. DISCUSSION

Plaintiff contends that the Court has both general personal jurisdiction, and jurisdiction conferred by the Ohio long-arm [*9] statute over Defendant Archdiocese. Plaintiff requests that the Motion be denied or, in the alternative, the Court grant him leave to conduct discovery on the issue and reserve judgment on Defendant's motion until discovery is complete. Defendant Archdiocese argues that this Court has no basis for personal jurisdiction, and that the Archdiocese should be dismissed as a party to this suit pursuant to FED. R. CIV. P. 12(b)(2).

### 1. JURISDICTIONAL STANDARDS

This Court has original jurisdiction of a civil suit between citizens of different states and the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs. *See* 28 U.S.C.S. § 1332 (LexisNexis 2009). The validity of this Court's order, however, depends on the Court having jurisdiction over the subject matter and the parties. *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006) (*citing Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099, 2103, 72 L. Ed. 2d 492 (1982)). The court is powerless to proceed to adjudication without personal jurisdiction. *Id*. at 903-04 (*citing Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 119 S. Ct. 1563, 1570, 143 L. Ed. 2d 760 (1999)). Personal jurisdiction centers on the fairness of compelling [*10] a defendant to defend a suit in a given forum. *Id*. at 904 (*citing Schwartz v. Elec. Data Sys., Inc*., 913 F.2d 279, 294 n. 9 (6th Cir. 1990)).

Two requirements must be met in order for a federal court to exercise personal jurisdiction in a diversity of citizenship case:

> (1) jurisdiction must be authorized by the law of the forum state, and
>
> (2) jurisdiction must be in accordance with the due process clause of the Fourteenth Amendment.

*Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 888 (6th Cir. 2002) (*citing Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994) *cert. denied* 513 U.S. 962, 115 S. Ct. 423, 130 L. Ed. 2d 338 (1994)).

The Sixth Circuit has found that the party seeking to assert personal jurisdiction bears the burden of proving jurisdiction exists. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (*citing Neogen Corp., supra*, 282 F.3d at 887). In considering a motion to dismiss for lack of personal jurisdiction, the facts are viewed in the light most favorable to the non-moving party. *Id*.

### 2. OHIO LONG-ARM STATUTE

The Ohio long-arm statute is limited in nature, and is not coterminous with federal constitutional limits. *Id*. at 871 (*citing Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000)). [*11] The Ohio long-arm statute sets forth nine ways that a defendant may subject himself or herself to jurisdiction. Plaintiff, in his response to Defendant's 12(b)(2) motion, has listed three potentially relevant subsections of Ohio's long-arm statute that permit this Court to exercise personal jurisdiction over Defendant:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (3) Causing tortuous injury by an act or omission in this state;
>
> (4) Causing tortuous injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

revenue from goods used or consumed or services rendered in this state;

OHIO REV. CODE ANN. § 2307.382(A)(1),(A)(3),(A)(4) (LexisNexis 2009).

## A. TRANSACTING BUSINESS IN THE STATE

Pursuant to OHIO REV. CODE § 2307.382(A)(1), a court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's transacting any business within the state. *Kroger Co. v. Malease Foods Corp*., 437 F.3d 506, 511 (6th Cir. 2006) [*12] (*citing Ky. Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St. 3d 73, 559 N.E.2d 477 (1990) *cert. denied*, 499 U.S. 975, 111 S. Ct. 1619, 113 L. Ed. 2d 717 (Ohio 1991)).

Ohio courts have held that non-commercial activities can constitute the transaction of business. *Barile v. Univ. of Va*., 2 Ohio App. 3d 233, 236, 2 Ohio B. 254, 441 N.E.2d 608 (Ohio Ct. App. 1981). In *Barile*, the Plaintiff, a resident of Ohio, was recruited to play football for the University of Virginia. *Id*. at 234. Plaintiff Barile was injured while playing football and brought suit against the University of Virginia for breach of contract arising out of defendant's failure to provide medical care. *Id*. at 235. The court determined that Ohio had personal jurisdiction over the University of Virginia. *Id*. at 236. The court reasoned that, "It cannot be seriously maintained that college football is not a business, or that the relationship between a college and a student-athlete is not a business relationship." *Id*. at 238.

The instant case can be distinguished from the decision in *Barile*. In *Barile*, the activities in question were of a business nature. The court found that college football is a big business, and that the relationship between a university and a scholar-athlete is contractual [*13] in nature. This differs from the goals and intent of Defendant Archdiocese. No allegations in Plaintiff's complaint indicate that Defendant Archdiocese is a moneymaking, business entity. Rather, Defendant Archdiocese is an entity of the Catholic Church, with its goals being to counsel, preach, and further their religious beliefs. Specifically, priests from the Detroit Archdiocese visit sick congregants housed in Ohio hospitals, counsel the elderly in Ohio rest homes, judge nullity cases for the Diocese of Toledo and periodically have given lectures (Docket No. 9). These acts are not contractual in nature. Further, such acts of visiting congregants in Ohio are too speculative to show a continuous and systematic contact with the State of Ohio.

In this case, Plaintiff contends that Defendant Szott transacted business on behalf of Defendant Archdiocese in Ohio. Plaintiff contends the trip to Sandusky was an action within the scope of Defendant Szott's pastoral duties. In particular, the trip was to reward Plaintiff for his work as an altar boy, and one of the duties of Defendant Szott was to counsel, supervise, and train altar boys. Further, Plaintiff contends that since the cause of action [*14] arose out of the "business" trip, the Court has jurisdiction over the Defendant Archdiocese. The Magistrate is not persuaded that Defendant Szott's business trip in Ohio was sufficient to constitute the transaction of business in the State of Ohio. Specific jurisdiction is not proper under OHIO REV. CODE § 2307.382(A)(1) as Plaintiff cannot make a *prima facie* showing that by Defendant Szott's presence in Ohio, he transacted business here.

## B. CAUSING TORTUOUS INJURY BY AN ACT OR OMISSION IN OHIO

Another way that a defendant may subject himself or herself to jurisdiction is to cause tortuous injury by an act or omission in this state. Section 2307.382(A)(3) of the Ohio long-arm statute has been interpreted to require a tortuous occurrence where the causing act or omission as well as the resulting tortuous injury occur in Ohio. *Busch v. Serv. Plastics, Inc*., 261 F. Supp. 136, 140 (N.D. Ohio 1966). This act or omission establishes the defendant's contact with Ohio, and it is out of this contact that the cause of action must arise. *Id*.

In this case, the Plaintiff contends that Defendant Archdiocese had a duty to supervise Defendant Szott. Plaintiff alleges that this duty does not end at the [*15] Michigan border. Plaintiff further contends that Defendant Archdiocese's failure to supervise resulted in the sexual abuse of Plaintiff and this failure constitutes an omission in the State of Ohio. Therefore, Plaintiff alleges this Court has personal jurisdiction over Defendant Archdiocese pursuant to OHIO REV. CODE ANN. § 2307.382(A)(3).

Second, Plaintiff contends Defendant Szott was acting within the scope of his pastoral duties when the trip to Sandusky occurred. Plaintiff alleges that since Defendant Szott was acting within the scope of his duties and as an agent of Defendant Archdiocese, Defendant Archdiocese had a presence in the state. Hence, Plaintiff contends Defendant Archdiocese is vicariously liable for the actions of Defendant Szott in Sandusky, Ohio.

Plaintiff, in alleging Defendant Archdiocese is subject to jurisdiction under OHIO REV. CODE ANN. § 2307.382(A)(3), cites the Ohio Court of Appeals decision in *Wayne County Bureau of Support v. Wolfe*, 71 Ohio App. 3d 765, 595 N.E.2d 421 (Ohio Ct. App.

1991). In *Wolfe*, the defendant was a resident of California and lived there with her two sons. *Wolfe*, 71 Ohio App. 3d at 766-67. Defendant's estranged husband and two daughters lived in Ohio. [*16] *Id.* at 766-67. Defendant's two daughters began receiving aid from Wayne County, Ohio, and the county filed a claim for support against the defendant in an Ohio court. *Id.* at 767. Defendant argued that Ohio did not have jurisdiction over her person. *Id.* The court found that the failure to act when there is a duty to do so constitutes an act or omission in the state. *Id.* at 770. The court noted that Ohio places a statutory duty on parents to support minor children living in the state. *Id.*

In this case, Plaintiff contends that it is not necessary for Defendant Archdiocese to be present in Ohio, to cause a tortuous injury by an act or omission in Ohio. Plaintiff analogizes the facts in *Wolfe* to this case, contending that Defendant Archdiocese had a duty to act in the State of Ohio. However, in *Wolfe*, the court noted an actual statutory duty requiring parents to provide for their minor children. In this case, Plaintiff does not allege any *statutory duty* upon Defendant Archdiocese in the State of Ohio. (Emphasis added). Plaintiff has failed to indicate any duty imposed by the State of Ohio on the Archdiocese of Detroit, and their first argument is, therefore, without merit.

Plaintiff's second [*17] argument hinges on whether Defendant Archdiocese is vicariously liable for the actions of Defendant Szott. The Sixth Circuit has determined that under Ohio law, employees acting intentionally and maliciously are within the scope of their employment, if they are acting in the course of their employment and within their authority. *Woods v. McGuire*, 954 F.2d 388, 390 (6th Cir. 1992) (*citing Stranahan Bros. Catering Co. v. Coit*, 55 Ohio St. 398, 45 N.E. 634 (Ohio 1896)). However, an employer is not liable for independent self-serving acts of an employee which in no way facilitate or promote the employer's purpose. *Id.* (*citing Byrd v. Faber*, 57 Ohio St. 3d 56, 59, 565 N.E.2d 584 (Ohio 1991)).

In this case, the sexual acts of Defendant Szott were not within the course of his employment. The Catholic Church promotes their priests as being chaste and celibate. Defendant Szott's acts did not facilitate or promote the message of the Archdiocese and they were not authorized. Therefore, Defendant Szott was not acting within the scope of his employment when the abuse occurred. Defendant Szott was not acting as an agent of Defendant Archdiocese when he molested Plaintiff and Defendant Archdiocese cannot be subject to personal [*18] jurisdiction pursuant to OHIO REV. CODE ANN. § 2307.382(A)(3).

## C. CAUSING TORTUOUS INJURY IN THE STATE BY AN ACT OR OMISSION OUTSIDE THE STATE AND REGULARLY ENGAGING IN A PERSISTENT COURSE OF CONDUCT IN THE STATE

Finally, Plaintiff contends that although located in the State of Michigan, Defendant Archdiocese breached its fiduciary duty by failing to supervise, discharge or discipline its priest while in Ohio; therefore, Defendant Archdiocese is subject to jurisdiction under OHIO REV. CODE § 2307.382 (A)(4).

Section 2307.382(A)(4) only applies when the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Ohio]." *J4 Promotions, Inc. v. Splash Dogs, LLC*, 2009 U.S. Dist. LEXIS 11023, 2009 WL 385611, *8 fn. 10 (N. D. Ohio 2009).

If the Court assumes these allegations to be true, Plaintiff must still make a *prima facie* showing that Defendant Archdiocese regularly does or solicits business in Ohio, engages in a persistent course of conduct in Ohio, or derives substantial revenue from goods used or consumed or services rendered in Ohio.

Plaintiff contends priests under the control of Defendant [*19] Archdiocese travel into the Toledo, Ohio, area to perform their pastoral duties. These duties include visiting and counseling ill congregants housed in Toledo hospitals and nursing homes. Plaintiff alleges that Defendant Archdiocese performs other duties in Ohio, including judging marriage nullity cases in the Diocese of Toledo. Defendant Archdiocese exchanges priests with dioceses located in Ohio. Congregants from the State of Ohio attend services at churches located in the Archdiocese of Detroit. Finally, Plaintiff alleges Archdiocese has engaged in business transactions in the State of Ohio (Docket No. 8 at P 6). Plaintiff relies on their argument that Defendant Archdiocese has substantial, continuous, and systematic contacts with the State of Ohio, in contending that they have engaged in a persistent course of conduct in the state. Plaintiff attempts to prove systematic and continuous contacts by pleading jurisdictional facts in his amended complaint. As noted above, the undersigned finds that Defendant Archdiocese's contacts with Ohio were neither continuous nor systematic. Defendant Archdiocese, therefore, was not subject to personal jurisdiction under OHIO REV. CODE § 2307.382(A)(4).

## 2. [*20] DUE PROCESS CLAUSE

The second prong of the test requires that Plaintiff demonstrate that the exercise of jurisdiction over the defendant comports with due process. To meet the re-

quirements of the Due Process Clause of the Fourteenth Amendment, the defendant must have minimum contacts with the forum state and the exercise of personal jurisdiction must be consistent with traditional notions of fair play and substantial justice. *Lum v. Mercedes Benz, USA, LLC*, 433 F. Supp. 2d 853, 855 (N.D. Ohio 2006) (*citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)). "Personal jurisdiction can be either general or specific, depending upon the nature of the contacts that the defendant has with the forum state." *Bird, supra,* 289 F.3d at 873 (*citing Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992)).

## A. GENERAL PERSONAL JURISDICTION

"General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird,* 289 F.3d at 873 (*quoting Third Natl. Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). [*21] A finding of general jurisdiction involves "a more stringent minimum contacts test." *Pierson v. St. Bonaventure Univ.*, No. 2:05-CV-0581, 2006 U.S. Dist. LEXIS 4662, 2006 WL 181988, at *4 (S.D. Ohio Jan. 23, 2006) (*quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) *cert. denied*, 519 U.S. 1006, 117 S. Ct. 508, 136 L. Ed. 2d 398 (1996)). The United States Supreme Court has not outlined a specific test to follow in determining whether a defendant's activities in the forum state reach the level of "continuous and systematic." *Avery Dennison Corp. v. Alien Technical Corp.*, 632 F. Supp. 2d 700, 2008 U.S. Dist. LEXIS 98173, 2008 WL 5130424, at *7 (N.D. Ohio 2008) (*citing LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)). Rather, the Court looks to the facts of each case in making such a determination. *Id.*

In the instant case, Plaintiff contends that Defendant Archdiocese has contacts with the State of Ohio such that general jurisdiction is proper. Viewing the complaint in the light most favorable to the Plaintiff, it is clear that some contact between Defendant Archdiocese and the forum state have occurred. In particular, Defendant Archdiocese has exchanged priests with dioceses located in Ohio. Also, priests from Defendant Archdiocese [*22] cross into Ohio to visit and counsel ill congregants located in Ohio hospitals and nursing homes. Plaintiff also asserts that priests from Defendant Archdiocese travel to Ohio to perform pastoral duties, such as judging marriage nullity cases for the Diocese of Toledo. Finally, Plaintiff contends that Defendant Archdiocese has en-

gaged in business transactions in Ohio (Docket No. 8 at P 6).

However, in viewing the totality of the contacts between Defendant Archdiocese and the State of Ohio, the Magistrate must reiterate that continuous and systematic contacts do not exist. The facts in the pleadings do not suggest that Defendant Archdiocese has a regular presence in Ohio. The pleaded facts suggest that isolated contacts occurred between priests of Defendant Archdiocese and the Diocese of Toledo. These limited contacts are insufficient to support a finding that general jurisdiction exists.

## B. SPECIFIC JURISDICTION

"In a specific jurisdiction case, 'a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Third Natl. Bank, supra,* 882 F.2d at 1089 (*quoting Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). [*23] Specific personal jurisdiction exists where: 1) the defendant purposefully avails itself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) the cause of action arises from the defendant's activities; and 3) the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Lum, supra,* 433 F. Supp. 2d at 856 (*citing S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

In this case, the Court has previously noted that Defendant Archdiocese has some contacts with the State of Ohio, but not reaching the level of continuous and systematic. It can therefore be said that Defendant Archdiocese has purposefully availed itself of the privilege of acting in Ohio. However, the second prong of the *Mohasco* test is not met in the instant case. For the reasons detailed above, the cause of action in this case did not arise from the activities of Defendant Archdiocese. This court does not have specific personal jurisdiction over Defendant Archdiocese.

## VI. DISCOVERY

Plaintiff requests that if the Court is unable to [*24] find that he established personal jurisdiction, the Court grant him leave to complete discovery and reserve judgment on the Motion to Dismiss until after discovery is complete should the court find personal jurisdiction has not been established.

Scholars have noted that it has "not always been clear whether the FRCP permit jurisdictional discovery." STEVEN R. SWASON, *Jurisdictional Discovery Under the Foreign Sovereign Immunities Act*, 13 EMORY

INT'L. L. REV. 445, 457-59 (1999) (discussing the history of jurisdictional discovery). Technically, before jurisdiction has been established a court lacks power to order discovery. *Id*.

However, the Supreme Court has noted that discovery is not limited to issues involving the merits of the case, but extends to many fact-orientated issues not related to the merits of the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978). "For example, where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Id*. at 2389, n. 13.

The Sixth Circuit has found that a district court faced with a motion to dismiss for lack of personal jurisdiction may allow the plaintiff additional discovery [*25] to further investigate jurisdictional facts. *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991). Whether additional discovery is granted is within the discretion of the district court. *Id*. Also the scope of discovery is within the discretion of the court. The district court's rulings on discovery are subject to reversal only for abuse of that discretion. *Id*. *(citing Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

In this case, the Court finds that Plaintiff had ample time to investigate the issue of jurisdiction and to demonstrate a *prima facie* showing of personal jurisdiction. Since the initial filing of Defendant's motion to dismiss, Plaintiff has amended his complaint to include additional jurisdictional facts. Discovery was scheduled to be completed by May 9, 2009. Nothing on the docket indicates that Plaintiff took efforts to complete discovery prior to the expiration of the discovery deadline. Further, Plaintiff failed to file a motion requesting an extension of the discovery deadline. Plaintiff's alternative request that jurisdictional discovery be granted is denied.

### VII. CONCLUSION

For the foregoing reasons, it is ordered that the Motion to Dismiss [*26] of Defendant Dioceses (Docket No. 5) be granted and that the case be closed inasmuch as Defendant Szott is deceased and his estate has not been joined or served in this litigation.

**IT IS SO ORDERED**

/s/ Vernelis K. Armstrong

United States Magistrate Judge

Date: July 31, 2009

LEXSEE



Cited
As of: Apr 07, 2010

**Herbert W. Hoover, III et al., Plaintiffs, vs. Society Bank of Eastern Ohio N.A. etc. et al., Defendants.**

**CASE NO. 5:90 CV 1245**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION**

**1991 U.S. Dist. LEXIS 19073**

**April 12, 1991, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, income beneficiary and remaindermen, accused defendants, trustor, corporate trustee, individual trustees, investment company, agent, and director of fraud, breach of fiduciary duties, and violations of § 10(b) of the Securities Exchange Act of 1934. The trustees and other parties asserted that the issue of personal jurisdiction had already been litigated and that the remaindermen lacked standing to assert the breach claim.

**OVERVIEW:** The income beneficiary and remaindermen of a trust accused the trustor, corporate trustee, individual trustees, investment company, and its agent and director of fraud, breach of their fiduciary duties, and violations of § 10(b) of the Securities Exchange Act of 1934. The court dismissed the claims against the agent and director for lack of personal jurisdiction but refused to dismiss any of the other claims. A prior state court decision regarding this matter had no preclusive effect as the claims cited in that action had been voluntarily dismissed. The beneficiary failed to meet its burden of proving that personal jurisdiction arose against the agent and director under Ohio Rev. Code Ann. § 2307.382 (1989), the applicable long-arm statute. The claims asserted under § 10(b) of the Securities Exchange Act of 1934 were timely under the state statute of limitations applicable to fraud. State law claims brought against the trustees arose out of the same nucleus of operative fact as the federal claims and the court exerted pendent jurisdiction over those claims. The court found that a hearing was needed to determine whether a change of venue under 28 U.S.C.S. § 1404 was appropriate.

**OUTCOME:** The court dismissed the claims against the agent and director for lack of personal jurisdiction. It refused to dismiss the claims against the other parties but granted them leave to file briefs on the issue of whether this matter needed to be transferred to another forum.

**LexisNexis(R) Headnotes**

*Business & Corporate Law > Corporations > Shareholders > Transfers of Shares*
*Estate, Gift & Trust Law > Trusts > Trustees > General Overview*
*Governments > Fiduciary Responsibilities*
[HN1]Both Fed. R. Civ. P. 23.1 and Ohio R. Civ. P. Rule 23.1 preclude a suit premised upon stock ownership which is brought after the stockholder's stock is transferred.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > General Overview*
[HN2]The State of Ohio's four-year general statute of limitations for fraud actions is applied to claims for violations of Section 10(b) of the Securities Exchange Act of 1934.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Securities Law > Blue Sky Laws > Offer & Sale*
*Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview*
[HN3]The Sixth Circuit applied the State of Ohio's four-year general statute of limitations for fraud actions to suits charging fraud in the sale and/or purchase of securities. Although state law provides the statute of limitations, the date on which the statute begins to run is a matter of federal law and the period of limitations commences when the fraud is or should have been discovered. In determining whether the fraud was or should have been discovered an investor is charged with being at least a person of ordinary intelligence.

*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Jurisdiction & Scope > Federal Jurisdiction*
[HN4]See § 27 of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78aa.

*Civil Procedure > Pleading & Practice > Service of Process > General Overview*
*Securities Law > Additional Offerings & the Securities Exchange Act of 1934 > Jurisdiction & Scope > General Overview*
[HN5]Section 27 of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78aa authorizes nationwide service of process.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > General Overview*
*Civil Procedure > Appeals > Appellate Jurisdiction > State Court Review*
[HN6]Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim arising under the Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case. The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would

ordinarily try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole case.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
[HN7]Whether to hear pendent state claims even if the federal court has the power to hear them, is a matter left to the sound discretion of the federal court. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. A federal court should be guided in making a decision as to whether it should exercise pendent jurisdiction by considerations of judicial economy, convenience and fairness to litigants. Likewise, if state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims should be dismissed without prejudice and left for resolution to state tribunals.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
*Estate, Gift & Trust Law > Trusts > Trustees > General Overview*
[HN8]If state claims predominate in a lawsuit, then a federal court should probably not exercise its discretion in favor of hearing the pendent claims, but rather, should dismiss the pendent state claims so that such claims can be resolved by a state tribunal.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Pendent Claims*
[HN9]A federal court has the power at any time during a proceeding, to dismiss pendent state claims if it finds, through the exercise of its sound discretion, that such a dismissal is warranted.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources*
*Civil Procedure > Venue > General Overview*
*International Law > Authority to Regulate > Securities*
[HN10]The venue provisions of the securities laws providing extraterritorial service of process are sufficient to support in personam and subject matter jurisdiction over defendants on pendent state claims. Once a court has properly acquired jurisdiction over a person under a statute providing for service beyond the territorial limits of the state in which the federal court is situated, issues which are ancillary or pendent to the claim which provided the statutory basis for service should be heard. Once a defendant is properly served under a statute pro-

viding for service of process outside of the state within which the district court sits, a federal court has personal jurisdiction over that defendant with respect to all of the claims which a plaintiff asserts against that particular defendant.

***Administrative Law > Agency Adjudication > Decisions > Res Judicata***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Full Faith & Credit > General Overview***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata***
[HN11]A federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered.

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Concurrent Jurisdiction***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Collateral Estoppel***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata***
[HN12]The rule in the State of Ohio is that an existing final judgment upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. Likewise, a point or fact which was actually and directly in issue in a former action and was there passed upon and determined by a court of competent jurisdiction cannot be drawn into question in any future action between the same parties or privies, whether the cause of action in the two actions be identical or different.

***Civil Procedure > Dismissals > Voluntary Dismissals > Notices > Dismissals Without Prejudice***
***Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata***
[HN13]Where an action or proceeding is dismissed without prejudice, rulings preceding the final judgment or decree of dismissal are, as a general proposition, not capable of becoming res judicata. In the State of Ohio the dismissal of an action without prejudice, whether voluntary or involuntary, dissolves all orders rendered by the trial court during the pendency of the action. Under Ohio law, an order of voluntary dismissal, otherwise than on the merits, leaves the parties in the same position as if the action had never been commenced.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > Long-Arm Jurisdiction***
[HN14]The law of the forum state determines the extent of the in personam jurisdiction of a federal court sitting in a diversity case.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
[HN15]The State of Ohio's long arm statute has been construed to extend jurisdiction to the constitutional limits.

***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
[HN16]When a plaintiff seeks to bring a foreign defendant into a distant forum, the plaintiff bears the initial burden of pleading jurisdiction. When the plaintiff seeks to bring a defendant in pursuant to a long arm statute, he must state sufficient facts in the complaint to support a reasonable inference that such defendant can be subjected to jurisdiction within the state. In addition, if the pleadings are challenged, the plaintiff must support the allegation that the court has jurisdiction by competent proof. That is, in such a case, the defendant, by introduction of evidence controverting jurisdiction, shifts the burden of going forward back to the plaintiff and plaintiff is required to produce some creditable evidence pointing toward the existence of jurisdiction.

***Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview***
***Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview***
[HN17]See Ohio Rev. Code Ann. § 2307.382 (1989).

***Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers***
***Civil Procedure > Venue > Forum Non Conveniens***
[HN18]In federal courts, the doctrine of forum non conveniens has only a limited continuing vitality after the passage of the venue transfer statute, 28 U.S.C.S. § 1404(a). If the more convenient forum is another federal court the case can be transferred there under § 1404(a) and there is no need for dismissal. It is only when the more convenient forum is in a foreign country --or perhaps, under rare circumstances, in a state court or territo-

rial court --that a suit brought in a proper federal venue can be dismissed on the grounds of forum non conveniens.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Forum Non Conveniens*
[HN19]See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
*Civil Procedure > Venue > Forum Non Conveniens*
[HN20]In deciding whether to transfer a case pursuant to 28 U.S.C.S. § 1404(a), a federal court can consider factors such as those relevant to a determination of dismissal on the grounds of forum non conveniens. Whether to grant a transfer turns on the particular facts of the case and the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.

**JUDGES:** [*1] Dowd, Jr.

**OPINION BY:** DAVID D. DOWD, JR.

**OPINION**

DOWD, J.

*MEMORANDUM OPINION*

I. *INTRODUCTION*

The Court has before it in the above-captioned case the Rule 12 motion to dismiss of defendants The Bank of New York, Peter Bingenheimer, Walter W. Johnson, Jr., William M. Caddey, James G. Beaulieu, Hoover Invesco, Inc., Andres J. Iriondo, William A. Pincoe and Herbert W. Hoover, Jr. ("moving defendants"), (Docket No. 37), and their memorandum in support, (Docket No. 38). The Court also has before it the moving defendants' supplemental memorandum to their motion to dismiss, (Docket No. 68), plaintiffs' memorandum in opposition to defendants' motion to dismiss, (Docket No. 79), and moving defendants' reply memorandum, (Docket No. 81).

A. *Facts.*

A summary of the complex fact pattern giving rise to the present suit is as follows. Plaintiff Herbert W. Hoover, III is the sole income beneficiary of an irrevocable trust established in Stark County, Ohio on November 5, 1959 by his father, defendant Herbert W. Hoover, Jr.

("defendant Hoover"). Plaintiff Herbert W. Hoover, III holds a general power of appointment over the corpus of the trust. Plaintiffs Herbert W. Hoover, IV and Maximilian S. Hoover [1] are [*2] designated remaindermen of the trust. Their interests are, however, subject to potential divestment upon exercise of the general power of appointment by their father, plaintiff Herbert W. Hoover, III.

1  Herbert W. Hoover, IV and Maximilian S. Hoover were added as plaintiffs in plaintiffs' amended complaint, (Docket No. 65).

At the same time that defendant Hoover created the trust which is the subject of the present suit, he created a second trust for the benefit of his daughter, Elizabeth L. Hoover, and her lineal descendants. Each of the trusts created by defendant Hoover was funded with 4,275 shares of the nonvoting common stock of Hoover Invesco, Inc., ("Hoover Invesco"), an Ohio corporation formed as an investment/holding company. Together, the shares funding the trusts represented 95% of the issued and outstanding stock of Hoover Invesco. Defendant Hoover retained the remaining 5% of the issued and outstanding common stock of Hoover Invesco. The 5% retained by defendant Hoover constituted the only voting stock [*3] in Hoover Invesco.

The trust for the benefit of plaintiffs provides that it is at all times to be administered by a corporate trustee and two individual trustees and that the trustees should employ Scudder, Stevens & Clark, Inc. or its successor as investment counsel. The trust provides, as well, that the Harter Bank & Trust Company, later acquired by defendant Society Bank of Eastern Ohio N.A., ("Society Bank"), should serve as corporate trustee.

Society Bank retained the position of corporate trustee from the date of the creation of the trust until on or about February 3, 1987 when it was removed as corporate trustee by the then individual trustees. Plaintiffs allege that Society Bank retained control of the trust corpus until at least June 15, 1987. Defendant James Kamerer was the Vice President of Society Bank throughout the times when Society Bank was corporate trustee and plaintiffs allege that Mr. Kamerer was personally involved in the administration of the trust during those times.

The Bank of New York was appointed corporate trustee by the two individual trustees serving at the time on February 13, 1987. Defendant Peter Bingenheimer was the Vice President of The Bank of New [*4] York during the time that that institution served as corporate trustee and, plaintiffs allege, in such capacity, was personally involved in the administration of the trust.

Defendant William M. Caddey served as an individual trustee from about July 15, 1974 until January 28, 1987. Defendant Walter W. Johnson has acted as an individual trustee from approximately January 28, 1987 until the present. Defendant James G. Beaulieu has acted as an individual trustee from some unknown time after February 13, 1987 until the present.

Plaintiffs assert in their amended complaint that the assets of Hoover Invesco initially consisted solely of stock in another Ohio corporation, the Hoover Company. In 1979, however, the Hoover Company redeemed the Hoover Company stock retained by Hoover Invesco. Hoover Invesco got several million dollars in cash for the sale of the Hoover stock. Plaintiffs allege that prior to the redemption of the Hoover Company stock in 1979, substantial dividends had regularly been paid by Hoover Invesco to its shareholders and had been forwarded by defendant Society Bank to plaintiff Herbert W. Hoover, III, the income beneficiary of the subject trust. Plaintiffs further allege [*5] that, following the 1979 redemption, Hoover Invesco ceased paying dividends upon the non-voting stock held by the trust and made no distribution of assets.

Plaintiffs assert that defendant Andres Iriondo is and was at all relevant times a director and/or the President of Hoover Invesco and as such was involved on a daily basis with the corporate management of Hoover Invesco. In addition, plaintiffs assert that William A. Pincoe is and was at all material times a member of the Board of Directors of Hoover Invesco and in such a capacity was involved in the business of that company. Plaintiffs contend that defendant Hoover, at all material times, dominated and controlled the business activities of Hoover Invesco.

In their amended complaint, plaintiffs state that the trust has not received any cash or stock dividends nor distribution of assets of Hoover Invesco since approximately 1980. Plaintiffs additionally assert that from about 1982 until the present, the net worth of Hoover Invesco has approached or exceeded $ 4 million, and the claimed operating expenses during that time frame have been approximately $ 300,000 per year.

Plaintiffs assert that the defendant individual trustees maintained [*6] "continuing and regular trust-related contact with the corporate trustee, defendant Society Bank, in Ohio . . ." which included telephone conversations, telephonic communications, and mail and other correspondence. Amended Complaint for Legal and Equitable Relief, Docket No. 65 at 12. Plaintiffs assert that from time to time, defendant Society Bank would, at the insistence of plaintiff Herbert W. Hoover, III, request financial information from Hoover Invesco and the acting individual trustees, and that such requests required

defendants Hoover Invesco, Iriondo and the individual trustees to have contact with Society Bank in Ohio. Plaintiffs contend that despite the requests, the defendants failed to supply Society Bank with adequate financial information as was requested. Plaintiffs contend further that it was the repeated requests for financial information which ultimately lead to defendant Society Bank's being replaced as corporate trustee on February 3, 1987 by the then serving individual trustees, including defendant Johnson.

Society Bank relinquished control over the trust corpus to defendant The Bank of New York on or about June 15, 1987. Sometime in 1987, Society Bank made a [*7] claim against the trust for trustee's fees. A figure of $ 14,000 was finally established by agreement among the acting trustees and Society Bank was then ultimately paid $ 14,000 in trustee's fees.

Plaintiffs assert that sometime prior to July 28, 1987, defendant Johnson requested that an Ohio accounting firm, Cohen & Company, perform an estimated valuation of the Hoover Invesco stock held by the trust. The request was made to and responded to in Cleveland, Ohio by the Cleveland, Ohio office of Cohen & Company. The requested valuation was provided on July 28, 1987. Cohen & Company valued the stock at between $ 52.63 to $ 87.72 per share, or $ 224,993 to $ 375,003 for the 4,275 shares held by the trust.

Plaintiffs assert that in August of 1987, defendant Johnson advised plaintiff Herbert W. Hoover, III that it would be necessary to sell all the Hoover Invesco stock held by the trust in order to pay trust administration expenses, and that the trustees planned to sell the shares to an alleged Panamanian corporation named Royal Lake Investment Corporation for $ 230,000. In the alternative, defendant Johnson informed plaintiff Herbert W. Hoover, III that plaintiff's father, Herbert W. [*8] Hoover, Jr., would match the $ 230,000 offer for the stock and would additionally fund the education of the remaindermen of the trust up to an amount not exceeding $ 170,000 if Herbert W. Hoover, III would sign a hold harmless agreement with respect to the sale of the stock by the trust.

Plaintiff Herbert W. Hoover, III strongly objected in writing to any sale of the Hoover Invesco stock. However, on or about August 26, 1987, plaintiffs allege that defendants Johnson, Beaulieu and The Bank of New York sold the Hoover Invesco stock held by the trust to the Panamanian corporation for $ 230,000.

Plaintiffs contend that the defendant trustees each owed plaintiffs a fiduciary duty and that each of the defendant trustees acted negligently, recklessly, intentionally, wantonly, and/or willfully, and accordingly, failed to satisfy the fiduciary duty each owed the plaintiffs.

Plaintiffs further assert that each of the trustees was involved in self-dealing and/or conflicts of interest, and that one or more or all of the trustees were improperly influenced or directed by defendant Herbert W. Hoover, Jr. which resulted in each defendant breaching the fiduciary duty owed plaintiffs. Plaintiffs contend [*9] that as a result of the failure of the defendant trustees to fulfill their fiduciary duties, the trust corpus has ceased to be productive and has been diminished in value to the detriment of the trust beneficiaries.

### B. *Causes of Action.*

Plaintiffs set forth ten causes of action in their amended complaint, (Docket No. 65). Plaintiffs first assert a cause of action against defendants William W. Caddey ("Caddey") and Society Bank for failure to make the trust corpus productive. Second, plaintiffs assert a cause of action against defendants Caddey and Society Bank for failure to assert claims belonging to the trust. Next plaintiffs assert a cause of action against defendants Caddey, Walter W. Johnson ("Johnson"), Society Bank, James G. Beaulieu ("Beaulieu") and Bank of New York for failure to secure a judicial determination as to the amount and source of the trustee's compensation.

In their fourth cause of action, plaintiffs assert that the actions of defendants Johnson, Beaulieu, Herbert W. Hoover, Jr., and Bank of New York as well as agents such as defendant Peter Bingenheimer ("Bingenheimer"), in performing, authorizing, directing, permitting and/or acquiescing in the forced [*10] sale of the Hoover Invesco stock constituted distinct acts of dominion wrongfully exercised over the corpus of the trust and, accordingly, constituted conversion.

Plaintiffs next assert a cause of action against defendants Bank of New York and Bingenheimer for negligently and recklessly breaching their fiduciary duties to plaintiffs.

In their sixth cause of action plaintiffs contend that defendants Herbert W. Hoover, Jr., Andres Iriondo ("Iriondo"), William A. Pincoe ("Pincoe") and Hoover Invesco breached the fiduciary duties that they owed to plaintiffs as holders of nonvoting shares in Hoover Invesco by excluding plaintiffs from pecuniary benefits of the business from 1980 through at least May of 1987.

Plaintiffs' seventh cause of action is brought against defendants Bank of New York, Beaulieu, Johnson, Hoover Invesco and Herbert W. Hoover, Jr. for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. And, in their eighth cause of action, plaintiffs assert a claim for common law fraud against defendants Caddey, Johnson, Beaulieu, Bank of New York, Bingenheimer, Hoover Invesco, Iriondo, Pincoe and Herbert W. Hoover, Jr.

Finally, plaintiffs [*11] assert a claim for punitive damages against all defendants in their ninth cause of action and seek removal of the present trustees in their tenth cause of action.

### C. *Grounds for Motion to Dismiss.*

The moving defendants set forth several grounds in support of their motion to dismiss. First, defendants argue that plaintiffs are precluded by principles of res judicata from relitigating the issue of personal jurisdiction over the defendants who are non-residents of Ohio since the issue was finally determined in a prior state court order of dismissal. That is, defendants argue that plaintiff Herbert W. Hoover, III brought suit in May of 1988 against the moving defendants other than Herbert W. Hoover, Jr. in the Court of Common Pleas, Stark County, State of Ohio, which case was voluntarily dismissed by plaintiff Herbert W. Hoover, III in March of 1990. On October 16, 1989, Judge Gwin, the Judge in the prior state court action, granted a motion to dismiss by the moving defendants other than defendant Hoover finding, *inter alia,* that Ohio did not have personal jurisdiction over defendants The Bank of New York, Bingenheimer, Johnson, Caddey, Beaulieu and Iriondo, all non-residents [*12] of the State of Ohio. Moving defendants argue that this Court is bound by the state court's determination of the personal jurisdiction issue.

Moving defendants next argue that plaintiffs' sixth cause of action against defendants Herbert W. Hoover, Jr., Iriondo, Pincoe and Hoover Invesco for breach of fiduciary duties should be dismissed for failure to state a claim upon which relief can be granted. In this regard, moving defendants contend, specifically, that plaintiffs lack standing to assert their claim. First, moving defendants argue that, under Ohio law, a shareholder cannot sue third parties individually for wrongful acts impairing the capital position of a corporation; rather, the cause of action belongs to the corporation. Next, moving defendants contend that plaintiffs do not have standing to sue Hoover Invesco and its officers and directors since [HN1]both Rule 23.1 of the Federal Rules of Civil Procedure and Rule 23.1 of the Ohio Rules of Civil Procedure preclude a suit premised upon stock ownership which is brought after the stockholder's stock is transferred. In addition, moving defendants assert that neither Hoover Invesco nor its officers or directors owed plaintiffs any [*13] fiduciary duties or obligations to see that the trustees of the subject trust performed their fiduciary duties.

The moving defendants next argue that even if principles of res judicata do not apply to bar relitigation of the issue of personal jurisdiction, this Court should dismiss the plaintiffs' claims against the non-resident defendants since this Court cannot obtain personal jurisdiction

over the non-resident defendants under Ohio's long arm statute. In the alternative, moving defendants argue that, even if this Court finds that it has personal jurisdiction over the defendants, it should dismiss the case pursuant to the doctrine of *forum non conveniens*. In particular, in their supplemental memorandum, moving defendants argue that Herbert W. Hoover, Jr.'s extremely poor health, which prevents him from leaving the state of Florida, argues strongly in favor of a change of forum.

Finally, moving defendants argue that plaintiffs' claim founded upon the Securities Exchange Act is time-barred.

The Court will consider the various arguments of the moving defendants out of the order presented since the resolution of certain of the arguments will be dispositive of others.

II. *ANALYSIS*

[*14]  A. *Plaintiffs' Claim Under Section 10(b) of the Securities Exchange Act of 1934.*

1. Statute of Limitations.

Moving defendants argue that plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 must be dismissed as the statute of limitations on the claim has run. Moving defendants argue that this Court should follow the reasoning in a recent opinion of the United States Court of Appeals for the Second Circuit, *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir. 1990), in which the Second Circuit found that federal securities law claims should be governed by a uniform federal limitary period. *Id.* at 364. Moving defendants acknowledge that the law in the Sixth Circuit as set forth in *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984), *cert. denied,* 471 U.S. 1125 (1985) is that [HN2]Ohio's four-year general statute of limitations for fraud actions is applied to claims for violations of Section 10(b) of the Securities Exchange Act of 1934. *Id.* at 1551. However, moving defendants argue that this Court should follow the reasoning in *Ceres, supra,* [*15] and apply a uniform federal limitary period, since, moving defendants assert, the Sixth Circuit, if faced with the issue, would probably do the same.

Plaintiffs contend, on the other hand, that this Court is bound to apply the rule set forth in *Marx, supra,* unless and until the Supreme Court and/or the Sixth Circuit direct otherwise. And, plaintiffs further contend that under the rule set forth in *Marx,* their securities fraud claim is not time-barred. The Court finds plaintiffs correct on this point and finds, accordingly, that plaintiffs' seventh cause of action is not time-barred.

The Court notes that the question of which statute of limitations to apply to implied causes of action under the federal securities laws is not free from debate; rather, the issue is currently a controversial one. The Supreme Court granted certiorari and recently heard oral arguments in *Lampf Pleva Lipkind Prupis & Petigrow v. Gilbertson,* U.S.  , 111 S. Ct. 242 (1990), a case in which the Ninth Circuit Court of Appeals addressed the practice of applying state limitations periods to private actions under the antifraud provisions of Section 10(b) of the [*16] 1934 Securities Exchange Act and Rule 10b-5 thereunder.

It is evident that at some point in the near future the Supreme Court will speak to the issue which this Court now faces. However, as of this date, the Supreme Court has not resolved the issue, and, an outstanding Sixth Circuit case exists which has. Accordingly, this Court, whatever its beliefs might be about the virtues of adopting a uniform federal limitary period for securities fraud cases, is bound by Sixth Circuit precedent and the principles of *stare decisis,* to follow the Sixth Circuit rule set forth in the *Marx* case.

In *Nickels v. Koehler Management Corp.,* 541 F.2d 611 (6th Cir. 1976), *cert. denied,* 429 U.S. 1074 (1977), the Sixth Circuit noted that since Section 10(b) does not contain a statute of limitations, and, since no general federal statute of limitations exists, "'the Federal Courts must choose among the several state statutes of limitations and apply the one which best effectuates the federal policy at issue.'" *Id.* at 613 (quoting *IDS Progressive Fund, Inc. v. First of Michigan Corp.,* 533 F.2d 340, 342 (6th Cir. 1976)). [*17] In *Marx v. Centran Corp.,* 747 F.2d 1536 (6th Cir. 1984), the Sixth Circuit stated that [HN3]"this circuit has repeatedly applied Ohio's four-year general statute of limitations for fraud actions" to suits charging fraud in the sale and/or purchase of securities. *Id.* at 1551 (citations omitted).

The court in *Marx, supra,* further explained that "although state law provides the statute of limitations, the date on which the statute begins to run is a matter of federal law. . . ." and "the period of limitations commences when the 'fraud is or should have been discovered.'" *Id.* (citations omitted). In determining whether the fraud was or should have been discovered, "an investor is charged with being 'at least a person of ordinary intelligence . . .'" *Id.*

The Court finds that plaintiffs' claim is not barred by the applicable statute of limitations since the alleged fraudulent acts occurred in August of 1987, and, even if plaintiffs discovered the fraud at that time, plaintiffs had until August of 1991 to file the present suit within the applicable statute of limitations.

The Court notes, however, that it reserves the right to [*18] reconsider its position on this issue if the Supreme Court issues an opinion which mandates a different result.

2. Personal Jurisdiction Over Non-Resident Defendants Named in Plaintiffs' Securities Fraud Claim.

a. Securities Fraud Claim.

Several of the defendants named in plaintiffs' 10(b) claim, The Bank of New York, [2] Johnson, [3] Beaulieu, [4] and Herbert W. Hoover, Jr. [5] are non-residents of the State of Ohio. Each of these persons was served with process pursuant to both Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and pursuant to Ohio's long arm statute. Plaintiffs assert, accordingly, that each of the defendants named in plaintiffs' Section 10(b) claim is subject to the jurisdiction of this Court pursuant to Section 27 of the Securities Exchange Act of 1934. Presumably, plaintiffs assert that these defendants are subject to the jurisdiction of this Court for all of the claims asserted against them. [6]

> 2  The Bank of New York is a financial institution located in the State of New York.
> 3  Defendant Walter W. Johnson, Jr. is a resident of the State of Florida.
> [*19]
> 4  Defendant James G. Beaulieu is a resident of the State of California.
> 5  Defendant Herbert W. Hoover, Jr. is a resident of the State of Florida.
> 6  The Court notes that moving defendants raised this very issue in an objection to plaintiff's motion to file an amended complaint. That is, moving defendants argued that the addition of a claim under Section 10(b) of the Securities Exchange Act of 1934 would significantly broaden this Court's jurisdiction.

[HN4]Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, provides, in pertinent part, that:

any suit or action to enforce any liability or duty created by this chapter or the rules and regulations thereunder, or to enjoin a violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found . . .

15 U.S.C. § 78aa (1988). [HN5]This statutory provision authorizes nationwide service [*20] of process. *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1315 (9th Cir. 1985); *see also, Fitzsimmons v. Barton,* 589 F.2d 330 (7th Cir. 1979); *Mariash v. Morrill,* 496 F.2d 1138, 1140 (2d Cir. 1974); *Obee v. Teleshare, Inc.,* 725 F. Supp. 913, 915 (E.D. Mich. 1989).

When a statute authorizes nationwide service of process, a federal district court has personal jurisdiction over a defendant properly served pursuant to the statute, if the defendant has minimum contacts with the United States as a whole. *Obee,* 725 F.Supp. at 915 (court stating that "under nationwide service statutes, a defendant need only maintain minimum contacts with the United States as a whole, rather than any particular state, for a federal court to exercise personal jurisdiction consistent with the due process clause").

The moving defendants do not contest the fact that each has minimum contacts with the United States as a whole. Accordingly, the Court finds that it has personal jurisdiction over the defendants named in plaintiffs' seventh cause of action who have been served with process pursuant to [*21]  Section 27 and who each have minimum contacts with the United States as a whole with respect to the securities fraud claim.

b. Pendent State Claims.

i. Subject Matter Jurisdiction.

In addition to their federal securities fraud claim, plaintiffs assert various other state law claims against the defendants named in their securities fraud claim. The Court must decide two issues with regard to the additional state claims against The Bank of New York, Beaulieu, Johnson and Herbert W. Hoover, Jr. First, the Court must decide whether it can and should assume jurisdiction over these pendent state claims. Second, the Court must decide whether it has personal jurisdiction over these defendants with respect to the pendent state claims.

In *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966), the Supreme Court stated that:

[HN6]pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises [*22]  but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole case.

*Id.* at 725.

[HN7]Whether to hear pendent state claims even if the federal court has the power to hear them, is a matter left to the sound discretion of the federal court. *Id.* at 726 (court stating that "it has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right"). A federal court should be guided in making a decision as to whether it should exercise pendent jurisdiction by considerations of "judicial economy, convenience and fairness to litigants. . . ." *Id.* Likewise, if "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness [*23] of the remedy sought, the state claims should be dismissed without prejudice and left for resolution to state tribunals." *Id.* at 726-27.

The Court has examined the various claims against defendants The Bank of New York, Beaulieu, Johnson, and Herbert W. Hoover, Jr. and finds that the claims derive from a common nucleus of operative fact such that this Court can, if it so chooses, hear the pendent claims. The causes of action all arise out of actions taken by the various defendants with respect to the trust which is the subject of the present suit. [7]

> 7 The Court notes that it has some concern about the substantiality of the federal claim in the present suit. The Supreme Court emphasized in *Gibbs, supra*, that the federal claim must have sufficient substance to confer subject matter jurisdiction upon a federal court in order for a federal court to have the power to hear pendent state claims.
>
> Defendants, however, have not questioned the substantiality of the federal claim. And the Court, after examining the claim, as well as other factors, finds that the claim is of sufficient substance to support jurisdiction.

[*24]  Although the Court finds that it has the power to hear the pendent claims, it is troubled by the issue of whether to exercise its discretion in favor of hearing the claims. The Supreme Court in *Gibbs, supra*, indicated that [HN8]if state claims predominate in a lawsuit, then a federal court should probably not exercise its discretion in favor of hearing the pendent claims, but rather, should dismiss the pendent state claims so that such claims can be resolved by a state tribunal. *Gibbs*, 383 U.S. at 726-27. Arguably, state claims predominate in the present suit. Indeed, the majority of the claims in the suit have to do with breaches of the duties of trustees of a trust and other alleged wrongful actions with regard to the trust. Such claims are clearly creatures of state law.

In light of the fact that this Court has exclusive jurisdiction over the federal securities fraud claim, and in light of the fact that the Court has the power to hear other of plaintiffs' claims under the doctrine of diversity of citizenship, and, in order to foster judicial economy by trying all related claims in one proceeding, the Court finds that it will hear plaintiffs' pendent [*25] state law claims against The Bank of New York, Johnson, Beaulieu, and Herbert W. Hoover, Jr. However, the Court notes that [HN9]a federal court has the power at any time during a proceeding, to dismiss pendent state claims if it finds, through the exercise of its sound discretion, that such a dismissal is warranted. 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3567.1 (2d ed. 1984).

ii. Personal Jurisdiction.

Several cases have found that [HN10]"the venue provisions of the securities laws providing extraterritorial service of process are sufficient to support *in personam* and subject matter jurisdiction over defendants on pendent state claims . . ." *see e.g., Abeloff v. Barth,* 119 F.R.D. 315, 330 (D. Mass. 1988) and cases cited therein; *International Controls Corp. v. Vesco,* 593 F.2d 166 (2d Cir. 1979), *cert. denied,* 442 U.S. 941 (1979); *see also,* 2 Moore, Lucas, Fink & Thompson, *Moore's Federal Practice* Par. 4.42[2.--1] (2d ed. 1990)(stating that "once a court has properly acquired jurisdiction over a person under . . . [a] statute . . . [providing for service beyond the territorial limits of the state [*26] in which the federal court is situated,] issues which are ancillary or pendent to the claim which provided the statutory basis for service should be heard").

The Court follows the precedent set forth above which provides that, once a defendant is properly served under a statute providing for service of process outside of the state within which the district court sits, a federal court has personal jurisdiction over that defendant with respect to all of the claims which a plaintiff asserts against that particular defendant. Accordingly, the Court finds that it has personal jurisdiction over defendants The Bank of New York, Beaulieu, Johnson and Herbert W. Hoover, Jr. on all of plaintiffs' claims against them, and their motion to dismiss for lack of personal jurisdiction is denied.

B. *Personal Jurisdiction Over Defendants Peter Bingenheimer, William M. Caddey and Andres J. Iriondo.* [8]

> 8 The Court notes at this point that it is unsure whether plaintiffs' theory upon which they premise this Court's jurisdiction over the claims other than their securities fraud cause of action is pendent jurisdiction or diversity of citizenship. The Court finds, however, that if plaintiffs are relying on the doctrine of pendent party jurisdiction, for

the reasons expressed above in the section of the Court's opinion addressing pendent jurisdiction generally, that the Court will exercise its discretion to hear such claims. Likewise, complete diversity exists between the parties and the jurisdictional amount is satisfied.

The test for whether or not personal jurisdiction exists over the respective defendants will be the same whether subject matter jurisdiction is premised on pendent party jurisdiction or diversity of citizenship.

[*27]  The Court next must address the issue of whether it has personal jurisdiction over these three defendants who are non-residents of the State of Ohio and are not named in plaintiffs' securities fraud claim. In their motion to dismiss, moving defendants raise two arguments in this regard. First, moving defendants contend that the state court has already finally decided the issue of personal jurisdiction over these non-resident defendants and that under principles of res judicata this Court is bound by the State court's determination and must, accordingly, grant these defendants' motion to dismiss. In addition, moving defendants contend that, even if this Court is not bound by the prior state court determination with regard to personal jurisdiction, this Court must dismiss these defendants from the present suit since this Court, which is bound to apply the same analysis of personal jurisdiction as did the state court, lacks personal jurisdiction over the non-resident defendants.

1. Argument That This Court is Bound by the Prior Ohio State Court Order of Dismissal Finding No Personal Jurisdiction Over Defendants Peter Bingenheimer, William M. Caddey and Andres J. Iriondo.

Moving defendants [*28]  first argue that this Court is bound under principles of res judicata by Judge Gwin's Order of Dismissal in the prior state court proceeding in which Judge Gwin found that Ohio does not have jurisdiction over the non-resident defendants in the present case. In an Order dated October 1, 1989, Judge James S. Gwin of the Court of Common Pleas for Stark County, Ohio, dismissed the claims brought by plaintiff Herbert W. Hoover, III against The Bank of New York, Peter Bingenheimer, Walter W. Johnson, Jr., William M. Caddey, James G. Beaulieu, and Andres J. Iriondo, finding that the Ohio court did not have personal jurisdiction over these non-resident defendants under any of the provisions of Ohio's long-arm statute.

Plaintiffs argue in response that principles of res judicata do not bar relitigation of the issue of jurisdiction since plaintiff Herbert W. Hoover, III voluntarily dismissed the previously instituted state court proceeding pursuant to Ohio Rule of Civil Procedure 41(A)(1)(a), and a voluntary dismissal without prejudice under Rule

41(A)(1)(a) dissolves all orders rendered by the court while the action was pending. The Court finds plaintiffs' position on this point well taken.

In [*29]  deciding what, if any, preclusive effect to give to the prior state court order of dismissal, this Court must look to Ohio law on res judicata. *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81 (1984) (court stating that [HN11]"a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"). [HN12]The rule in Ohio is that:

'an existing final judgment upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction . . .'

*Norwood v. McDonald,* 142 O.S. 299, 305 (1943). Likewise,

'a point or fact which was actually and directly in issue in a former action and was there passed upon and determined by a court of competent jurisdiction cannot be drawn into question in any future action between the same parties or privies, whether the cause of action in the two actions be identical or different . . .'

*Id.* at 306.

[*30]  The Supreme Court of Ohio stated in *DeVille Photography Inc. v. Bowers,* 169 O.S. 267 (1959), that [HN13]"'where an action or proceeding is dismissed without prejudice, rulings preceding the final judgment or decree of dismissal are, as a general proposition, not capable of becoming *res judicata.*'" *Id.* at 272 (citations omitted); *Central Mutual Insurance Co. v. Bradford-White Co.,* 35 Ohio App.3d 26 (1987) (court stating that in Ohio "the dismissal of an action without prejudice, whether voluntary or involuntary, dissolves all orders rendered by the trial court during the pendency of the action") (citations omitted). Under Ohio law, an order of voluntary dismissal, otherwise than on the merits, leaves the parties in the same position as if the action had never been commenced. *Central Mutual,* 35 Ohio App.3d at 28.

Plaintiff Herbert W. Hoover, III voluntarily dismissed his prior state court action against the defendants pursuant to Ohio Rule of Civil Procedure 41(A)(1)(a). Such a dismissal operated to dissolve the prior order of Judge Gwin dismissing the non-resident defendants for want of personal jurisdiction. [*31]  The dismissal order having been dissolved by the subsequent order of voluntary dismissal, this Court is not now bound by principles

1991 U.S. Dist. LEXIS 19073, *

of res judicata to follow the state court's resolution of the issue of personal jurisdiction.

The Court notes that moving defendants rely on the Sixth Circuit opinion of *Employees Own Federal Credit Union v. City of Defiance, Ohio,* 752 F.2d 243 (6th Cir. 1985), for the proposition that this Court should give Judge Gwin's prior order of dismissal for want of personal jurisdiction res judicata effect. This Court finds, however, that the *Employees Own* case is distinguishable from the present case and does not alter this Court's resolution of the res judicata issue.

In *Employees Own,* the plaintiff brought a Section 1983 suit in federal court and the defendants moved for summary judgment on the basis of res judicata. The District Court granted the defendants' motion. The Sixth Circuit found that the District Court properly granted the defendants' motion for summary judgment on the basis of res judicata since the plaintiff had previously filed a state court suit against the same defendants and had, after the state trial court had [*32] granted the defendants' motion to dismiss for failure to state a claim upon which relief could be granted, and, right before the entry of judgment, voluntarily dismissed the state court suit. *Id.* at 245.

The *Employees Own* case is distinguishable from the present case since, arguably, the state trial court in *Employees Own* had addressed the merits of the action and was just awaiting entry of judgment. In the present case, the state court had merely decided a jurisdictional issue and had not even yet gotten to the merits of plaintiff Herbert W. Hoover, III's complaint when plaintiff voluntarily dismissed his suit. That voluntary dismissal, as was emphasized above, wiped out the prior order of dismissal and this Court must now examine anew the non-resident defendants' motion for dismissal for lack of personal jurisdiction.

2. Argument That this Court Does Not Have Personal Jurisdiction Over Defendants Peter Bingenheimer, William M. Caddey and Andres J. Iriondo.

The Court will now examine the contacts which each of the respective defendants have had with the State of Ohio to determine whether this Court has jurisdiction over the particular non-resident defendant. [*33] To determine whether it has in personam jurisdiction over these three non-resident defendants, this Court must look to Ohio's long arm statute, Ohio Revised Code Section 2307.382 (Anderson Supp. 1989). *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1167 (6th Cir. 1988) (court stating that [HN14]"the law of the forum state determines the extent of the *in personam* jurisdiction of a federal court sitting in a diversity case").

[HN15]Ohio's long arm statute has been construed to extend jurisdiction to the constitutional limits. *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 225 (6th Cir. 1972). Accordingly, in determining whether it has jurisdiction over the non-resident defendants, this Court will construe Ohio's long arm statute in line with Supreme Court precedent regarding the constitutional limits of in personam jurisdiction.

[HN16]When a plaintiff seeks to bring a foreign defendant into a distant forum, the plaintiff bears the initial burden of pleading jurisdiction. *Baltimore & Ohio Railroad Co. v. Mobile Tank Car Services,* 673 F.Supp. 1437, 1439 (N.D. Ohio 1987). When the plaintiff seeks to bring a defendant in pursuant [*34] to a long arm statute, "'he must state sufficient facts in the complaint to support a reasonable inference that such defendant can be subjected to jurisdiction within the state.'" *Id.* (citation omitted). In addition, if the pleadings are challenged, the plaintiff must support the allegation that the court has jurisdiction by "'competent proof.'" *Id.* That is, in such a case, the "defendant, by introduction of evidence controverting jurisdiction, shifts the burden of going forward back to the plaintiff . . . [and,] . . . plaintiff is . . . required to produce some creditable evidence pointing toward the existence of jurisdiction." *Id.*

Plaintiffs assert in their amended complaint that the non-resident defendants, along with the resident defendants,

have caused an event or events to occur, out of which the plaintiffs' claims for relief arise, from their transacting business in the State of Ohio and/or causing tortious injury by an act or omission in this state and/or causing tortious injury in this state by an act or omission outside this state and/or causing tortious injury in this state by an act outside this state committed with the purpose of injuring persons, where [*35] they might reasonably have expected that some person would be injured thereby in this state and/or causing tortious injury to any person by a criminal act, any element of which takes place in this state, which they committed or in the commission of which they were guilty of complicity.

Plaintiffs' Amended Complaint, Docket No. 65 at 5.

The relevant provisions of Ohio's long arm statute are as follows:

[HN17](A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state . . .

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . .

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing [*36] tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity . . .

Ohio Rev. Code Ann. § 2307.382 (Anderson Supp. 1989).

The Court finds, from a review of the evidence before it, that plaintiffs have not sustained their burden of providing some credible evidence to support the inference that this Court has jurisdiction over defendants Bingenheimer and Iriondo, but that plaintiffs have sustained their burden with regard to defendant Caddey.

The Court notes first, that plaintiffs place heavy emphasis upon the fact that the trust which is the subject of the present suit was created in Ohio and that the sole asset of the trust for a number of years was stock in an Ohio corporation. However, the mere creation of the trust in Ohio is not sufficient to invest this Court with personal jurisdiction over the non-resident defendants. Plaintiffs must demonstrate specific actions which fall within the parameters of Ohio's long arm statute sufficient to make the assertion of personal jurisdiction over the non-resident defendants constitutional.

Plaintiffs first make the allegation that [*37] the defendants were transacting business in Ohio such that this Court can exercise jurisdiction over each non-resident defendant under Section 2307.382(A)(1). Peter Bingenheimer is a resident of New York and was and is the Vice President of defendant The Bank of New York. Plaintiffs contend that Bingenheimer was involved with the trust when The Bank of New York was the corporate trustee for the trust. However, plaintiffs have provided no evidence to support the contention that Bingenheimer had any significant contact with Ohio, let alone evidence to support the contention that Bingenheimer conducted activity in the State of Ohio which can be said to rise to the level of transacting business in this State. The Court finds, accordingly, that it does not have personal jurisdiction over Bingenheimer under Section 2307.382(A)(1).

Defendant Caddey is a resident of Florida and was the individual trustee for the trust from approximately 1974 until January of 1987. Although it would seem to

the Court that Caddey may have had contact with Ohio during the years that he was an individual trustee since defendant Society Bank was the corporate trustee during that time frame, plaintiffs have not [*38] provided proof to suggest that Caddey was transacting business in Ohio during the years complained of. Accordingly, the Court finds that it does not have personal jurisdiction over defendant Caddey under Section 2307.382(A)(1).

Defendant Iriondo is a resident of Florida and was and is an officer/director of defendant Hoover Invesco. Although Hoover Invesco is incorporated in Ohio, since 1966, its only offices have been located in Florida. Plaintiffs do not set forth evidence to support the assertion that defendant Iriondo transacted business in Ohio. The Court finds that it does not properly have jurisdiction over defendant Bingenheimer, Caddey or Iriondo under Ohio Revised Code Section 2307.382(A)(1) since plaintiffs have not sufficiently supported with evidence their blanket assertion that each of the defendants transacted business in Ohio and that the plaintiffs' claims arose out of that transaction of business.

Plaintiffs also contend that this Court has jurisdiction over the defendants under Section 2307.382(A)(3) since the defendants caused a tortious injury by acts or omissions in Ohio. Plaintiffs have, however, set forth no evidence to suggest that Peter Bingenheimer acted [*39] or failed to act in Ohio and that such an act or omission resulted in tortious injuries to plaintiffs. Bingenheimer is located in New York. Any action he took was presumably taken there since plaintiffs have not introduced evidence connecting Bingenheimer with Ohio. Likewise, plaintiffs have not demonstrated that defendant Iriondo took any action in Ohio which caused them tortious injury. Iriondo was located in Florida at all relevant times.

The Court finds the most substance to the contention that some of the alleged actions and/or inaction of defendant Caddey took place in Ohio and resulted in tortious injury to the plaintiffs. Plaintiffs assert causes of action against defendant Caddey for failure to make the trust assets productive, failure to assert claims belonging to the trust, failure to secure a judicial determination as to the amount and source of the trustee's compensation and common law fraud.

During the time in which he was an individual trustee, the corporate trustee of the trust was located in Ohio and transacted business in Ohio. Arguably, defendant Caddey's failure to act with the Ohio corporate trustee was tortious and resulted in injury to plaintiffs. The fact that [*40] the corporate trustee was an Ohio corporation located in Canton, Ohio and that the trust was established in Ohio indicates that Caddey would have been on notice that he might be hailed into court in Ohio and suggests

that an assertion of in personam jurisdiction by this Court over defendant Caddey is constitutionally permissible.

Plaintiffs next attempt to assert jurisdiction over the defendants under Section 2307.382(A)(4). The Court finds that it does not have jurisdiction over either defendant Bingenheimer or Iriondo under this provision for two reasons. First, there is no evidence to suggest that either defendant regularly does or solicits business in this state, engages in a persistent course of conduct in this state, or derives substantial revenue from goods used or consumed or services rendered in this state. In addition, the Court believes that the injury complained of in this suit is really an injury to the beneficiaries of the subject trust. Plaintiffs persistently argue that the trust itself has been injured. This Court finds, however, that the tortious injury alleged to have occurred in the present case resulted in injury to the beneficiaries of the trust who are residents [*41] of the State of Wyoming.

Assertion of personal jurisdiction over defendants Bingenheimer and Iriondo under Section 2307.382(A)(6) fails as well. Again, it is the Court's opinion that any tortious injury was felt in Wyoming and not in Ohio. Likewise, there is no evidence to suggest that defendants Iriondo and Bingenheimer might reasonably have expected that an individual in Ohio would be injured by their actions.

Finally, the Court finds that plaintiffs have not introduced evidence to support the allegation that this Court has jurisdiction over defendants under Section 2307.382(A)(7). Plaintiffs have introduced no evidence to suggest that either defendant Bingenheimer or Iriondo caused tortious injury through the commission of, or complicity to, a criminal act and that any element of that criminal act took place in Ohio. Plaintiffs offer no elaboration on this assertion and the Court does not understand precisely what the "criminal" act alleged to have occurred is.

For the reasons set forth above, the Court finds that it has personal jurisdiction over defendant Caddey but that it does not have personal jurisdiction over defendants Peter Bingenheimer or Andres Iriondo. Accordingly, [*42] the Court grants the motion to dismiss of defendants Bingenheimer and Iriondo for want of personal jurisdiction and denies defendant Caddey's motion to dismiss for lack of personal jurisdiction.

C. *Moving Defendants' Argument That the Case Should Be Dismissed Under the Doctrine of Forum Non Conveniens.*

The moving defendants next argue that even if the Court finds that it has personal jurisdiction over the non-resident defendants, it should dismiss plaintiffs' complaint under the doctrine of *forum non conveniens* since

plaintiffs' choice of forum impedes and frustrates the defense of the action, and there is no compelling reason why the case should be in Ohio. In addition, in their supplemental memorandum, moving defendants state that defendant Herbert W. Hoover, Jr. is critically ill in Florida and cannot leave that state and that Hoover's illness supports their assertion of *forum non conveniens.*

The Court notes at the outset that moving defendants' reliance on the doctrine of *forum non conveniens* in the present case is misplaced. [HN18]In federal courts, "the doctrine of forum non conveniens has only a limited continuing vitality . . ." after the passage of the venue transfer [*43] statute, 28 U.S.C. § 1404(a). 15 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3828 (2d ed. 1986). The rule has been since 1948, that "if the more convenient forum is another federal court . . . the case can be transferred there under § 1404(a) and there is no need for dismissal. It is only when the more convenient forum is in a foreign country --or perhaps, under rare circumstances, in a state court or territorial court --that a suit brought in a proper federal venue can be dismissed on the grounds of forum non conveniens." *Id.*

Thus, to the extent the moving defendants have asked the Court to dismiss plaintiffs' complaint on the grounds of *forum non conveniens,* the motion is denied. The Court notes however, that in their supplemental brief moving defendants make a request for a "removal" of this case to a federal court in Florida where defendant Hoover is located. [HN19]28 U.S.C. § 1404(a) provides that:

for the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). [HN20]In deciding whether to transfer a case pursuant [*44] to Section 1404(a), a federal court can consider factors such as those relevant to a determination of dismissal on the grounds of *forum non conveniens. Id.* at § 3647. It has been stated, however, that whether to grant a transfer turns "on the particular facts of the case and . . . the trial court must consider all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.*

Moving defendants have not made a formal motion to transfer this case to another federal forum pursuant to § 1404(a). The Court has examined the issue, however, and believes that such a transfer may be warranted in the instant case. Accordingly, the Court grants the parties to this case leave until May 1, 1991 to file briefs on the issue of whether the above-captioned case should be

transferred to another federal forum pursuant to 28 U.S.C. § 1404(a). Any party in favor of such a transfer is directed, specifically, to indicate in the brief to which federal district court the case should be transferred and to set forth facts establishing that this case could have originally been [*45] brought in the forum to which such party desires the case to be transferred. Any party not in favor of such a transfer should clearly indicate why the case should remain in this Court.

A hearing will be held on the matter of transfer of venue at 12:00 noon on May 9, 1991. Following said hearing, the Court will decide whether the case should be transferred.

D. *Moving Defendants' Argument That Plaintiffs' Sixth Cause of Action Should Be Dismissed Since Plaintiffs Do Not have Standing to Assert a Claim Against Hoover Invesco, Inc. and its Officers and/or Directors.*

The Court will delay ruling on that portion of moving defendants' motion to dismiss which states that the plaintiffs' sixth cause of action should be dismissed for failure to set forth a cause of action upon which relief can be granted pending resolution of the transfer of venue issue.

III. *CONCLUSION*

In sum, for the reasons set forth above, the Court grants the motion to dismiss for lack of personal jurisdiction of defendants Peter Bingenheimer and Andres J. Iriondo. Further, the Court finds that plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 is not time-barred. The Court denies the [*46] motion to dismiss for lack of personal jurisdiction of defendants The Bank of New York, Walter W. Johnson, Jr., William M. Caddey, and James G. Beaulieu. Likewise, the Court denies moving defendants' motion to dismiss on the grounds of *forum non conveniens.*

The Court grants the parties leave until May 1, 1991 to file briefs on the issue of whether this case should be transferred to another federal forum. Further, the Court

orders that a hearing will be held on the issue of transfer of venue at 12:00 noon on May 9, 1991.

Finally, the Court will delay ruling on moving defendants' motion to dismiss plaintiffs' sixth cause of action for failure to state a claim upon which relief can be granted pending resolution of the venue issue.

IT IS SO ORDERED.

David D. Dowd, Jr.

U.S. District Judge

*JUDGMENT ENTRY* - April 12, 1991, Filed

For the reasons set forth in the Memorandum Opinion filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the Court grants the motion to dismiss for lack of personal jurisdiction of defendants Peter Bingenheimer and Andres J. Iriondo. Further, the Court finds that plaintiffs' claim under Section 10(b) of the Securities [*47] Exchange Act of 1934 is not time-barred. The Court denies the motion to dismiss for lack of personal jurisdiction of defendants The Bank of New York, Walter W. Johnson, Jr., William M. Caddey, and James G. Beaulieu. Likewise, the Court denies moving defendants' motion to dismiss on the grounds of *forum non conveniens.*

The Court grants the parties leave until May 1, 1991 to file briefs on the issue of whether this case should be transferred to another federal forum. Further, the Court orders that a hearing will be held on the issue of transfer of venue at 12:00 noon on May 9, 1991.

Finally, the Court will delay ruling on moving defendants' motion to dismiss plaintiffs' sixth cause of action for failure to state a claim upon which relief can be granted pending resolution of the venue issue.

David D. Dowd, Jr.

U.S. District Judge